## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

In re:

APPVION, INC., *et al.*,[1]

                                Debtors.

Chapter 11

Case No. 17-12082 (KJC)

Joint Administration Requested

Related Docket No. 17

-----------------------------------------------------------X

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), (B) GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (C) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of Appvion, Inc., as borrower (the "**Borrower**"),[2] and

its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (the

"**Cases**"), as guarantors (each, a "**Domestic Guarantor**" and together, the "**Domestic**

**Guarantors**", and, collectively with the Borrower, the "**Debtors**"), pursuant to Bankruptcy Code

sections 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014,

and Rule 2002-1, 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Appvion, Inc. (6469), Paperweight Development Corp. (4992), PDC Capital Corporation (1197), Appvion Receivables Funding I LLC (9218), APVN Holdings LLC (8543) and Appvion Global Netherlands Cooperatief UA (8258). The corporate headquarters and the mailing address for the Debtors listed above is 825 East Wisconsin Avenue, P.O. Box 359, Appleton, Wisconsin.

[2] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Facility Documents.

**Rules**"), seeking entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**") *inter alia*:

(i)     authorizing the Borrower to enter into that certain Superpriority Senior Debtor-In-Possession Credit Agreement, dated as of October 2, 2017, in the form of the agreement attached as <u>Exhibit A</u> hereto (as amended, supplemented or otherwise modified from time to time, the "**DIP Facility Agreement**"), among the Borrower, Paperweight Development Corp. ("**Holdings**"), Wilmington Trust, National Association, as administrative agent (in such capacity, the "**DIP Agent**"), PJT Partners LP as sole lead arranger (the "**Arranger**"), and the Lenders (as defined in the DIP Facility Agreement) from time to time parties to the DIP Facility Agreement (the "**DIP Lenders**", together with the DIP Agent, the Arranger, and all other Secured Parties (as defined in the DIP Facility Agreement) the "**DIP Secured Parties**"), and authorizing the Borrower and the Domestic Guarantors[3] to enter into all related documents, orders and agreements (together with the DIP Facility Agreement, the "**DIP Facility Documents**");

(ii)    authorizing the Borrower to obtain a senior secured super priority multiple draw term loan facility (as described herein, the "**DIP Facility**"), and the Domestic Guarantors to guaranty the obligations of the Borrower in connection with the DIP Facility, which shall consist of a superpriority term loan facility with an aggregate principal amount of up to $325,200,000, and such other financial accommodations, allocated as follows:

      (a)     *New Money Loans*. A superpriority priming new money delayed draw term loan facility in the principal amount of $85,000,000 (the "**New Money Commitments**" and the term loans made thereunder, the "**New Money Loans**"; and the Lenders with the New Money Commitments, the "**New Money Lenders**");

      (b)     *Roll-Up Loans*. With respect to each person (an "**Eligible Subscriber**") who, (i) as of October 1, 2017 (the "**Petition Date**"), beneficially owns Prepetition First Lien Obligations (as defined below) under that certain Credit Agreement, dated as of June 28, 2013 (as amended or otherwise modified prior to the date hereof, the "**Prepetition First Lien Credit Agreement**," and the loans thereunder the "**Prepetition First Lien Loans**"), by and among the

---

[3] The direct and indirect foreign subsidiaries of the Borrower and the Domestic Guarantors that are also guarantors under the DIP Facility Documents are referred to herein as the "**Foreign Guarantors**" and each, a "**Foreign Guarantor**," and, collectively with the Domestic Guarantors, Holdings, and any Special Purpose Receivables Subsidiary (as defined in the Prepetition First Lien Credit Agreement), the "**Guarantors**." The Company and the Guarantors are referred to herein as the "**Loan Parties**."

2

Borrower, certain of the Guarantors, the lenders and issuing banks party thereto (collectively, the "**Prepetition First Lien Lenders**"), Jefferies Finance LLC, as administrative agent (in such capacity, the "**Prepetition First Lien Administrative Agent**"), Fifth Third Bank, as revolver agent (in such capacity, the "**Prepetition First Lien Revolver Agent**" and together with the Prepetition First Lien Administrative Agent, the "**Prepetition First Lien Agents**" and together with the Prepetition First Lien Lenders, the "**Prepetition First Lien Parties**"), and (ii) has executed the DIP Facility Agreement, (x) the term loans and revolving loans owing to such person in respect of its Prepetition First Lien Loans will be rolled-up into roll-up loans (the "**Roll-Up Loans**") under the DIP Facility upon the entry of this Interim Order to the extent such person has a New Money Commitment on the date of such entry and (y) the balance of the obligations outstanding under the Prepetition First Lien Credit Agreement in respect of the Prepetition First Lien Loans will be rolled-up into Roll-Up Loans on the date of the entry of the Final Order, in each case, in accordance with the terms of the DIP Facility Agreement and this Interim Order and, as later applicable, the Final Order; and

(c)  *Interim Facility.* During the Interim Period (as defined below) the maximum amount of the New Money Commitments available to be drawn shall be limited to $65,000,000 plus the Roll-Up Loans (the "**Interim Facility**"), subject to compliance with the terms, conditions and covenants described in the DIP Facility Documents and in accordance with the Approved Budget (as defined in the DIP Facility Agreement and attached as <u>Exhibit B</u> hereto);

(iii)  authorizing and directing the Debtors to use the proceeds of the DIP Facility as expressly provided in the DIP Facility Documents and solely in accordance with the Approved Budget;

(iv)  authorizing the Debtors to execute and deliver the DIP Facility Agreement and the other DIP Facility Documents and to perform such other acts as may be necessary or desirable in connection with the DIP Facility Documents;

(v)  in accordance with the relative priorities as set forth more fully below, and subject to the Carve-Out (as defined below), the following:

(a)  pursuant to section 364(c)(1) of the Bankruptcy Code, authorizing the Debtors to grant the DIP Secured Parties superpriority allowed administrative expense claim status in the Cases and any Successor Case (as defined herein) in respect of all obligations, joint and several, owing under the DIP Facility Documents to the DIP

3

Secured Parties (including without limitation all "Obligations," as defined therein, the "**DIP Obligations**");

(b) pursuant to section 364(c)(2) of the Bankruptcy Code, authorizing the Debtors to grant to the DIP Secured Parties automatically perfected senior security interests in and liens on all of the DIP Collateral (as defined herein), in each case subject to the priorities set forth herein;

(c) pursuant to section 364(d) of the Bankruptcy Code, authorizing the Debtors to grant a senior first-priority priming lien on and security interest in all of the DIP Collateral, in each case subject to the priorities set forth herein;

(vi) authorization for (a) the DIP Agent, at the direction or with the consent of the Required Lenders (as defined in the DIP Facility Agreement), to terminate the funding commitments under the DIP Facility Agreement, and (b) the DIP Agent, at the direction or with the consent of the Required Lenders, to terminate the Debtors' sale, use or lease of Cash Collateral (as defined below), each upon the occurrence and continuance of an "**Event of Default**" (as defined in the DIP Facility Agreement) on terms specified herein and in the DIP Facility Agreement;

(vii) subject to entry of the Final Order, granting liens to the DIP Agent, on behalf of the DIP Secured Parties, on the proceeds ("**Avoidance Action Proceeds**") of the Debtors' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (each, an "**Avoidance Action**");

(viii) authorizing the Debtors to use, among other things, solely in accordance with the Approved Budget, any cash collateral (as that term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**") in which the Prepetition Secured Parties (as defined below) may have an interest and the granting of adequate protection to the Prepetition Secured Parties with respect to any post-petition diminution in value of their interests in the Prepetition Collateral (as defined below) arising from, *inter alia*, the Debtors' sale, use, or lease of the Prepetition Collateral (including the Cash Collateral) and the priming of the liens of the Prepetition Secured Parties by the DIP Liens (as defined below);

(ix) subject to the entry of the Final Order, authorizing the waiver of the Debtors' right to assert (a) any claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral;

4

(x)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents, this Interim Order, and as later applicable, the Final Order;

(xi)    the waiver of any applicable stay (including under Rule 6004 of the Bankruptcy Rules) and the provision of immediate effectiveness of this Interim Order, and as later applicable, the Final Order;

(xii)   pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of this Interim Order to (a)(I) authorize the Borrower to borrow or under the DIP Facility Documents, on an interim basis, in amount not to exceed an amount equal to $65,000,000 plus the amount of Roll-Up Loans authorized on an interim basis and (II) authorize each New Money Lender having a New Money Commitment and/or Related Lender (as defined in the DIP Facility Agreement) thereof to be deemed to have made Roll-Up Loans hereunder with the proceeds thereof being applied to the Prepetition First Lien Obligations in respect of such New Money Lenders' and Related Parties' then-outstanding Prepetition First Lien Loans, subject to the terms and conditions set forth herein; (b) authorize the Debtors' use of Cash Collateral; and (c) grant the liens, priority claims and adequate protection described herein;

(xiii)  pursuant to Bankruptcy Rule 4001, that the Court consider entry of this Interim Order, authorizing that during the Interim Period, and subject to the terms and conditions contained in the DIP Facility Documents, (i) an amount not to exceed an amount equal to $65,000,000 plus the amount of Roll-Up Loans authorized on an interim basis, be made available, and (ii) each New Money Lender having a New Money Commitment and/or Related Lender (as defined in the DIP Facility Agreement) thereof shall be deemed to have made Roll-Up Loans hereunder with the proceeds thereof being applied to the Prepetition First Lien Obligations in respect of such New Money Lenders' and Related Parties' then-outstanding Prepetition First Lien Loans, subject to the terms and conditions set forth herein;

(xiv)   scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order, and in connection therewith, giving and prescribing the manner of notice of the Final Hearing on this Motion; and

(xv)    granting the Debtors such other and further relief as is just and proper;

and the Court having considered the Motion, the exhibits attached thereto, the DIP Facility Documents, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and *Declaration of Alan Holtz in Support of First Day Pleadings* ; and notice of

5

the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Rule 2002-1, 4001-1(a), 5005-1 and 9013-1(m); and the Interim Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

A.    _Petition Date_.  On October 1, 2017, each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing the Cases.[4]

B.    _Debtor in Possession_.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.    _Jurisdiction and Venue_.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

---

[4] Joint Administration has been requested and is being considered at the Interim Hearing.

