## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:

APPVION, INC., *et al.*,[1]

Debtors.

-------------------------------------------------------------x

: Chapter 11
:
: Case No. 17-12082 (KJC)
:
: (Jointly Administered)
:
: **Related D.I: 425, 565**

## ORDER (A) APPROVING AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO PURCHASER'S ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

This matter is before the Court on the motion (the "Sale Motion")[2] of the above-captioned debtors (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court for the District of Delaware (the "Local Rules") (a) authorizing the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and other interests, except as provided by the Asset Purchase Agreement to Appvion Holding Corp. (the "Purchaser"); (b) approving the assumption and assignment of certain of the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Appvion, Inc. (6469), Paperweight Development Corp. (4992), PDC Capital Corporation (1197), Appvion Receivables Funding I LLC (9218) and APVN Holdings LLC (8543). The corporate headquarters and the mailing address for the Debtors listed above is 825 East Wisconsin Avenue, P.O. Box 359, Appleton, Wisconsin 54912.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or in the Final APA (as defined herein).

executory contracts and unexpired leases related thereto; and (c) granting related relief; and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before the Court on May 14, 2018 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

**I.    Jurisdiction, Final Order and Statutory Predicates**

A.    The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This order ("Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.    The Court entered the Bidding Procedures Order on March 12, 2018 [D.I. 565].

E.      The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

F.      To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

G.      In the absence of a stay pending appeal, the Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the transaction contemplated by this Sale Order and the final Asset Purchase Agreement (together with any schedules, exhibits and any other documents or instruments related thereto, the "Final APA," a copy of which is attached hereto as **Exhibit A**, as modified, amended or supplemented from time to time) at any time after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

II.      **Notice of the Sale, Auction and the Cure Amounts**

A.      In compliance with the Bidding Procedures Order, actual written notice of the Sale Motion and the Sale Hearing and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the Committee; (iv) counsel to Franklin Advisers, Inc., O'Melveny & Myers LLP, and Richards, Layton & Finger, P.A.; (v) counsel to the Jefferies

Finance LLC, as administrative agent under the certain Credit Agreement dated as of June 28, 2013; (vi) counsel to the DIP Agent under that certain Senior Superpriority Debtor-in-Possession Credit Agreement dated as of March 16, 2018, Covington & Burling LLP; (vii) counsel to the DIP Agent under that certain Superpriority Senior Debtor-in-Possession Credit Agreement dated as of October 2, 2017, Covington & Burling LLP; (viii) U.S. Bank National Association, as agent under that certain Indenture dated as of November 19, 2013; (ix) counsel to the ad hoc group of second lien lenders, Stroock & Stroock & Lavan LLP; (x) Fifth Third Bank, as administrative agent under that certain Receivables Purchase Agreement dated as of June 4, 2014; (xi) the Internal Revenue Service; (xii) the Securities and Exchange Commission; (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

B.    In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Cure Notice [D.I. 576], as applicable, upon the contract counterparties (the "Contract Counterparties") to the executory contracts and unexpired leases that the Debtors seek to assume and assign to the Purchaser (the "Assumed Executory Contracts") as of May 30, 2018 (or such other date on which the transactions contemplated by the Purchaser's Final APA are consummated, the "Closing Date") and setting forth the proposed Cure Amounts, if any, for such Assumed Executory Contracts.  Pursuant to Fed. R. Bankr. P. 6006(c), the Court finds that the service of such Cure Notice was good, sufficient and appropriate under the circumstances, in compliance with the Bidding Procedures Order, and no further notice need be given in respect of establishing the Cure Amount for the Assumed Executory Contracts.  The Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the Cure Notice, as applicable.

C.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.   The Debtors also have complied with all obligations to provide notice of the Auction, the Sale Hearing, and the Sale required by the Bidding Procedures Order.   Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, or assumption and assignment of the Assumed Executory Contracts is required.

D.      The Debtors have articulated good and sufficient reasons for the Bankruptcy Court to grant the relief requested in the Sale Motion.

E.      The disclosures made by the Debtors concerning the Sale Motion, the Final APA, the Auction, the Sale, and the Sale Hearing were good, complete and adequate.

### III.    Good Faith of the Purchaser

A.      The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

B.      The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the full protection of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with these cases in that, *inter alia*: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring any or all of the Purchased Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or

caused the chapter 11 filing by any of the Debtors; (e) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (f) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and (h) the negotiation and execution of Final APA and any other agreements or instruments related thereto were at arms' length and in good faith.

C.    The Directing Lenders (as defined below) have acted in good faith in all respects in connection with these cases, including in connection with the Purchaser's entry into the Final APA and the Directing Lenders are therefore, entitled to the full protection of section 363(m) of the Bankruptcy Code.