6

bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and the applicable Local Rules.

       D.    *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not appointed any statutory committee (each, a "**Statutory Committee**") in the Cases.

       E.    *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraphs 35 and 42 herein, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(x) below are referred to herein as the "**Debtors' Stipulations**"):

       (i)    *Prepetition First Lien Documents*.  As of the Petition Date, the Debtors were parties to the Prepetition First Lien Credit Agreement (together with all related documents, guaranties and agreements, as the same may be amended, waived, supplemented or modified from time to time, the "**Prepetition First Lien Documents**").

       (ii)    *Prepetition First Lien Obligations*.  As of the Petition Date, the aggregate amount owed by the Debtors under the Prepetition First Lien Loan Documents, ~~without defense, counterclaim or offset of any kind in respect of the Prepetition First Lien Documents~~ was not less than $253,300,000, consisting of $75,000,000 in principal amount of revolving credit obligations (including $13,100,000 of letter of credit obligations which will be cash collateralized) under the senior secured revolving credit facility (the "**Prepetition First Lien Revolving Facility**") and $178,300,000 outstanding under the senior secured term loan facility (the "**Prepetition First Lien Term Facility**" and together with the Prepetition First Lien Revolving Facility, the "**Prepetition First Lien Facility**"), both made available to the Borrower pursuant to that certain Prepetition First

7

*(handwritten marginal insertion, marked ⊗)*: including but not limited to accrued and unpaid interest, any fees, expenses and disbursements, treasury, cash management, derivative obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Debtors' obligations

Lien Credit Agreement (together with any amounts paid or incurred or accrued but unpaid *(handwritten: pursuant to the Prepetition First Lien Documents, and including)* prior to the Petition Date in accordance with the Prepetition First Lien Documents, ~~including~~ all "Obligations" as further defined in the DIP Facility Agreement, and the amount of interest at the Default Rate (as such terms are defined in the Prepetition First Lien Documents), the "**Prepetition First Lien Obligations**").

(iii)    *Prepetition Second Lien Documents.*  As of the Petition Date, the Borrower and certain other Debtors were party to that certain Indenture, dated as of November 19, 2013 (as amended, waived, supplemented or modified from time to time, the "**Prepetition Second Lien Notes Indenture**," together with the other Note Documents (as defined in the Prepetition Second Lien Notes Indenture) and all related documents, guaranties and agreements, as the same may be amended, waived, supplemented or modified from time to time, the "**Prepetition Second Lien Documents**" and, together with the Prepetition First Lien Documents, as the same may be amended, waived, supplemented or modified from time to time, the "**Prepetition Loan Documents**") by and among the Borrower, as "Issuer" thereunder, the Debtors party thereto and other Guarantors named therein as "Guarantors" and U.S. Bank National Association, as "Trustee" and "Collateral Agent" thereunder (in such capacities, the "**Prepetition Second Lien Trustee**" and, together with the Prepetition First Lien Agents, the "**Prepetition Agents**"), pursuant to which the Borrower issued, and the other Debtors party thereto guaranteed the Borrower's obligations under, the 9.000% Second Lien Senior Secured Notes due 2020 (the "**Prepetition Second Lien Notes**").

(iv)    *Prepetition Second Lien Obligations.* As of the Petition Date, the Debtors were indebted to holders of the Prepetition Second Lien Notes (collectively, the "**Prepetition**

8

**Second Lien Noteholders**" and, together with the Prepetition Second Lien Trustee, the "**Prepetition Second Lien Parties**," and the Prepetition Second Lien Parties, together with the Prepetition First Lien Parties, the "**Prepetition Secured Parties**"), without defense, counterclaim or offset of any kind, in respect of Prepetition Second Lien Notes for not less than the aggregate principal amount of $250,000,000 plus accrued and unpaid interest and fees with respect thereto (which, as of the Petition Date was approximately $7,500,000, which amount, for the avoidance of doubt, does not include the Prepetition Second Lien Parties' accrued and unpaid attorneys' fees, costs, and expenses, or any premium, make-whole or payments that may be otherwise required by the terms of the Prepetition Second Lien Notes Indenture or in respect of the Prepetition Second Lien Notes, including, without limitation, upon a prepayment or acceleration of the obligations thereunder (such amounts, together with any amounts paid or incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Second Lien Documents, including but not limited to, accrued and unpaid interest, any fees, expenses and disbursements, treasury, cash management, derivative obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition Second Lien Notes Indenture, and including all "Obligations" as further defined in the Prepetition Second Lien Notes Indenture, collectively, the "**Prepetition Second Lien Obligations**," and, together with the Prepetition First Lien Obligations, the "**Prepetition Obligations**").

      (v)    *Intercreditor Agreement.*  As of the Petition Date, Borrower was party to that Intercreditor Agreement, dated as of November 19, 2013, executed by Holdings, the Borrower, the other Loan Parties from time to time party thereto, the

9

Prepetition First Lien Agents, and the Prepetition Second Lien Trustee, and as the same may be amended, restated, supplemented, waived and/or otherwise modified from time to time in accordance with the terms thereof and of this Agreement (the "**Existing Intercreditor Agreement**").

       (vi)    *Prepetition Receivables Facility.*  As of the Petition Date, the Borrower was party to that certain Receivables Purchase Agreement (as amended or otherwise modified prior to the Petition Date, the "**Prepetition Receivables Facility Agreement**"), dated as of June 4, 2014, by and among the Borrower, as servicer, Appvion Receivables Funding I LLC, as seller, the various purchasers from time to time party thereto (the "**Prepetition Receivables Facility Purchasers**"), and Fifth Third Bank, as purchaser and administrative agent (the "**Prepetition Receivables Facility Agent**" and together with the Prepetition Receivables Facility Purchasers, the "**Prepetition Receivables Facility Parties**").  As of the Petition Date, the aggregate amount owed by the Debtors under the Prepetition Receivables Facility Agreement was not less than $24,000,000 (the "**Prepetition Receivables Facility**" and together with any amounts paid or incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Receivables Facility, the "**Prepetition Receivables Facility Obligations**").

       (vii)    *Prepetition Collateral and Prepetition Liens.*  As more fully set forth in the Prepetition First Lien Documents, prior to the Petition Date, the Debtors granted first-priority security interests in and liens (collectively, the "**Prepetition First Liens**") on substantially all of the property of the Debtors (collectively, the "**Prepetition Collateral**") to the Prepetition First Lien Agents on behalf of the Prepetition First Lien Lenders to secure repayment of the Prepetition First Lien Obligations.  As more fully set forth in the Prepetition Second Lien Documents, prior to the Petition Date, the Debtors granted security interests in and liens on (the

10

"**Prepetition Second Liens**" and, together with the Prepetition First Liens and Prepetition Receivables Facility Liens, the "**Prepetition Liens**") all of the property and assets of the Debtors constituting "Collateral" under and as defined in the Prepetition Second Lien Documents (the "**Prepetition Second Lien Collateral**") to the Prepetition Second Lien Trustee, for the benefit of the Prepetition Second Lien Parties, to secure payment of the Prepetition Second Lien Obligations.    The priority of the Prepetition Liens is subject to the terms of the Existing Intercreditor Agreement.    As more fully set forth in the Prepetition Receivables Facility Agreement, prior to the Petition Date, the Debtors granted security interests in and liens on the "Pool Receivables" (as defined in the Prepetition Receivables Facility Agreement) and related assets as set forth in the Prepetition Receivables Facility Agreement (the "**Prepetition Receivables Facility Liens**") to the Prepetition Receivables Facility Parties.[5]

> (viii)    *Prepetition Secured Indebtedness and Prepetition Liens.*    The Debtors acknowledge and agree that:

>> a.    the Prepetition First Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors;

>> b.    the Prepetition First Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected;

>> c.    subject to the Existing Intercreditor Agreement, as of the Petition Date, the Prepetition First Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition First Lien Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior

---

[5] Only one of the Debtors, the special purpose vehicle Appvion Receivables Funding I LLC, is the sole owner of the receivables and cash subject to the security interest under the Prepetition Receivables Facility Agreement. Although originated by the other Debtors, the receivables had been transferred to Appvion Receivables Funding I LLC as part of a true sale arrangement, and the Borrower's sole remaining ownership interest is the equity of  Appvion Receivables Funding I LLC. However, as the lenders under the Prepetition Receivables Facility Agreement are prepared to be paid in full with the proceeds of the DIP Facility, the receivables and cash will be effectively unencumbered and are, therefore, treated as a general financing of the Debtors for purposes of this Interim Order and the Debtors' Stipulations.