## IV.    Highest or Best Offer

A.    Prior to selecting the Purchaser as the Successful Bidder, the Debtors solicited offers to acquire the Purchased Assets from a wide variety of parties.  In doing so, the Debtors afforded Potential Bidders confidential due diligence access to provide any such bidders an opportunity to submit a Qualified Bid. Notwithstanding the marketing process undertaken by the Debtors and their advisors, no Qualified Bid, other than the Purchaser's bid, was submitted by the Bid Deadline, and accordingly, on April 30, 2018, the Debtors filed the *Notice of Successful Bidder and Cancellation of Auction* [D.I. 709].

B.    The Bidding Procedures were designed to obtain the highest value for the Purchased Assets for the Debtors and their estates, and the Final APA constitutes the highest or best offer for the Purchased Assets.  The Debtors' determination, in consultation with the

Consultation Parties, that the Final APA constitutes the highest or best offer for the Purchased Assets was a reasonable, valid and sound exercise of the Debtors' business judgment.

C.     The Final APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value or otherwise better terms to the Debtors' estates than the Purchaser.

D.     Approval of the Sale Motion and the Final APA and each of its exhibits, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

E.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

**V.     No Fraudulent Transfer**

A.     The consideration provided by the Purchaser for the Purchased Assets, Assumed Executory Contracts and Assumed Liabilities pursuant to the Final APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

**VI.     Method of Effecting the Sale**

A.     In order to credit bid the Obligations (the "Initial DIP Obligations"), as such term is defined in that certain Superpriority Senior Debtor-in-Possession Credit Agreement dated as of October 2, 2017, by and among the Appvion, Inc., as the Borrower, Paperweight Development Corp., as Holdings, the lenders party thereto (the "Initial DIP Lenders"), and Wilmington Trust, National Association, as administrative agent (the "Initial DIP Agent") (as amended, modified,

or supplemented, the "Initial DIP Credit Agreement"), other than the NM Term Loan Obligations (as defined in the Initial DIP Credit Agreement), the Initial DIP Agent at the direction of the Required Lenders (as defined in the Initial DIP Credit Agreement) under the Initial DIP Credit Agreement (the "Directing Lenders"), designated Purchaser as a sub-agent ("Sub-Agent") and directed Sub-Agent to take assignment of the rights of the Initial DIP Agent to credit bid the Initial DIP Obligations other than the NM Term Loan Obligations under the Bankruptcy Code, the Initial DIP Credit Agreement, the final order approving the Initial DIP Credit Agreement [D.I. 234] (the "Initial DIP Order"), and other applicable law, together with such other powers, duties and responsibilities as may be delegated from time to time in the future to Sub-Agent by the Initial DIP Agent (at the written direction of the Directing Lenders) in connection with such rights.

B.     The Initial DIP Agent will further direct (at the written direction of the Directing Lenders) the Sub-Agent (or one or more subsidiaries formed by the Sub-Agent at the direction of Directing Lenders for the purpose of effecting the transactions contemplated under the Final APA, including by receiving transfers of the Purchased Assets) to enter into the Final APA and assume all of the Assumed Liabilities, and be the direct transferee of the Purchased Assets and delegatee of the Assumed Executory Contracts.

C.     The Final APA provides that in consideration for (i) the cancellation, release and discharge of the Roll-Up Loans (as defined in the Initial DIP Credit Agreement), and (ii) the Roll-Up Lenders' entry into the stockholder agreement of the Purchaser (the "Stockholder Agreement") and compliance with the terms thereunder, the Roll-Up Lenders shall receive and retain an initial distribution of equity issued by the Purchaser equal to the amount of such Roll-Up Lender's ratable portion of the Initial DIP Obligations other than the NM Term Loan

Obligations based on such Roll-Up Lender's Applicable Percentage (as defined in the Initial DIP Credit Agreement) (such equity being referred to herein as "Purchaser Equity").