11

Case 17-12082-MFW    Doc 66    Filed 10/03/17    Page 12 of 64


in priority to the Prepetition First Liens as of the Petition Date) (the "**Permitted Prior Senior Prepetition Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral including, without limitation, the Prepetition Second Liens, except to the extent provided in the Existing Intercreditor Agreement;

d.    the Prepetition Second Liens on the Prepetition Second Lien Collateral are legal, valid, binding, enforceable, non-avoidable and properly perfected;

e.    the Prepetition Second Lien Obligations constitute legal, valid, binding, enforceable and non-avoidable obligations of the Debtors and the Prepetition Second Lien Documents are valid and enforceable by the Prepetition Second Lien Parties against each of the Debtors party thereto in accordance with their respective terms;

f.    subject to the Existing Intercreditor Agreement, as of the Petition Date, the Prepetition Second Liens were junior to the Prepetition First Liens, the Permitted Prior Senior Prepetition Liens and to certain other liens otherwise permitted by the Prepetition Second Lien Documents (to the extent any such liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Second Liens as of the Petition Date) (the "**Permitted Prior Junior Prepetition Liens**," and, together with the Permitted Prior Senior Prepetition Liens, the "**Permitted Prior Prepetition Liens**"),[6] except to the extent provided in the Existing Intercreditor Agreement;

g.    the Prepetition Receivables Facility Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors; and

h.    the Prepetition Receivables Facility Liens are valid, binding, enforceable, non-avoidable and properly perfected; and[7]

i.    as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition First Lien Obligations exceeded the

---

[6] For purposes of this Interim Order, Permitted Prior Prepetition Liens shall include all liens that were valid, senior to, enforceable, nonavoidable, prior and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such asserted Permitted Prior Prepetition Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Secured Parties, the Prepetition First Lien Parties and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Prepetition Lien and/or security interest. Notwithstanding that the Debtors allege that certain rights of third parties may give to a lien that would be a Permitted Prior Prepetition Lien, no such allegation is an admission that any such asserted lien is allowable.

[7] See the footnote above regarding the receivables and cash subject to the security interest under the Prepetition Receivables Facility Agreement.

12

amount of those obligations, and, accordingly, the Prepetition First Lien Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount of not less than $253,000,000, together with accrued and unpaid interest and costs and expenses (including, without limitation, attorneys' fees and related expenses).

(ix)    *No Offsets or Claims.*  The Debtors acknowledge and agree that:

a.    No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to, and no entitlements to equitable relief with respect to any of the Prepetition First Liens or the Prepetition First Lien Obligations exist, and no portion of the Prepetition First Liens or the Prepetition First Lien Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

b.    the Debtors and their estates have no claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, against any of the Prepetition First Lien Parties or any of their affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition First Lien Documents or Prepetition First Lien Obligations;

c.    no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to, and no entitlements to equitable relief with respect to any of the Prepetition Second Liens or the Prepetition Second Lien Obligations exist, and no portion of the Prepetition Second Liens or the Prepetition Second Lien Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

d.    the Debtors and their estates have no claims, objections, challenges, and/or causes of action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, against any of the Prepetition Second Lien Parties or any of their affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of or based upon or related to the Prepetition Second Lien Documents or Prepetition Second Lien Obligations;

13

e.    no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to, and no entitlements to equitable relief with respect to any of the Prepetition Receivables Facility Obligations exist, and no portion of the Prepetition Receivables Facility Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

f.    the Debtors and their estates have no claims, objections, challenges, and/or causes of action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, against any of the Prepetition Receivables Facility Parties or any of their affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of or based upon or related to the Prepetition Receivables Facility Obligations.

(x)    *Cash Collateral.*  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Parties.

F.    *Findings Regarding Post-Petition Financing and the Use of Cash Collateral.*

(i)    *Good cause.*  Good cause has been shown for the entry of this Interim Order.

(ii)    *Request for Post-Petition Financing and Use of Cash Collateral.*  The Debtors seek authority to enter into the DIP Facility Agreement.  The DIP Secured Parties shall have no obligation to make loans or advances under the DIP Facility except to the extent required under the DIP Facility Agreement and no obligation to waive any conditions required thereunder.  The Debtors also seek authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, to administer their Cases and fund their operations.

14

(iii)    *Need for Post-Petition Financing and Use of Cash Collateral.* The Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP Facility Agreement is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and equity holders, and the possibility for maximizing the value of their businesses. The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP Facility and continued use of Cash Collateral. Consummation of the financing contemplated by the DIP Facility Documents and the use of the Prepetition Collateral, including without limitation, the Cash Collateral, pursuant to the terms of this Interim Order therefore are in the best interests of the Debtors' estates.

(iv)    *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to reasonably obtain post-petition financing from sources other than the DIP Secured Parties on terms more favorable than those set forth in the DIP Facility Documents. The Debtors have been unable to reasonably obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the

15

Bankruptcy Code; (b) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Further, the Prepetition Secured Parties have not consented to the priming of their prepetition liens by lenders (except to the extent provided herein and under the DIP Facility Documents).  Financing on a post-petition basis is not otherwise available without granting the DIP Agent (for the benefit of the DIP Secured Parties): (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

      (v)    *Use of Proceeds.*

a.    As a condition to entry into the DIP Facility Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility and Cash Collateral shall be used in accordance with the terms of the DIP Facility Documents, including the Approved Budget, which shall be subject to (x) such variances as may be permitted by the DIP Facility Agreement (including without limitation the Permitted Variance), (y) this Interim Order (or the Final Order as applicable), and (z) the Carve-Out.

b.    The Debtors shall not, and shall not permit any of the Guarantors to, directly or indirectly pay any expense or other disbursement other than those set forth in the Approved Budget (other than the post-Trigger Date portion of the Carve-Out) outside of the Permitted Variance or otherwise permitted or directed by an order of the Bankruptcy Court.

c.    The proceeds of the DIP Facility and Cash Collateral shall be used solely as provided in the DIP Facility Agreement, including, to the extent provided therein, (i) to refinance in full the indebtedness outstanding under the Receivables Facility; (ii) to exchange the Prepetition First Lien Loans for Roll-Up Loans (which may be provided on an interim basis) (the "**Roll-Up**") (iii) to provide

16

working capital and letters of credit from time to time to the extent set forth in the Approved Budget; (iv) for other general corporate purposes of the Debtors to the extent set forth in the Approved Budget, including cash collateralizing existing letters of credit and funding the DIP Account (as defined in the DIP Facility Agreement); (v) subject to the Approved Budget (other than with respect to the post-Trigger Date portion of the Carve-Out) or any order governing the compensation of professionals retained in these Cases, for payment of costs and administration of the Cases; and (vi) for the payment of such other prepetition obligations in accordance with "first day" orders, which orders shall be in form and substance reasonably satisfactory to the DIP Agent and the Required Lenders and approved by the Court, in each case in a manner consistent with the Approved Budget, the DIP Facility Agreement, and the terms and conditions contained herein.

(vi)    *Willingness to Provide Financing.*  The DIP Secured Parties have indicated a willingness to provide financing to the Debtors subject to the entry of this Interim Order, and conditioned upon the entry of the Final Order, including findings that such financing is essential to the Debtors' estates, that the DIP Secured Parties are extending credit to the Debtors as set forth in the DIP Facility Agreement in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order, the Final Order or any other order.  As a condition to the entry into the DIP Facility Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors, the DIP Agent and the DIP Secured Parties have agreed that proceeds of DIP Collateral and all payments and collections received by the Debtors shall be applied solely as set forth in the DIP Facility Documents.

17

(vii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The extension of credit under the DIP Facility and the DIP Facility Documents is fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence or violation of public policy or law.  The DIP Facility Documents, the DIP Facility and the provisions regarding the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility, and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Use of Cash Collateral and any credit to be extended as set forth in the DIP Facility Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Secured Parties are therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

(viii)    *Priming of Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral by the DIP Liens will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and

18

creditors. The Prepetition Secured Parties consent to such priming liens, subject to receipt of adequate protection of their respective interests in the Prepetition Collateral as set forth herein. The Prepetition Secured Parties have acted in good faith in consenting (including under the Existing Intercreditor Agreement) to the (i) Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to the terms of this Interim Order, (ii) priming of their Prepetition Liens by the DIP Liens on all Prepetition Collateral, and (iii) entry of this Interim Order and the granting of the relief set forth herein, and their reliance on the assurances referred to herein is in good faith.

(ix)     *Adequate Protection.* The Prepetition First Lien Agents and Prepetition First Lien Parties are entitled to and shall receive, adequate protection in the form of (I) solely to the extent any portion of the Prepetition First Lien Obligations remain outstanding, ongoing payment of interest and other amounts due under the Prepetition First Lien Documents, pursuant to the terms thereof and notwithstanding the stay resulting from the filing of these chapter 11 cases, through the indefeasible payment of the Prepetition First Lien Obligations, including, without limitation, fees and expenses of counsel to the Prepetition First Lien Administrative Agent; (II) current cash reimbursement of actual and documented fees and expenses and other disbursements of the majority lender under the Prepetition First Lien Credit Agreement (the "**Majority Lender**") and the Prepetition First Lien Agents, including, without limitation, the reasonable documented fees and expenses of PJT Partners LP, O'Melveny & Myers LLP, Richards Layton & Finger, P.A., whether incurred before or after the Petition Date; and (III) subject to the priorities set forth in paragraphs 14 and 15 below, the Senior Adequate Protection Lien and the Senior Adequate Protection Superpriority Claim (each as defined below). The Prepetition Second Lien Parties are entitled to and shall receive adequate protection in the form

19

of (I) current cash payment of actual reasonable and documented fees and expenses of the following professionals of the Prepetition Second Lien Parties: Houlihan Lokey, Stroock & Stroock & Lavan LLP ("Stroock"), Young Conaway Stargatt & Taylor, LLP ("YCST"), Varde, and Milbank, Tweed, Hadley & McCloy LLP ("Milbank") whether or not incurred before or after the Petition Date, not to exceed (with respect to amounts incurred after the Petition Date), in the aggregate, the amounts set forth with respect to such fees and expenses in the Approved Budget; and (II) subject to the priorities set forth in paragraphs 14 and 15 below, the Junior Adequate Protection Lien and the Junior Adequate Protection Superpriority Claim (each as defined below).  This Court concludes that the adequate protection provided to the Prepetition Secured Parties hereunder for any post-petition diminution in value of the Prepetition Liens on the Prepetition Collateral due to, *inter alia*, the Debtors' sale, use or lease of the Prepetition Collateral, including the Cash Collateral, the imposition of the automatic stay, and the priming of the Prepetition Liens by the DIP Liens, is authorized by sections 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code.