D.      Immediately upon the transfer of the Purchased Assets to the Purchaser and/or, as directed in writing by the Directing Lenders, one or more of its subsidiaries, the Initial DIP Agent shall have no further obligations to distribute proceeds to, or otherwise transact with, the DIP Secured Parties (as defined in the Initial DIP Credit Agreement) in respect of the Initial DIP Obligations and the Initial DIP Agent and all of its Related Parties (as defined in the Initial DIP Credit Agreement) (collectively, the "Indemnified Persons") shall be (i) immediately and without the requirement of further action, released and discharged by each Initial DIP Lender from all claims, demands, and causes of action and (ii) indemnified and held harmless ratably by each Initial DIP Lender from and against, without limitation, any and all claims, demands, losses, liabilities, judgments, causes of action, costs, and expenses (including reasonable fees and disbursements of legal counsel), known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law or equity or otherwise, incurred or suffered by any Indemnified Person in any way, in each case of (i) and (ii) above, directly or indirectly, arising out of, related to, or connected with the Initial DIP Credit Agreement, the Credit Bid Steps or the transactions contemplated by the Final APA; provided that the foregoing release and indemnity shall not be applicable to any losses suffered or incurred by an Indemnified Person as a direct and sole result of such Indemnified Person's (or of any DIP Secured Party's) gross negligence or willful misconduct as determined by a final and non-appealable judgment of a court of competent jurisdiction. The indemnity provided under this paragraph VI.D shall be in addition to and not in lieu of any indemnity provided to any Indemnified Person under Section 9.09 of the Initial DIP Credit Agreement; provided, however, that nothing in this paragraph shall

release or create an indemnification obligation for, or otherwise affect, impair or apply to, in any way, any claims, rights or defenses asserted or that may be asserted against or by anyone in the Litigations.

E.    For U.S. federal income tax purposes, the parties intend that the transactions contemplated by the Final APA be treated as a taxable transfer of the assets described in the Final APA (subject to any liabilities expressly being assumed thereunder) to the Purchaser on behalf of the Roll-Up Lenders in satisfaction of the portion of the Initial DIP Obligations being transferred pursuant to the Final APA, and for such other consideration as is provided for in the Final APA, followed by a transfer of such assets to the Purchaser in exchange for the Purchaser Equity issued to the Roll-Up Lenders in a tax free transfer pursuant to section 351 of the Internal Revenue Code of 1986, as amended.

F.    The procedures set forth in this Section VI are collectively referred to as the "Credit Bid Steps." The Credit Bid Steps comply with the Initial DIP Credit Agreement, the Senior DIP Credit Agreement (as defined below), and the Loan Documents as such term is defined in each of, respectively, the Initial DIP Credit Agreement and Senior DIP Credit Agreement (collectively, the "Loan Documents").

**VII.    Validity of Transfer**

A.    The Debtors have full corporate power and authority to execute and deliver the Final APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Final APA, except as otherwise set forth in the Final APA.

B.    The transfer of each of the Purchased Assets to the Purchaser after giving effect to the Credit Bid Steps will be, as of the Closing Date, a legal, valid, and effective transfer of the

Debtors' interest in such asset, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances (as defined below) accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Encumbrances and Assumed Liabilities under the Final APA, with all Encumbrances attaching to the net cash proceeds of the Sale, if any, attributable to the Purchased Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

C.    The Purchaser shall be afforded all exemptions from recording and/or transfer taxes that apply to the recordation of grant deeds conveying title to real property and improvements transferred to Purchaser under the Final APA as Purchased Assets so as to permit such recording to occur free of any such taxes.

## VIII.    Section 363(f) Is Satisfied

A.    The Purchaser would not have entered into the Final APA and would not consummate the transactions contemplated thereby and by the Credit Bid Steps (by paying the Purchase Price and assuming the Assumed Liabilities) if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment of the Assumed Executory Contracts to the Purchaser in each case pursuant to the Credit Bid Steps, were not, except as otherwise provided in the Final APA with respect to the Assumed Liabilities, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Final APA and with respect to the Assumed Liabilities), be liable for any of such Encumbrances, including, but not limited to the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other

employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other labor or employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to any of the following, as they may be amended from time to time (a) the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination In Employment Act of 1967 (including Older Workers Benefit Protection Act), (h) the Americans with Disabilities Act of 1990 (including the ADA Amendments Act of 2008), (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal labor or employment or benefit claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any Environmental Law(s) (as defined in the Final APA), including, without limitation, any environmental liens or claims; and (7) any theories of transferee or successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order.

B.     To the extent allowed by applicable law, except as otherwise set forth in this Sale Order or any plan of reorganization or liquidation confirmed in these chapter 11 cases, the Purchaser (i) is not, and shall not be considered, a successor to the Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Debtors, (iii) is not a continuation or substantial continuation of any of the Debtors or their respective estates, businesses or operations, or any

enterprise of the Debtors, and (iv) does not have a common identity of incorporators, directors or equity holders with the Debtors.

C.    The Debtors may sell the Purchased Assets free and clear of all Encumbrances (except for the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.    Those holders of Encumbrances, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of the Encumbrances, who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, attach to the net cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect and subject to all of the Debtors' defenses and counterclaims, that such Encumbrance had prior to the Sale.

D.    The Purchaser shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities and its obligations specifically set forth in and solely to the extent provided pursuant to the Final APA.