        (x)     *Sections 506(c) and 552(b)*. Subject to the entry of the Final Order, in light of (i) the agreement of the DIP Secured Parties and the Prepetition Secured Parties to subordinate their liens and superpriority claims, as applicable, to the Carve-Out, and (ii) the Prepetition Secured Parties' agreement to consent to the use of Cash Collateral and to subordinate their Adequate Protection Superpriority Claims and Adequate Protection Liens to the Carve-Out, the DIP Liens and the DIP Superpriority Claim, and (iii) the Approved Budget covering all administrative costs projected by the Debtors, the DIP Secured Parties and the Prepetition Secured Parties are entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims

20

under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(xi)     *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the proposed post-petition financing arrangements and use of Cash Collateral pursuant to the Final Order, which shall be in form and substance acceptable to the DIP Agent and the Required Lenders. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

(xii)     *Immediate Entry*.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rule 4001-2(b).  The authorization granted herein on an interim basis to use the Prepetition Collateral, including without limitation, the Cash Collateral, to enter into the DIP Facility Documents, and to borrow under the DIP Facility is necessary to avoid immediate and irreparable harm to the Debtors and their estates during the period (the "**Interim Period**") beginning on the date hereof through and including the earliest to occur of (i) the date of the entry of the Final Order by this Court and (y) the Termination Date (as defined below).  This Court concludes that the entry of this Interim Order is in the best interests of the Debtors and their estates and creditors because it will, among other things, allow the Debtors to maximize the value of their assets.

(xiii)     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service;

21

(iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel to the DIP Lenders; (vi) counsel to the DIP Agent; (vii) counsel to the Prepetition Second Lien Parties; (viii) counsel to the Prepetition Second Lien Trustee; (xiv) the Receivables Facility Trustee; (x) other secured lenders; and (xi) financial institutions where the Debtors hold bank accounts. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing constitutes appropriate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    Motion Approved.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.

2.    Use of Prepetition Collateral Approved.  Subject to the terms of the DIP Facility Documents, this Interim Order, and the Approved Budget, the Debtors are hereby authorized to use the Prepetition Collateral (including Cash Collateral).

3.    Objections Overruled.  All objections to and reservations of rights with respect to the Motion and to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

**DIP Facility Authorization**

4.    Authorization of the DIP Facility Documents.  The Debtors are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Facility Agreement

22

and the other DIP Facility Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith. The Borrower is hereby authorized to borrow money under the DIP Facility Documents, on an interim basis, and request extensions of credit under the DIP Facility in accordance with the terms of this Interim Order and the DIP Facility Documents, *provided* that during the Interim Period an aggregate principal amount of up to $65,000,000 in New Money Loans may be borrowed.

     5.    <u>Roll-Up Loans</u>.

     (a)    During the Interim Period, each New Money Lender having a New Money Commitment as of such date and/or Related Lender (as defined in the DIP Facility Agreement) thereof shall be deemed to have made Roll-Up Loans hereunder with the proceeds thereof being applied to the Prepetition First Lien Obligations in respect of such New Money Lenders' and Related Parties' then-outstanding Prepetition First Lien Loans; *provided* that the aggregate amount of Roll-Up Loans made during the Interim Period shall be equal to the lesser of (x) $240,200,000 and (y) aggregate principal amount of Prepetition First Lien Loans outstanding as of such date multiplied by the Interim Availability Percentage (as defined in the DIP Facility Agreement), with such amount being allocated ratably among such New Money Lenders and Related Lenders as of such date.

     (b)    The New Money Lenders having New Money Commitments on or prior to the entry of the Interim Order will make reallocations of their New Money Commitments to allow for additional Prepetition First Lien Lenders to acquire New Money Commitments between the date of the entry of the Interim Order and the date of the entry of the Final Order in proportion to their Applicable Percentages (as defined in and determined under the Prepetition

23

EAST\147140235.4

First Lien Credit Agreement) and otherwise on the terms and conditions set forth in the DIP Loan Documents.

6.    Authorized Action.  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility Documents and the creation and perfection of the DIP Liens described in, provided for and perfected by this Interim Order and the DIP Facility Documents.  Subject to paragraph 16, the Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP Facility Documents as such become due and without need to obtain further Court approval, including, without limitation, origination fees, collateral monitoring fees, commitment fees, maintenance fees, success fees, letter of credit fees, and the fees and disbursements of the DIP Agent's and the Majority Lender's attorneys, advisers, accountants and other consultants.  All fees shall be fully earned upon entry of this Interim Order and payable in accordance with the DIP Facility Documents.

7.    Validity of DIP Obligations.  Upon entry of this Interim Order and execution and delivery, the DIP Facility Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms, and subject to the terms of this Interim Order.  The DIP Facility Documents and this Interim Order constitute and evidence the validity and binding effect of the DIP Obligations of the Debtors, which DIP Obligations shall be enforceable, jointly and severally, against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Cases or any case under chapter 7 of the Bankruptcy Code upon

24

the conversion of any of the Cases (each, a "**Successor Case**").  No obligation, payment, transfer, or grant of a security or other interest to the DIP Secured Parties under the DIP Facility Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, or counterclaim. The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtors to the DIP Secured Parties under the DIP Facility Documents, including without limitation all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Facility Documents.

8.    No Obligation to Extend Credit.    The DIP Secured Parties shall have no obligation to make loans or advances under the DIP Facility until the conditions precedent to the closing and the making of such extensions of credit under the DIP Facility Documents have been satisfied in full or waived.

9.    Use of DIP Facility Proceeds.    From and after the Petition Date, the Debtors are authorized to use extensions of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Facility Documents and in compliance with the Approved Budget. The Debtors are authorized, subject to the satisfaction of the conditions set forth in the DIP Facility Documents, to use proceeds of the DIP Collateral and the Prepetition Collateral, subject to the Carve-Out, and to draw upon the DIP Facility to (a) irrevocably, repay in full the obligations outstanding under the Receivables Facility; (b) to exchange the Prepetition First Lien Loans for Roll-Up Loans; (c) to cash collateralize letters of credit at 100% outstanding under the Prepetition First Lien Facility; (d) to fund the DIP Account (as defined in the DIP Facility

25

Agreement) in accordance with the requirements of the DIP Facility Agreement; (e) to pay fees, costs and expenses incurred in connection with the transactions contemplated by the DIP Facility Agreement; (f) to pay other administration costs incurred in connection with the Cases consistent with the Approved Budget; (g) to pay for other working capital and general corporate purposes of Loan Parties and their subsidiaries consistent with the Approved Budget and the "first day" orders entered by the Court; and (h) after delivery of a Carve-Out Trigger Notice, to fund a reserve to pay the Carve-Out. The Roll-Up shall be subject to the Permitted Prior Prepetition Liens, the Carve-Out, and the reservation of rights of parties in interest in paragraph 35 and 42 of this Interim Order, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution of a Challenge Proceeding brought in compliance with the provisions of this Interim Order (where such Challenge Proceeding did not have the effect of successfully impairing any of the Prepetition First Lien Obligations or Prepetition First Liens), the Debtors' Roll-Up of the Prepetition First Lien Facility shall be deemed to be indefeasible, final and not subject to any challenge, including without limitation any Challenge Proceeding. Notwithstanding the foregoing, in the event that a Challenge Proceeding is initiated within the Challenge Period, only that portion of the Prepetition First Lien Obligations that are challenged shall be excluded from the Debtors' Roll-Up of the Prepetition First Lien Facility (the "**Roll-Up Exclusion Amount**"), and further provided that, upon the settlement or final adjudication of any such Challenge Proceeding, the Roll-Up Exclusion Amount shall, subject to the Carve-Out become part of the Roll-Up of the Prepetition First Lien Facility to the extent that such Roll-Up Exclusion Amount is found or agreed to be secured by Prepetition First Liens.

26

10.    <u>DIP Superpriority Claim</u>.  Subject to the Challenge Period with respect to the Roll-Up and subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors, jointly and severally, with priority over any and all administrative expenses, including, without limitation, any administrative expense claims on account of any postpetition Intercompany Transactions (as defined below), diminution claims (including all Adequate Protection Superpriority Claims) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 552(b), 726, 1113, or 1114 of the Bankruptcy Code (the "**DIP Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Debtors and their estates and all proceeds thereof, subject only to liens secured thereby and the Carve-Out.

**DIP Liens and Collateral.**

11.    Effective immediately upon entry of this Interim Order, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP Agent or any other DIP Secured Party of any DIP Collateral, the DIP Agent is hereby granted, as collateral agent for the DIP Secured Parties,

27

continuing valid, binding, enforceable, non-avoidable, priming and automatically and properly perfected, *nunc pro tunc* to the Petition Date, post-petition security interests in and liens (collectively, the "**DIP Liens**") on any and all property owned and hereafter acquired assets and real and personal property of the Debtors (the "**DIP Collateral**"), including, without limitation, the following (a) all Prepetition Collateral; (b) all accounts, chattel paper, deposit accounts (including any deposit accounts subject to a control agreement (including for the benefit of the trustee under the Receivables Facility) which shall be deemed to be for the benefit of the DIP Agent), documents (as defined in the UCC), equipment, general intangibles, instruments, inventory, and investment property and support obligations; (c) commercial tort claims; (d) all books and records pertaining to the other property described in this Paragraph; (e) all property of such Debtor held by any Secured DIP Party, including all property of every description, in the custody of or in transit to such Secured DIP Party for any purpose, including safekeeping, collection or pledge, for the account of such Debtor or as to which such Debtor may have any right or power, including but not limited to cash; (f) all other goods (including but not limited to fixtures) and personal property of such Debtor, whether tangible or intangible and wherever located; (g) Avoidance Actions and the proceeds of any Avoidance Actions (subject to the entry of a Final Order); and (h) to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing, and in each case to the extent of any Debtor's respective interest therein. The Debtors shall also, consistent with the DIP Facility Documents, cause the Foreign Guarantors to

28

grant similar security interests in and liens on the DIP Collateral owned by such Foreign Guarantors.