## IX.    Assumption and Assignment of the Executory Contracts

A.    The assumption and assignment of the Assumed Executory Contracts pursuant to the terms of this Sale Order is integral to the Final APA and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    Except as provided in this Sale Order or as may be subsequently agreed upon by the parties or determined by this Court, the amounts set forth on **Exhibit B** annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the

Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Executory Contracts (the "Cure Amounts"); *provided, however*, that amounts due or that may become due for postpetition goods and services after the Sale Closing Date shall be paid by Purchaser in the ordinary course of business, subject to the rights of all parties to dispute any amount as being due and owing.

C.      Pursuant to the terms of the Final APA, the Purchaser has agreed to: (i) cure and/or provide adequate assurance of cure of any monetary default existing on the Closing Date, or such other date as may be agreed upon by Purchaser and the counterparty to such Assumed Executory Contract, under any of the Assumed Executory Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provide compensation or adequate assurance of compensation to each Contract Counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Executory Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provide adequate assurance of its future performance under the Assumed Executory Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**X.      Assumption and Refinancing of Senior DIP Obligations**

A.      Pursuant to the terms of the Final APA, the Sub-Agent, at the direction of Wilmington Trust, National Association, as administrative agent  (the "Senior DIP Agent") under the Senior Superpriority Senior Debtor-in Possession Credit Agreement dated as of March 16, 2018 among Appvion, Inc., as the Borrower, Paperweight Development Corp., as Holdings, the lenders from time to time party thereto (the "Senior DIP Lenders"), and the Senior DIP Agent (as amended, modified, or supplemented, the "Senior DIP Credit Agreement," and

together with the Initial DIP Credit Agreements, the "DIP Credit Agreements"), acting upon the written direction of the Required Lenders under and as defined in the Senior DIP Credit Agreement, has agreed to assume as of the Closing Date all of the "Obligations" under the Senior DIP Credit Agreement, as such term is defined in the Senior DIP Credit Agreement (the "Senior DIP Obligations"). The assumption complies with and is permitted by the DIP Credit Agreements, Loan Documents, and the order approving the Senior DIP Credit Agreement [D.I. 639] (the "Senior DIP Order").

B.     Concurrently with such assumption of the Senior DIP Obligations by Purchaser, and giving effect thereto, Purchaser may refinance, subject to the consent of the Required Lenders, the Senior DIP Obligations with the proceeds of an exit facility (the "Exit Facility"). Any such refinancing is permitted under the terms of the DIP Credit Agreements and Loan Documents.

C.     The Senior DIP Credit Agreement, the DIP Credit Agreements, the Senior DIP Obligations, the Senior DIP Order, and any Exit Facility, and the liens and encumbrances provided for or granted thereunder, shall be subject to Domtar Paper Company, LLC's and Domtar A.W. LLC's ("Domtar") first priority liens on Domtar's inventory and the products and proceeds thereof now existing or hereafter arising. Domtar's liens and secured claims are expressly preserved and are not waived or satisfied by any provision of the Final APA or this Sale Order, and shall continue as secured claims and first priority liens on the Domtar inventory and the products and proceeds thereof now existing or hereafter arising (before or after the Sale Closing), to secure prompt payment when due of any and all obligations owed to Domtar by the Debtors or the Purchaser, arising from the *Supply Agreement dated as of February 22, 2012* entered into between the Debtors and Domtar and the *Consignment Agreement dated as of*

*September 23, 2016* entered into between the Debtors and Domtar, or otherwise; provided, however, that the Debtors shall have no further obligations to Domtar after payment of the Cure Amount, which obligations are assumed by the Purchaser. Domtar's liens are and shall be deemed perfected and Domtar shall not be required to take any other action or provide any other notice to any party in order to hold perfected, first priority liens on the Domtar inventory and the products and proceeds thereof.

## XI.    Circumstances for an Immediate Sale

A.    To enhance the Debtors' level of liquidity, to reduce the amount of postpetition financing borne by the Debtors, and to maximize the amount of funding available to provide for a timely exit from these chapter 11 cases, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Final APA. Time is of the essence in consummating the Sale.

B.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price under the Final APA, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

C.    The Sale does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests.

D.    The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a),

363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby and in the Final APA is approved as set forth in this Sale Order.

2.      The record of these cases, including the Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference and the Court takes judicial notice of the record.

3.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, as announced to the Court at the Sale Hearing or by stipulation filed with the Court, or not otherwise resolved by this Sale Order, and all reservations of rights included therein, are hereby overruled on the merits or have been otherwise satisfied or adequately provided for.