12.    Upon the indefeasible and irrevocable repayment of the Prepetition First Lien Obligations and the Receivables Facility Obligations, the Prepetition First Liens and Prepetition Receivables Facility Liens shall be deemed continuing liens for the benefit of and deemed assigned to the DIP Agent for the benefit of the DIP Secured Parties to secure the DIP Obligations.  All of the following agreements and other items related to the Prepetition First Liens and Prepetition Receivables Facility Liens remain in full force and effect and shall inure to the benefit of the DIP Agent for the benefit of the DIP Secured Parties and the Prepetition First Lien Parties and the Prepetition Receivables Facility Parties: any blocked account agreements, deposit account agreements, deposit account control agreements, securities account agreements, credit card acknowledgments or notifications, credit card agreements, landlord agreements, collateral access agreements, warehouse agreements, bailee agreements, customs broker agreements, carrier, consolidator or freight forwarder agreements or filings with the United States Patent and Trademark Office or the Library of Congress with respect to the recordation of an interest in intellectual property that were issued or filed by the Prepetition First Lien Parties or the Prepetition Receivables Facility Parties on any Debtor's assets (real or personal) in connection with the Prepetition First Lien Obligations or Prepetition Receivables Facility Obligations.  Each of the Security Documents under the Prepetition First Lien Documents and Prepetition Receivables Facility Agreement shall secure the DIP Obligations *mutatis mutandis*. Any liens, claims or interests subordinated to the Prepetition First Liens and the Prepetition Receivables Liens as of the Petition Date and the Carve-Out shall likewise be deemed subordinate to the DIP Liens and the Carve-Out.

29

13.    DIP Lien Priority.

(a)    *DIP Liens*.  The DIP Liens shall be junior only to the (i) Permitted Prior Senior Prepetition Liens, and the (ii) Carve-Out (as applicable), and shall otherwise be senior in priority and superior to the Prepetition Liens, the Permitted Prior Junior Prepetition Liens, the Adequate Protection Liens, and Adequate Protection Superpriority Claims (each as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b)    *Treatment of DIP Liens*.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Cases or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Case, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or any Successor Case.  Except during the Challenge Period with respect to the Roll-Up, the DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

**Adequate Protection**

14.    Adequate Protection Liens.

(a)    *Prepetition First Lien Parties – Senior Adequate Protection Lien.*  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition First Lien Parties in the Prepetition Collateral, including Cash Collateral, against any diminution in value resulting from the Debtors' use, sale or lease (or other

30

decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Liens and the subordination to the Carve-Out (collectively, "**Diminution in Value**"), the Debtors hereby grant to the Prepetition First Lien Agents, on behalf of itself and the Prepetition First Lien Lenders, a valid and perfected replacement and additional security interest in, and lien on (the "**Senior Adequate Protection Lien**") all DIP Collateral.   The Senior Adequate Protection Lien is and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) be subject and subordinate only to the DIP Liens, the Permitted Prior Senior Prepetition Liens, and the Carve-Out; and (ii) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

    (b)    *Prepetition Second Lien Parties - Junior Adequate Protection Lien.* Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Parties in the Prepetition Collateral against any Diminution in Value, the Debtors hereby grant to the Prepetition Second Lien Trustee, on behalf of itself and the other Prepetition Second Lien Parties, a valid and perfected replacement and additional security interest in, and lien on (the "**Junior Adequate Protection Lien**" and, together with the Senior Adequate Protection Lien, the "**Adequate Protection Liens**") all DIP Collateral.  The Junior Adequate Protection Lien is and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date and shall (i) be subject and subordinate only to the DIP Liens, the Permitted Prior Senior Prepetition Liens, the Carve-Out, the Senior Adequate Protection Lien, the Prepetition First Liens, and the Permitted Prior Junior Prepetition Liens; (ii) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP

31

Collateral; and (iii) to the extent there at any time remain outstanding and unpaid Prepetition First Lien Obligations, be subject in all respects to the Existing Intercreditor Agreement, as amended, modified or waived (or deemed amended, modified or waived) hereby and by the DIP Facility Documents.

(c)     *Treatment of Adequate Protection Liens.* Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Case. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Case, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or any Successor Case.

15.     <u>Adequate Protection Superpriority Claim</u>.

(a)     *Superpriority Claim of Prepetition First Lien Agents.* As further adequate protection of the interests of the Prepetition First Lien Parties, the Prepetition First Lien Agents, on behalf of itself and the Prepetition First Lien Lenders, is hereby granted an allowed administrative claim against the Debtors' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "**Senior Adequate Protection Superpriority Claim**") to the extent that the Senior Adequate Protection Lien is insufficient to protect the Prepetition First Lien Parties' interests in the Prepetition Collateral.

(b)     *Priority of Senior Adequate Protection Superpriority Claim.* Except as set forth herein, the Senior Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and priority general unsecured claims against the Debtors or their

32

estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 507(a), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code (including, without limitation, any administrative expense claims on account of any postpetition Intercompany Transactions); *provided, however,* that the Senior Adequate Protection Superpriority Claim shall be junior to (i) the DIP Superpriority Claim and (ii) the Carve-Out.

(c)    *Superpriority Claim of Prepetition Second Lien Trustee.*    As further adequate protection of the interests of the Prepetition Second Lien Parties, the Prepetition Second Lien Trustee, on behalf of itself and the other Prepetition Second Lien Parties, is hereby granted or allowed administrative claim against the Debtors' estates under section 503(b) of the Bankruptcy Code with Superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "**Junior Adequate Protection Superpriority Claim**" and, together with the Senior Adequate Protection Superpriority Claim, the "**Adequate Protection Superpriority Claims**") to the extent that the Junior Adequate Protection Lien is insufficient to protect the Prepetition Second Lien Parties' interests in the Prepetition Collateral, subject to the Carve-Out.

(d)    *Priority of Junior Adequate Protection Superpriority Claim.*    Except as set forth herein, the Junior Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and priority general unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 330, 331, 365, 503(a), 507(a), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code (including, without limitation, any administrative expense

33

claims on account of any postpetition Intercompany Transactions); *provided, however,* that the Junior Adequate Protection Superpriority Claim shall be junior to (i) the DIP Superpriority Claim, (ii) the Carve-Out, and (iii) the Senior Adequate Protection Superpriority Claim.

      16.    <u>Costs, Fees, Expenses, and Indemnification</u>.

      (a)    *DIP Secured Parties.*  The Debtors are authorized to pay any and all reasonable out-of-pocket expenses of each of the DIP Agent and the Majority Lender in connection with the DIP Facility, whether incurred before or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including, without limitation, fees and expenses, subject to the Carve-Out, incurred in connection with (i) the preparation, negotiation and execution of the DIP Facility Documents; (ii) the syndication and funding of the DIP Facility; (iii) the creation, perfection or protection of the liens under the DIP Facility Documents (including all search, filing and recording fees); and (iv) the on-going administration of the DIP Facility Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Cases; (v) the enforcement of the DIP Facility Documents; and (vi) any refinancing or restructuring of the DIP Facility in the nature of a "work-out"; and (vii) any legal proceeding relating to or arising out of the DIP Facility or the other transactions contemplated by the DIP Facility Documents, including the Cases.  Payment of all such professional fees and expenses shall not be subject to allowance by the Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP Secured Parties shall deliver a copy of their respective invoices to counsel for any Statutory Committee and the U.S. Trustee.  The invoices for such fees and expenses shall not be required to comply with any particular format, may be in summary form

34

only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee or any Statutory Committee with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(b)     *Indemnification of DIP Secured Parties.* The DIP Secured Parties, including the Majority Lender, shall have no liability to any third party relating to the DIP Facility Agreement and Debtors' use of the financing provided thereunder, and shall not be deemed to be in control of the operations of Debtors, or to be acting as a "responsible person" or managing agent with respect to the operation or management of Debtors. Debtors shall indemnify and hold harmless the DIP Secured Parties, including the Majority Lender, Arranger and their respective affiliates and officers, directors, employees, agents and advisors from and against all losses, liabilities, claims, damages or other expenses arising out of or relating to the DIP Facility Agreement and Debtors' use of the financing provided thereunder. This indemnification shall survive and continue for the benefit of all such persons or entities.