**Approval of the Final APA**

4.      The Final APA and all ancillary documents, including without limitation, the transition services agreement entered into on the Closing Date by and between the Debtors and Purchaser (the "Transition Services Agreement") and all of the terms and conditions thereof, are hereby approved.  The Credit Bid Steps and the Purchaser's assumption of the Senior DIP Obligations and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized, empowered and directed to take any and all actions necessary or appropriate to (i) consummate

the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Final APA and this Sale Order, (ii) close the Sale as contemplated in the Final APA and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the Final APA, giving effect to the Credit Bid Steps and the assignment to and assumption by the Purchaser of the Senior DIP Obligations, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Final APA and such ancillary documents, including, without limitation, the Transition Services Agreement.

6.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (as defined in section 101(5) of the Bankruptcy Code) against any Debtor, whether known or unknown, any holders of Liens (as defined in section 101(37) of the Bankruptcy Code, including, without limitation, all holders of recorded and unrecorded Liens encumbering Purchased Assets consisting of real property or improvements, on all or any portion of the Purchased Assets), all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, any other bidders for the Purchased Assets, any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.  This Sale Order and the Final APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and their respective successors and assigns.

**Transfer of the Purchased Assets**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets on the Closing

Date.  The Purchased Assets (including the Assumed Executory Contracts) shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Debtors' interest in such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of any lien (including a "lien" as defined in section 101(37) of the Bankruptcy Code), encumbrance, Claim, right, demand, charge, mortgage, deed of trust, lease, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, encroachment, right of first refusal, preemptive right, proxy, voting trust or agreement, transfer restriction under any shareholder agreement or similar agreement, judgment, conditional sale or other title retention agreement or other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever (collectively, the "Encumbrances"), except for the Assumed Liabilities under the Final APA.  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets, subject only to the Assumed Liabilities, and the Purchased Assets shall thereafter be the sole and exclusive property of the Purchaser and not be deemed property of the Debtors or their estates for any purpose after the Closing, irrespective of whether the Debtors have access to or custody of any Purchased Assets to provide services under the Transition Services Agreement. The Purchased Assets and proceeds thereof shall be segregated at all times from the property of the estates and shall be held in trust for the Purchaser during the period covered by the Transition Services Agreement.  All Encumbrances shall attach solely to the net proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

8.     The sale of the Purchased Assets to the Purchaser, and the assumption and assignment of the Assumed Executory Contracts to the Purchaser, shall be, except as otherwise

provided in the Final APA with respect to the Assumed Liabilities or set forth in this Sale Order,

free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would,

or in the future could (except and only to the extent expressly provided in the Final APA and

with respect to the Assumed Liabilities), be liable for any of such Encumbrances, including, but

not limited to in respect of the following: (1) all mortgages, deeds of trust and security interests;

(2) any pension, welfare, compensation or other employee benefit plans, agreements, practices

and programs, including, without limitation, any pension plan of any Debtor; (3) any other labor

or employment, worker's compensation, occupational disease or unemployment or temporary

disability related claim, including, without limitation, claims that might otherwise arise under or

pursuant to any of the following, as they may be amended from time to time (a) ERISA, as

amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the

Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker

Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination In Employment

Act of 1967 (including Older Workers Benefit Protection Act), (h) the Americans with

Disabilities Act of 1990 (including the ADA Amendments Act of 2008), (i) the Consolidated

Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state

unemployment compensation laws or any other similar state laws, or (1) any other state or

federal labor or employment or benefit claims relating to any employment with any of the

Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as

amended; (6) any Environmental Law(s) (as defined in the Final APA), including, without

limitation, any environmental liens or claims; and (7) any theories of transferee or successor

liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order.

9.      Except as expressly provided by the Final APA with respect to the Assumed Liabilities and Assumed Executory Contracts, all persons and entities holding Encumbrances on all or any portion of the Purchased Assets, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such persons' or entities' rights relating to any such Encumbrances. On the Closing Date, the Debtors and each holder of an Encumbrance is authorized and directed to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release its Encumbrances on the Purchased Assets, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist, and the Debtors are authorized to execute and deliver payoff letters to the Initial DIP Agent, the Senior DIP Agent, and the Prepetition First Lien Administrative Agent (as defined in the Initial DIP Credit Agreement).

10.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets and assign the Assumed Executory Contracts to the Purchaser in accordance with the terms of the Final APA and this Sale Order.

11.      All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

12.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

13.      Upon the Closing, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file termination statements, instruments of

satisfaction, releases of Liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which any person or entity has or may assert with respect to all or any portion of the Purchased Assets.