(c)     *Prepetition First Lien Parties.* As additional adequate protection of the Prepetition First Lien Parties' security interests in the Prepetition Collateral, the Debtors are authorized to provide adequate protection in the form of (i) solely to the extent any portion of the Prepetition First Lien Obligations remain outstanding after giving effect to the Roll-Up, ongoing payment of interest and other amounts due under the Prepetition First Lien Documents; (ii) current cash reimbursement of actual and documented fees and expenses and other disbursements of the Majority Lender and the Prepetition First Lien Agents whether or not

35

incurred before or after the Petition Date or set forth in the Approved Budget; and (iii) continued maintenance and insurance of the Prepetition Collateral and the DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition First Lien Documents, the DIP Facility Agreement and this Interim Order.  Payment of professional fees and expenses of the Majority Lender shall not be subject to allowance by the Court.  Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the Majority Lender shall deliver a copy of their respective invoices to counsel for any Statutory Committee and the U.S. Trustee.  The invoices for such fees and expenses shall not be required to comply with any particular format, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee or any Statutory Committee with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(d)     *Prepetition Second Lien Parties*.  As additional adequate protection of the Prepetition Second Lien Parties' security interests in the Prepetition Collateral, the Debtors are authorized to provide adequate protection in the form of (i) current cash payment of actual reasonable and documented fees and expenses of the following professionals of the Prepetition Second Lien Parties: Houlihan Lokey, Stroock, YCST, Varde, and Milbank whether or not incurred before or after the Petition Date, not to exceed (with respect to amounts incurred after the Petition Date), in the aggregate, the amounts set forth with respect to such fees and expenses in the Approved Budget; and (ii) continued maintenance and insurance of the Prepetition

36

Collateral and the DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Second Lien Documents, the DIP Facility Agreement and this Interim Order. Payment of all such professional fees and expenses shall not be subject to allowance by the Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the Prepetition Second Lien Parties shall deliver a copy of their respective invoices to counsel for any Statutory Committee and the U.S. Trustee. The invoices for such fees and expenses shall not be required to comply with any particular format, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee or any Statutory Committee with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

17.    <u>Carve-Out.</u>

(a)    *Carve-Out*.    As used in this Interim Order and the DIP Facility Documents, the term "**Carve-Out**" shall mean the sum (i) all fees required to be paid to the clerk of the Court or any claims and noticing agent acting in such capacity and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code *plus* interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses of up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) allowed and unpaid claims for unpaid fees, costs, and

37

expenses (the "**Allowed Fees**") incurred by persons or firms retained by the Debtors or a Statutory Committee, if any, whose retention is approved by the Bankruptcy Court pursuant to section 327 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), subject to the terms of the Interim Order, the Final Order and any other interim or other compensation order entered by the Bankruptcy Court that are incurred (A) at any time before delivery by the Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice (the "**Pre-Trigger Date Fees**"), subject to any limits imposed by the Approved Budget, the Interim Order or Final Order or otherwise on fees permitted to be incurred in connection with any permitted investigations of claims and defenses against any Prepetition Secured Parties; and (B) after the occurrence (the "**Trigger Date**") and during the continuance of an Event of Default and delivery of written notice (the "**Carve-Out Trigger Notice**") thereof (which may be by electronic mail) to the Debtors, the Debtors' counsel, the U.S. Trustee, and lead counsel for any Statutory Committee, if any, in an aggregate amount not to exceed $250,000 (the, "**Post-EoD Carve-Out Amount**"); *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any grounds. Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties, the Majority Lender, or the holders of the indebtedness under the Prepetition First Lien Credit Agreement (whether in such capacity or otherwise), or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens

38

and security interests granted under the DIP Facility Documents or the indebtedness under the Prepetition First Lien Credit Agreement or the Prepetition Second Lien Notes Indenture (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the Prepetition First Lien Lenders, the Prepetition Second Lien Lenders, or the Prepetition Agents; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders', the Prepetition First Lien Lenders', or the DIP Agent's assertion, enforcement or realization upon any Collateral in accordance with the DIP Loan Documents and the Final Order; (d) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Bankruptcy Court; or (e) after delivery of a Carve-Out Trigger Notice, any success, completion, back-end or similar fees; *provided* that no more than an aggregate of $50,000 of the proceeds of the New Money Loans, the DIP Collateral, the Prepetition Collateral, proceeds of the foregoing and the Carve-Out may be used by any Statutory Committee in respect of the investigation of the claims and liens of the Prepetition First Lien Parties, solely to the extent set forth in the Interim Order or Final Order (but not to litigate, object to or challenge any of the foregoing) and potential claims, counterclaims, causes of action or defenses against the Prepetition First Lien Parties, solely to the extent set forth in the Interim Order or Final Order (but not to litigate any of the foregoing).

(b)     *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP Facility as provided herein and in the DIP Facility Documents, the DIP Agent and the other DIP Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements

39

of any Professional Person incurred in connection with these Cases, any Successor Cases, or otherwise. Nothing in this Interim Order or otherwise shall be construed: (i) to obligate the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out; (ii) to increase the Carve-Out if incurred or Allowed Fees are higher in fact than the fees and disbursements of Professional Person set forth in the Approved Budget after the occurrence of the Trigger Date; (iii) as consent to the allowance of any fees and expenses of Professional Persons; or (iv) to affect the rights of the DIP Secured Parties, the Prepetition Secured Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(c)    *Payment of Carve-Out on or after the Triggering Event Date.*  Any payment or reimbursement made on or after the occurrence of the Trigger Date in respect of any Allowed Fees (whether out of the Carve-Out Escrow Account or otherwise) shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall otherwise be entitled to the protections granted under this Interim Order, the DIP Facility Documents, the Bankruptcy Code, and applicable law.

(d)    *Payment of Compensation.*  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Persons or shall affect the right of the DIP Secured Parties and the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as no Termination Event has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been vacated or stayed, unless the stay has been vacated) under sections 330

40

and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget, *provided* that any such payment shall be subject to entry of a final order of the Court on final application for allowance of fees and expenses to be filed for each Case Professional (including ordinary course professionals).

18.    <u>Modification of DIP Facility Documents</u>.  The Debtors and the DIP Agent are hereby authorized, subject to the DIP Facility Agreement, to implement, in accordance with the terms of the respective DIP Facility Documents, any non-material modifications of the respective DIP Facility Documents without further order of this Court, or any other modifications to the respective DIP Facility Documents.  To the extent that such modification or amendment is material, such material modification or amendment shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Facility Agreement shall be effective unless set forth in writing, signed on behalf of the Debtors and the DIP Agent.

19.    <u>Use of Proceeds; Budget Maintenance</u>.  The proceeds of the DIP Facility and Cash Collateral (including former collateral for the Receivables Facility) shall be used solely in accordance with the terms of the DIP Facility Documents, including the Approved Budget (subject to the Permitted Variance and the Carve-Out), and this Interim Order.  The Approved Budget shall be updated, modified or supplemented (with the consent of and/or at the request of the DIP Agent and the Required Lenders) from time to time, solely in accordance with the DIP Facility Agreement.

41

20.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtors to grant the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, and (b) authorize the Debtors to pay, and the DIP Secured Parties, the Prepetition First Lien Parties, and the Prepetition Second Lien Parties to retain and apply, payments made in accordance with this Interim Order.

21.     <u>Right to Credit Bid</u>.  Subject to Section 363(k) of the Bankruptcy Code, each of the DIP Agent (at the direction or with the consent of the Required Lenders), the Prepetition First Lien Agents (subject to obtaining any required consent or direction of the Prepetition First Lien Lenders), and the Prepetition Second Lien Agent (to the extent permitted by the Existing Intercreditor Agreement, and subject to obtaining any required consent or direction of the Prepetition Second Lien Lenders) shall have the right to "credit bid" up to the full allowed amount of their respective claims in connection with any sale of all or any portion of the DIP Collateral, including, without limitation, sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

22.     <u>Automatic Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction,

42

taking possession of or control over, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Secured Parties or the Prepetition Secured Parties to the priorities granted herein.

(b)     Notwithstanding the foregoing, the DIP Agent and the Prepetition Secured Parties each are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent or any Prepetition Secured Party chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of this Interim Order.

(c)     The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent or the Prepetition Secured Parties all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent or the Prepetition Secured Parties may reasonably request. The Debtors are authorized to, and shall, execute and deliver to the DIP Agent and the Prepetition Secured Parties such agreements, financing statements, mortgages, instruments and other documents as the Prepetition Secured Parties may reasonably request to evidence, confirm, validate, or perfect the DIP Liens or the Adequate Protection Liens;

43

and the failure by the Debtors to execute any documentation relating to the DIP Liens or the Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)    The DIP Agent and the Prepetition Secured Parties, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this Interim Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

(e)    Subject to entry of the Final Order and section 1146(a) of the Bankruptcy Code, except as otherwise provided herein, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Prepetition Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Subject to entry of the Final Order, any such provision shall have no force and effect with respect to the granting of post-petition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Agent or the Prepetition Secured Parties in accordance with the terms of this Interim Order.

23.    <u>Other Automatic Perfection Matters</u>.  To the extent that any Prepetition Agent is the secured party under any account control agreements (including respecting the Receivables Facility), listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any Prepetition Loan Document, the DIP Agent, on behalf of the DIP Secured Parties, is

44

also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies, and the secured party under each such Prepetition Loan Document, and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and the DIP Facility Documents. The Prepetition First Lien Agents or the Prepetition Second Lien Trustee, as applicable, shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's security interests in and liens on all Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

24.    Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP Facility Documents at any time prior to the repayment in full of all DIP Obligations and all Prepetition First Lien Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtors and the Debtors' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Facility Documents.

25.    Maintenance of DIP Collateral/Cash Management. Until the payment in full in cash of all DIP Obligations, and the termination of the obligation of the DIP Secured Parties to extend credit under the DIP Facility, the Debtors are authorized to (a) maintain and insure the DIP Collateral in amounts, for the risks, and by the entities as required under the DIP Facility Documents and (b) maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP Facility Documents; (ii) subject to the Cash Management Order, as may be

45

modified, with the prior written consent of the DIP Agent and the Required Lenders, by any order that may be entered by this Court and (iii) in a manner which, in any event, shall be reasonably satisfactory to the DIP Agent and the Required Lenders. Other than as expressly required pursuant to the DIP Facility Agreement, the Cash Management Order or this Interim Order, no modifications to the Debtors' cash management system existing as of the Petition Date may be made without the prior approval of the DIP Agent and the Required Lenders.