14.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order to consummate the transactions contemplated by the Final APA.  The provisions of this Sale Order authorizing the Sale of the Purchased Assets by the Debtors free and clear of Encumbrances shall be self-executing, and none of the Debtors, the Purchaser or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; *provided, however,* that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Sale Order or the Final APA.

15.    Notwithstanding anything to the contrary in this Sale Order, in the Sale Motion or the Final APA, the Purchaser shall receive the benefits and burdens of, and be responsible for payment in full of all accrued charges, payments, and the like arising under or pursuant to the Assumed Liabilities.  If the Purchaser disputes any alleged charge, credit or payment under any

of the Assumed Liabilities and the parties are unable to come to an agreement regarding the amount actually owed, the dispute may be adjudicated by the Bankruptcy Court or any other court of competent jurisdiction. The Purchaser shall be entitled to file or record a certified copy of this Sale Order in the applicable public records in order to give notice of the termination and release of Encumbrances pursuant to this Sale Order (other than Encumbrances securing the Senior DIP Facility made pursuant to the Senior DIP Credit Agreement as provided in the final order approving the Senior DIP Facility and the Senior DIP Credit Agreement, which Encumbrances are expressly preserved, except with respect to the Debtors, their estates and all property of the Debtors' estate which shall be, upon Purchaser's assumption of the Senior DIP Facility, deemed released, discharged and which shall have no further obligation under the Senior DIP Facility).

16.     This Sale Order shall be effective as a determination that, as of the Closing Date, all Claims (as defined in section 101(5) of the Bankruptcy Code), other than Assumed Liabilities, arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Closing Date, in any way relating to the Debtors or the chapter 11 cases or the negotiation, formulation, preparation, entry into, or dissemination of the DIP Credit Agreements, and the Final APA have been unconditionally released, discharged and terminated as to Purchaser, the Directing Lenders, and the Purchased Assets.

**Executory Contracts and Leases**

17.     Upon the Closing of the Sale, the Debtors are authorized and directed to assume and assign the Assumed Executory Contracts to the Purchaser free and clear of all Encumbrances, except for the obligation to pay the applicable Cure Amount, if any. With

respect to each Assumed Executory Contract, the payment of the applicable Cure Amount (if any) by the Purchaser shall (a) effect a cure of all monetary defaults existing thereunder as of the Closing Date, (b) compensate the applicable Contract Counterparty for any actual pecuniary loss resulting from such default, and (c) together with the assumption of the Assumed Executory Contract by the Purchaser, constitute adequate assurance of future performance thereof.  The Purchaser shall then have assumed the Assumed Executory Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Executory Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts by the Purchaser, neither the Debtors nor the Purchaser shall not have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assumed Executory Contracts that accrue and become due and payable on or after the Closing Date.

18.    Pursuant to the terms of the Final APA, the Purchaser may, by written notice to the Debtors, choose to exclude certain of the Debtors' contracts or leases from the list of Assumed Executory Contracts until two (2) business days prior to the Closing Date, in which case each such contract or lease shall not be assumed by the Debtors.  The *Supply Agreement dated as of February 22, 2012* entered into between the Debtors and Domtar and the *Consignment Agreement dated as of September 23, 2016* entered into between the Debtors and Domtar, as may be amended on consent between Domtar and the Purchaser, are assumed. Domtar and the Purchaser agree, promptly following the closing of the Sale, to engage in good faith negotiations regarding mutually beneficial opportunities to improve the Supply Agreement, the Consignment Agreement, and the business relationship between the parties.

19.    Any provisions in any Assumed Executory Contract that prohibits or conditions the assignment of such Assumed Executory Contract or allows the party to such Assumed Executory Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Executory Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to section 365(f) of the Bankruptcy Code.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assumed Executory Contracts have been satisfied, and such assumption and assignment shall not constitute a default thereunder.  Upon the Closing and the payment of the required Cure Amount by the Purchaser, if any, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under each Assumed Executory Contract.

20.    Other than as provided under the Final APA, there shall be no rent accelerations, assignment fees, deposits, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Executory Contracts.

21.    Upon the Closing and the payment of the Cure Amount by the Purchaser, if any, applicable to any Assumed Executory Contract, the Purchaser shall be deemed to be substituted for the relevant Debtor as a party to such Assumed Executory Contract, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under such Assumed Executory Contract.

22.    Upon the Closing and the payment of the applicable Cure Amounts, if any, the Assumed Executory Contracts shall remain in full force and effect, and no default shall exist

thereunder and there shall not exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

23.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors, their estates, the Purchaser, or any of their respective successors and assigns any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Executory Contracts existing as of the Closing Date or arising by reason of the Closing.