26. <u>Application of Proceeds of Collateral, Payments and Collections</u>. After repayment in full in cash of all DIP Obligations any remaining proceeds of the DIP Collateral shall be applied to the Debtors' remaining outstanding and unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities set forth in this Interim Order.

27. <u>Termination Event</u>. The occurrence of an Event of Default under the DIP Facility Agreement is referred to herein as a "Termination Event."

28. <u>Rights and Remedies Following Termination Event</u>.

(a) *Termination*. Immediately upon the occurrence and during the continuation of a Termination Event, the DIP Agent, at the direction or with the consent of the Required Lenders, with no further action of this Court, may notify the Debtors in writing that a Termination Event has occurred and is continuing (such notice, a "**Termination Notice**" and the date of any such notice, as further defined in the DIP Facility Agreement, the "**Termination Notice Date**").

(b) *Notice of Termination*. Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to any Statutory Committee (if one has been formed, or if one has not been formed, the Debtors' consolidated 30

46

largest creditors), the U.S. Trustee, and counsel to the Prepetition Second Lien Parties. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "**Remedies Notice Period**", and the date of the expiration of the Remedies Notice Period, the "**Termination Date**").

(c)     Without limiting the rights and remedies of the DIP Agent and other DIP Secured Parties under the DIP Facility Agreement, the DIP Agent, at the direction or with the consent of the Required Lenders, may immediately (I) upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination Notice or (II) the Termination Date, *inter alia*, (A) declare (x) subject to the Remedies Notice Period, all obligations owing under the DIP Facility Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, (y) the termination, reduction or restriction of any further commitment to extend credit to the Borrower to the extent any such commitment remains, and (z) terminate the DIP Facility and the DIP Facility Documents as to any future liability or obligation of the DIP Agent, any DIP Lender, or any other DIP Secured Party, but without affecting any of the liens or the obligations (any of the actions set forth in the foregoing (x), (y) and (z), a "**Termination**"); (B) unless the Court orders otherwise during the Remedies Notice Period, declare a termination, reduction or restriction on the ability of the Borrower to use any Cash Collateral and exercise all other rights and remedies provided in the DIP Facility Documents and applicable law.

(d)     During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination, including whether a Termination Event has occurred and/or is continuing. During the Remedies Notice Period, the Debtors may continue to use the DIP Collateral, including Cash Collateral, in

47

the ordinary course of business and consistent with the most recent Approved Budget (subject to the Permitted Variance, and to fund the Carve-Out Escrow Amount), but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business or otherwise in furtherance of the administration of the Cases.

29.     Good Faith.

(a)     *Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order.*  The DIP Secured Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Court, or any other court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP Obligations, or any lien, claim or priority authorized or created hereby, *provided* that this Interim Order was not stayed by court order after due notice had been given to the DIP Secured Parties at the time such obligations were incurred or the liens, claims or priorities were authorized and/or created.  Any liens or claims granted to the DIP Secured Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, *provided* that the Interim Order was not stayed by court order after due

48

notice had been given to the DIP Secured Parties at the time the obligations were incurred or the liens, claims or priorities were authorized and/or created.

        (b)    *Prepetition Secured Parties.*  The Prepetition Secured Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.

        30.    <u>Proofs of Claim</u>.  Any order entered by the Court establishing a bar date for any claims (including without limitation administrative claims) in any of the Cases or any Successor Case shall not apply to any DIP Secured Parties or the Prepetition Secured Parties.  The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this Interim Order in any of the Cases or any Successor Case, and the provisions of this Interim Order, and, upon the entry thereof, the Final Order, relating to the amount of the DIP Obligations, the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, the DIP Liens and the DIP Superpriority Claim shall constitute a timely filed proof of claim and/or administrative expense request.  For the avoidance of doubt, the books and records of the DIP Agent and the Prepetition Agents shall be deemed conclusive as to the amount of the claims of each such party.

        31.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Facility Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Secured Parties, the Prepetition First Lien Parties, and Prepetition Second Lien Parties reasonable access to the Debtors' premises, knowledgeable officers of the Debtors, and their books and records in accordance with the DIP Facility Documents, and shall reasonably

49

cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

32. <u>Intercompany Obligations</u>. To the extent any Debtor owes any obligation or indebtedness to any other Debtor or any subsidiary or affiliate of any Debtor (the "**Intercompany Obligations**"), such Intercompany Obligations shall be subordinated to the DIP Obligations and the Prepetition Obligations, and the guarantees (if any) thereof, until the DIP Obligations and the Prepetition Obligations are indefeasibly repaid in full. For avoidance of all doubt, any Intercompany Obligations shall be subordinated to the Adequate Protection Superpriority Claims.

33. <u>Prohibited Use of DIP Facility, DIP Collateral, Cash Collateral, Carve-Out, Etc.</u> Without the prior written consent of the DIP Agent, at the direction or with the consent of the Required Lenders, the DIP Facility, the DIP Collateral, and the Cash Collateral may not be used:

    a.    for the payment of interest and principal with respect to the Prepetition Second Lien Obligations or any other Prepetition Indebtedness (as defined in the DIP Facility Agreement) of the Borrower or any other Loan Party (as defined in the DIP Facility Agreement), except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of fees and expenses (including fees and expenses of professionals) of the Majority Lender, and subject to the limitations set forth in the Approved Budget, payment of certain expenses (which expenses shall include fees and expenses of professionals) of the Prepetition Second Agent and the Prepetition Second Lien Parties; (vi) other "first day" interim and final orders permitting payment of prepetition claims; (vii) cure amounts reasonably acceptable to the DIP Agent and the Required Lenders under leases and executory contracts assumed with approval of the Court; (viii) the Prepetition First Lien Loan Obligations solely to the extent of current cash interest and expenses; and (ix) other Prepetition Indebtedness to the extent authorized by the Bankruptcy Court and set forth in the Approved Budget;

    b.    subject to this Interim Order (or Final Order, when applicable) in connection with or to finance in any way any action, suit, arbitration,

50

proceeding, application, motion or other litigation of any type adverse to (i)(x) the rights, remedies, claims or defenses of DIP Secured Parties under the DIP Facility Agreement, the other DIP Facility Documents, this Interim Order (or, when applicable, the Final Order) including preventing, hindering or otherwise delaying the exercise of any rights, remedies, claims or defenses by the DIP Agent or the DIP Lenders under the DIP Facility Agreement, the other DIP Facility Documents, this Interim Order (or, when applicable, the Final Order) or (y) the rights, remedies, claims or defenses of the Prepetition Secured Parties under the Prepetition Loan Documents, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, DIP Liens, the Prepetition First Lien Obligations, Prepetition First Liens (as set forth in the DIP Facility Agreement), the Prepetition Second Lien Obligations or the Prepetition Second Liens; (B) for monetary, injunctive or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP Secured Parties or the Prepetition Secured Parties of any rights and remedies under this Interim Order or the Final Order, the DIP Facility Documents, the Prepetition Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Secured Parties, the Prepetition Secured Parties upon any of their respective collateral;

c.   to make any distribution under a plan of reorganization in any Case;

d.   to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP Agent, at the direction or with the consent of the Required Lenders, unless otherwise set forth in the Approved Budget, or unless otherwise ordered by the Court;

e.   to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called "Topping Fees," "Exit Fees" and other similar amounts) without prior written consent by the DIP Agent, at the direction or with the consent of the Required Lenders, unless otherwise set forth in accordance with the Approved Budget;

f.   to object to, contest, or interfere with, in any way, the DIP Secured Parties' or the Prepetition Secured Parties' enforcement or realization upon any of the Prepetition Collateral or DIP Collateral once a

51

Termination Event has occurred, except as provided for in this Interim Order or the Final Order, or seek to prevent the DIP Secured Parties or the Prepetition Secured Parties from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

g.      to use or seek to use Cash Collateral while the DIP Obligations, the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations and/or any of the DIP Secured Parties' commitments under the DIP Facility Documents remain outstanding, without the consent of the DIP Agent, at the direction or with the consent of the Required Lenders, the Prepetition First Lien Parties or Prepetition Second Lien Parties, as applicable, other than during the Remedies Notice Period;

h.      to use or seek to use any insurance or tax refund proceeds constituting DIP Collateral other than solely in accordance with the Approved Budget and the DIP Facility Documents;

i.      to incur indebtedness other than in accordance with the Approved Budget or the DIP Facility Documents without the prior consent of the Required Lenders;

j.      to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP Secured Parties or the Prepetition Secured Parties *provided, however*, that, if a Statutory Committee is appointed, not more than $50,000 in the aggregate of proceeds of the Carve Out, any Cash Collateral, or any proceeds of the DIP Facility or the DIP Collateral may be used by such Statutory Committee solely for purposes of investigating such claims, liens, or interests of the Prepetition Secured Parties;

k.      to assert, commence, prosecute or support any claims or causes of action whatsoever, including, without limitation, any Avoidance Action, against the DIP Secured Parties or the Prepetition Secured Parties;

l.      to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP Obligations, the DIP Liens, the Prepetition First Lien Obligations, the Prepetition Liens, the Prepetition Second Lien Obligations, or any other rights or interests of the DIP Secured Parties or the Prepetition Secured Parties;

m.      to sell or otherwise dispose of the DIP Collateral other than as contemplated by the DIP Facility Documents; or

n.      for any purpose otherwise limited by the DIP Facility Agreement.