**Other Provisions**

24.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, including with respect to the Credit Bid Steps and the assumption of the Senior DIP Obligations, its successors and assigns, or the Purchased Assets, with respect to (a) any Encumbrance arising prior to the Closing of the Sale or (b) successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors or assigns, assets or properties; (iii) creating, perfecting, or enforcing any Encumbrance against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right or subrogation or recoupment of any kind against

any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew and license, permits or authorizations to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

25.    To the maximum extent available under applicable law and to the extent provided for under the Final APA, except as otherwise set forth in this Sale Order, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets and, to the maximum extent available under applicable law and to the extent provided for under the Final APA, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date, and all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding seeking to revoke, terminate or refuse to renew, based upon conduct occurring prior to the Sale, any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.  All existing licenses or permits applicable to the Purchased Assets shall remain in place for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

26.     Except for the Assumed Liabilities and as set forth in paragraph 40 of this Sale Order, the Purchaser shall not have any liability for any obligation of the Debtors arising under or related to any of the Purchased Assets.  Without limiting the generality of the foregoing, and except for the Assumed Liabilities and as set forth in paragraph 40 of this Sale Order, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates.  By virtue of the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Sale Order any plan of reorganization or liquidation confirmed in these chapter 11 cases, the Purchaser and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, *de facto* or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities.  To the extent allowed by applicable law and except as otherwise set forth in this Sale Order, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor or employment law, COBRA, WARN Act or similar state law claims, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.

27.     The transactions contemplated by the Final APA and this Sale Order are undertaken by the Purchaser, the Directing Lenders, the Initial DIP Agent, and the Senior DIP Agent without collusion and in good faith, as that term is described in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Executory Contracts), unless such authorization and such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, the Purchaser, the Directing Lenders, the Initial DIP Agent, and the Senior DIP Agent are entitled to the full protections of section 363(m) of the Bankruptcy Code.

28.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

29.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

30.     The Final APA is authorized and approved in its entirety.  The failure specifically to include any particular provision of the Final APA or the ancillary documents in connection therewith, including, without limitation, the Transitions Services Agreement, in this Sale Order shall not diminish or impair the effectiveness of such provision.

31.     The Final APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court provided that any such modification, amendment or

supplement does not have a material adverse effect on the Debtors' estates or on the interests of the Purchaser as determined by the Bankruptcy Court or a court of competent jurisdiction.

32.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final APA, all amendments thereto and any releases, waivers and consents hereunder and thereunder, and each of the agreements executed in connection therewith to which any of the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to any of the foregoing.

33.    The Debtors' bank accounts and cash management system constitute Purchased Assets under the Final APA and shall be transferred to the Purchaser pursuant to the Final APA and this Sale Order.  Notwithstanding anything to the contrary herein, solely with respect to the Debtors' bank accounts held at Fifth Third Bank ending in -2579, -1944, -1886, -1829, the Purchaser shall be the successor-in-interest to all rights and obligations of the Debtors under that certain Master Treasury Management Agreement entered into by and between Appvion, Inc. and Fifth Third Bank dated September 2016 (the "Treasury Agreement"); *provided, however*, that Purchaser's obligations to indemnify Fifth Third Bank under the Treasury Agreement shall not extend to any claims or causes of action asserted in these Chapter 11 Cases or in the Litigations (as defined below).

34.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion filed in these chapter 11 cases, the terms of this Sale Order shall govern.

36.    Nothing in this Sale Order or the Final APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order, including, but not limited to, liability under the federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1388 (the "Clean Water Act"), the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§ 691.1-691.1001 (the "Clean Streams Law"), the Solid Waste Management Act, Act of July 7, 1980, P.L.380, as amended 35 P.S. §§ 6018.101-6018.1004, ("Solid Waste Management Act"), the Surface Mining Reclamation and Conservation Act, Act of November 30, 1971, P.L. 554, as amended, 52 P.S. §§ 1396.1-1396.19b ("Surface Mining Act"), the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, as amended, 52 P.S. §§ 30.51-30.206 ("Coal Refuse Disposal Act"), Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 510-17 ("Administrative Code"), other applicable state or federal law, and the Consent Order and Agreement between the Pennsylvania Department of Environmental Protection and Appvion Inc. dated August 29, 2016.

37.    Nothing in this Sale Order limits or modifies any of the Debtors' obligations under 28 USC § 959(b) or releases, nullifies, precludes or enjoins the enforcement of any police power or regulatory liability by a government unit against any Debtor, including, but not limited to, liability under the Clean Water Act, the Clean Streams Law, the Solid Waste Management Act, the Surface Mining Act, the Coal Refuse Disposal, Section 1917-A of the Administrative Code, other applicable state or federal law, and the Consent Order and Agreement between the Pennsylvania Department of Environmental Protection and Appvion Inc. dated August 29, 2016.