52

34.    <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>. The stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall be binding on the Debtors in all circumstances.  The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest, including, without limitation, any Statutory Committee, unless, and solely to the extent that (a) any such party in interest, including any Statutory Committee, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth in paragraph 35 hereof) against the Prepetition Secured Parties in connection with any matter related to the Prepetition Loan Documents or the Prepetition Collateral (a "**Challenge Proceeding**") by no later than on or before each of (i) a period of 75 days after the entry of this Interim Order, ~~the~~ *for parties other than a* Statutory Committee ~~has then been appointed~~, and (ii) 60 days after the date of formation of ~~such~~ *a Statutory* Committee, if a Committee has ~~not~~ been appointed (the "**Challenge Period**") (for the avoidance of doubt, if a Committee is appointed after the period in sub-clause (i) has expired the Challenge Period shall have run).  The Challenge Period may only be extended with the written consent of the Prepetition First Lien Agents (as to the Prepetition First Lien Secured Parties), the Prepetition Junior Secured Parties (as to the Prepetition Second Lien Parties), or by order of the Court.  Upon the expiration of the Challenge Period (the "**Challenge Period Termination Date**"), without the filing of a Challenge Proceeding:

a.    any and all such Challenge Proceedings and objections by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred,

b.    all matters not subject to the Challenge Proceedings, including, without limitation, all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as

53

EAST\147140235.4

to the Prepetition First Lien Parties' and Prepetition Second Lien Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Cases and any Successor Case;

c.    any and all prepetition claims or causes of action against the Prepetition First Lien Parties and the Prepetition Second Lien Parties relating in any way to the Debtors or the Prepetition First Lien Documents or the Prepetition Second Lien Documents shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Cases and any Successor Case;

d.    to the extent not theretofore repaid, the Prepetition First Lien Obligations and Prepetition Second Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 case;

e.    the Prepetition First Liens and Prepetition Second Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

f.    the obligations under the Prepetition First Lien Documents and the Prepetition Second Lien Documents and the Prepetition First Liens and the Prepetition Second Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, any Statutory Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).

35.    If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, any committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final order) in such Challenge Proceeding. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Statutory Committee, standing or authority to pursue any cause

54

of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition First Lien Documents and Prepetition Second Lien Documents or the Prepetition First Liens and Prepetition Second Liens on the Prepetition Collateral. For the avoidance of doubt, any trustee appointed or elected in these Cases shall, until the expiration of the periods provided herein for asserting claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 35 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations and waivers of the Debtors in this Interim Order.

36.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

37.    <u>Limitations on Charging Expenses</u>.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Secured Parties or the DIP Collateral or the Prepetition Secured Parties or the Prepetition Liens pursuant to sections 105 or 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP Agent, any DIP Secured Party, and/or any Prepetition Secured Party that is adversely affected thereby, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

55

38.     Section 552(b).  Subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or, subject to the entry of the Final Order, the Prepetition Secured Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

39.     No Marshaling/Applications of Proceeds.  Upon entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

40.     Discharge Waiver.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claims or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  Except as otherwise agreed to by the DIP Agent, the Debtors shall not propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full, in cash of all DIP Obligations.

41.     Rights Preserved.   Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties and the Prepetition Secured Parties are preserved. Nothing contained herein shall be deemed to be a finding by this Court or an acknowledgement by the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any post-petition diminution in value of the Prepetition Collateral.

42.    <u>Release.</u>  Subject to the entry of the Final Order and paragraph 34 and as further set forth in the DIP Facility Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Cases or any Successor Case) and any party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP Agent and other current or future DIP Secured Parties, and the former, current, and future Prepetition First Lien Parties, and each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns and predecessors in interest (collectively, and in each case in their capacities as such, the "**Released Parties**"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Facility Documents, the Prepetition Loan Documents, or the transactions and relationships contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the

57

liens or secured claims of the Prepetition First Lien Parties, the DIP Agent, and the other DIP Secured Parties, and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the Prepetition First Lien Obligations, the Prepetition First Liens, the DIP Obligations, and the DIP Liens.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP Facility Documents.

43.    <u>No Waiver by Failure to Seek Relief</u>.  The failure or delay of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the Prepetition Loan Documents, the DIP Facility Agreement, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Secured Parties or the Prepetition Secured Parties.

44.    <u>Binding Effect of Interim Order</u>.    Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary) and Closing, the terms and provisions of this Interim Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Cases, the U.S. Trustee and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, any Successor Case, or upon dismissal of the Cases or any Successor Case.

45.    <u>No Modification of Interim Order</u>.  The Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent

58

of the DIP Agent, at the direction or with the consent of the Required Lenders, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases or any Successor Case, equal or superior to the Senior Adequate Protection Superpriority Claims, other than the Carve-Out and the DIP Superpriority Claim; (b) without the prior written consent of the DIP Agent, at the direction or with the consent of the Required Lenders, and the Prepetition First Lien Agents, (i) any order allowing use of Cash Collateral other than this Interim Order and the Final Order; and (ii) any lien on any of the DIP Collateral with priority equal or superior to the Senior Adequate Protection Lien (other than the DIP Lien); and (c) without the prior written consent of the DIP Agent, at the direction or with the consent of the Required Lenders, and Prepetition Second Lien Trustee, any lien on any of the Prepetition Collateral with priority equal to or superior to the Junior Adequate Protection Lien (other than the DIP Lien, the Permitted Prior Liens, the Carve-Out, the Senior Adequate Protection Lien, the Prepetition Senior Liens, and the Permitted Prior Junior Prepetition Liens). The Debtors irrevocably waive any right to seek any material amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent, at the direction or with the consent of the Required Lenders, Prepetition First Lien Agents, and the Prepetition Second Lien Trustee, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Secured Parties or the DIP Secured Parties.

46.    _Interim Order Controls_. This Interim Order shall constitute this Court's findings of fact and conclusions of law based upon the record of these Chapter 11 Cases at the Interim

59

Hearing and shall upon its entry by this Court take effect and be fully enforceable *nunc pro tunc* to the Petition Date. There shall be no stay of execution or effectiveness of this Interim Order, notwithstanding anything to the contrary in the Bankruptcy Rules or other applicable law; any applicable stay is hereby waived. In the event of any inconsistency between the terms and conditions of the DIP Facility Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

47.    <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Case; or (d) pursuant to which the Court abstains from hearing the Cases or any Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Secured Parties and the DIP Secured Parties pursuant to this Interim Order and/or the Prepetition Loan Documents (other than as modified hereby), notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Case, or following dismissal of the Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until all DIP Obligations and all Prepetition First Lien Obligations have been paid in full.

48.    <u>Cooperation Among the Parties.</u> Except in the event not reasonably practicable, the Debtors shall provide copies of all substantive motions, applications, other pleadings, and proposed forms of order with respect thereto (all of which shall be in form and substance reasonably acceptable to the DIP Agent and the Required Lenders) to the DIP Agent not less than five business days prior to the filing of any such substantive motions, applications, other pleadings, and proposed forms of order with respect thereto with the Court.

60

49.    Preservation of Rights Granted Under this Interim Order.

(a)    Except as expressly provided herein or in the DIP Facility Documents, no claim or lien having a priority senior to or *pari passu* with that granted by this Interim Order to the DIP Secured Parties shall be granted while any portion of the DIP Obligations remains outstanding, and the DIP Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations and the Prepetition First Lien Obligations shall have been indefeasibly paid in full, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Facility Agreement if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission or modification of this Interim Order or the Final Order without the prior written consent of the Required Lenders and the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Required Lenders or the DIP Agent, (ii) an order converting these Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of these Cases, or (iii) unless otherwise approved by the Required Lenders and the DIP Agent, an order granting a change of venue with respect to these Cases or any related adversary proceeding.  If an order dismissing any of these Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the Adequate Protection Superpriority Claims and other administrative claims granted under this Interim Order, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Prepetition Obligations shall have been paid and satisfied in full (and that such DIP Superpriority Claims,

61

Adequate Protection Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Collateral (including, without limitation, Cash Collateral), any DIP Obligations, or any Adequate Protection incurred by the Debtors to the DIP Agent, the other DIP Secured Parties and/or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and/or the Prepetition Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Facility Documents with respect to all such uses of the DIP Collateral (including, without limitation, the Cash Collateral), all DIP Obligations, and all Adequate Protection.

EAST\147140235.4

(d)     Nothing contained in this Interim Order shall limit the Debtor's fiduciary duties.

50.     <u>Final Hearing</u>.   The Final Hearing to consider entry of the Final Order and approval of the DIP Facility on a final basis is scheduled for October 30, 2017 at 2:00 p.m. (ET) before the Honorable Kevin J. Carey, United States Bankruptcy Judge, Courtroom 5, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

51.     <u>Notice of Final Hearing</u>:   Within three (3) Business Days of the date of the entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the parties included on the Debtors' consolidated list of forty (40) largest unsecured creditors; (e) counsel to the DIP Lenders; (f) counsel to the DIP Agent; (g) counsel to the Prepetition Second Lien Parties; and (h) counsel to the Prepetition Second Lien Trustee; (i) any party that has filed prior to such date a request for notices under Bankruptcy Rule 2002 with the Court; and (j) proposed counsel for any Statutory Committee.

52.     <u>Objection Deadline</u>:   Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Court, and personally served upon:  (a) proposed counsel to the Debtors and Debtors-in-Possession, (b) the U.S. Trustee; (c) proposed counsel to any Statutory Committee; (d) counsel to the DIP Lenders; (e) counsel to the DIP Agent; (f) counsel to the Prepetition Second Lien Parties; and (g) counsel to the Prepetition Second

63

Lien Trustee, so that such objections are filed with the Court and received by said parties on or before 4: 00 p.m. Eastern Time on Oct 23, 2017 with respect to entry of the Final Order.

53.    <u>Retention of Jurisdiction</u>.    The Court shall retain jurisdiction to enforce this Interim Order according to its terms to the fullest extent permitted by applicable law.

Dated: _____Oct 3_____, 2017
Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

64