38.    Nothing in this Sale Order or the Final APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

39.    Notwithstanding anything in this Sale Order to the contrary, this Sale Order and the findings at the hearing are without prejudice to the claims and causes of action asserted or that may be asserted (including claims that may be asserted against additional parties) in the Supreme Court of New York for the County of New York in a civil action captioned (a) *KeyBank National Association vs. Franklin Advisors Inc., et al.,* Index No. 651517/2018 and (b) *Fifth Third Bank vs. Franklin Advisors, Inc., et al.,* Index No. 651518/2018, along with (c) any successor or related action(s) and or as such litigation(s) may be transferred or removed (as and if applicable) under applicable law, (as may be amended, the "Litigations"), and any related claims, rights, defenses or counterclaims thereto; *provided, however*, that the plaintiffs in the Litigations agree that no claim or cause of action in the Litigations shall constitute a collateral attack on any order of this Court (including, but not limited to, this Sale Order, the Initial DIP Order, the Senior DIP Order), the DIP Facility Documents (as defined in the Initial DIP Credit Agreement), or the Senior DIP Facility Documents (as defined in the Senior DIP Credit Agreement).

40.    The Settlement Agreement entered into as of May 9, 2018 by the Debtors, the Committee, the Ad Hoc Group of Second Lien Noteholders, Franklin Advisors, Inc., and the Purchaser, which was approved by Order of this Court entered on May [14], 2018 (the

"Settlement Agreement"), shall be and hereby is incorporated herein by reference and, where inconsistent with the Final APA, shall be deemed to amend the Final APA, including:

    a. The wind-down budget (the "Wind-Down Budget") annexed to the Settlement Agreement shall be funded in full by the Purchaser at the Closing Date. The Wind-Down Budget covers, or the Final APA shall be deemed to provide, for the assumption of the Debtors' estimates of all priority claims, all administrative claims, including but not limited to all claims arising under section 503(b)(9) of the Bankruptcy Code, all unpaid post-petition obligations, and professional fees; provided that if a contract is removed from the list of Assumed Executory Contracts prior to the Sale Closing Date as permitted by paragraph 18 of this Sale Order, the Purchaser will satisfy any claim arising under section 503(b)(9) of the Bankruptcy Code related to such contract unless such amount is included in the Wind-Down Budget.

    b. The Purchaser shall purchase all preference claims under section 547 of the Bankruptcy Code, except for preference claims: (i) related to or arising out of the Appvion Retirement Savings and Employee Stock Ownership Plan; (ii) against the Debtors' current and former directors and officers (excluding any of the Debtors' current or former directors or officers who (x) served in such capacity at any time in the four months prior to the Sale Closing Date, (y) are retained or employed by the Purchaser as of the Sale Closing Date); or (iii) against insiders of the Debtors. All preference claims arising under section 547 of the Bankruptcy Code transferred to the Purchaser under the Final APA shall be, as of the Sale Closing Date, released and waived by the Purchaser.

    41.   Notwithstanding anything to the contrary contained in this Sale Order and notwithstanding the transactions contemplated by this Sale Order, the obligations of the Debtors to the Prepetition First Lien Agents and any Prepetition First Lien Lender (each as defined in the Initial DIP) for the reimbursement of fees and expenses, including, without limitation, professional fees and expenses (the "Prepetition First Lien Reimbursement Obligations") as set forth in paragraph 16(c) of the Initial DIP Order shall continue in full force and effect. In connection therewith, the Debtors shall pay in full in cash at the closing of the sale of the Purchased Assets any such unpaid Prepetition First Lien Reimbursement Obligations. If, notwithstanding the foregoing, after the closing of the sale of the Purchased Assets, there are

unpaid Prepetition First Lien Reimbursement Obligations, including any fees and expenses incurred after the closing of such sale, the Debtors shall promptly pay such fees and expenses from the Wind Down Budget (as defined in the Final APA), and upon presentment, the amount of such fees and expenses shall be segregated and placed in escrow from the Wind Down Budget.

42.    The Purchaser shall comply with any applicable "know your customer" information requests, or other similar, reasonable administrative requirements that are reasonably requested by any counterparties that are regulated financial institutions with which the Purchaser shall be doing business upon and/or after the completion of the sale, solely to the extent such regulated financial institution is acting in its capacity as a business or commercial counterparty to the Purchaser and not as a lender to or a holder of equity in the Purchaser.

Dated: ___May 14___, 2018
     Wilmington, Delaware

                                        The Honorable Kevin J. Carey
                                        United States Bankruptcy Judge