## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

In re:

       OLDAPCO, INC., *et al.*,[1]

           Debtors.

----------------------------------------------------------- x

:  Chapter 11

:

:  Case No. 17-12082 (KJC)

:

:  (Jointly Administered)

:

:  **Related D.I.: 792, 795, 826, 827, 836, 837, 838, 840, 937, 939, 940, 944, 945, 946, 957, 961**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND AMENDED JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLANS OF LIQUIDATION

WHEREAS, Oldapco, Inc. (formerly known as, Appvion, Inc.) and its affiliated debtors (the "Debtors") as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee," and together with the Debtors, the "Plan Proponents"), having proposed and filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (i) the *Second Amended Joint Combined Disclosure Statement and Chapter 11 Plans of Liquidation* (as may be further modified, amended, and/or supplemented from time to time, the "Combined Plan and Disclosure Statement," or individually, the "Disclosure Statement" and the "Plan," as appropriate) [D.I. 836],[2] a copy of which is attached to this order (the "Plan Confirmation Order") as Exhibit 1, and (ii) the Plan Supplement, dated August 7, 2018 [D.I. 946];

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Oldapco, Inc. (f/k/a Appvion, Inc.) (6469), Oldapco PDC Corp. (f/k/a Paperweight Development Corp.) (4992), Oldapco PDC Cap Corp. (f/k/a PDC Capital Corporation) (1197), Oldapco ARFI LLC (f/k/a Appvion Receivables Funding I LLC) (9218) and Oldapco APVN LLC (f/k/a APVN Holdings LLC) (8543). The corporate headquarters and the mailing address for the Debtors listed above is 825 East Wisconsin Avenue, P.O. Box 359, Appleton, Wisconsin 54912.

[2]     Capitalized terms used but not otherwise defined in this Plan Confirmation Order shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

1

WHEREAS, on June 20, 2018, the Bankruptcy Court entered the *Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing the Voting Record Date, (E) Scheduling a Plan Confirmation Hearing and Deadline for Filing Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan, and (F) Approving the Related Form of Notice* [D.I. 840] (the "Interim Approval Order"), approving, among other things, the Disclosure Statement on an interim basis, the contents of the Solicitation Package (defined herein), and procedures for soliciting and tabulating vote to accept or reject the Plan;

WHEREAS, the appropriate Ballots for voting on the Plan having been duly transmitted to Holders of Claims entitled to vote on the Plan as set forth in the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Combined Disclosure Statement and Chapter 11 Plans of Liquidation* dated as of August 10, 2018 [D.I. 957] (the "Voting Declaration"); and the *Declaration of Alan D. Holtz in Support of the Second Amended Joint Combined Disclosure Statement and Chapter 11 Plans of Liquidation* dated as of August 10, 2018 [D.I. 961] (the "Holtz Declaration"), having been filed in support of approval of the Disclosure Statement and confirmation of the Plan; and responses or objections to confirmation of the Plan having been filed by August 2, 2018 (and together with any objections raised at the Plan Confirmation Hearing, the "Objections");

WHEREAS, the Bankruptcy Court having held a hearing on August 14, 2018 to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan (the "Plan Confirmation Hearing"); and the Objections having been resolved, overruled or withdrawn prior

to or during the Plan Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby FINDS, DETERMINES AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. <u>Findings and Conclusions</u>.   The findings of fact and conclusions of law set forth herein and on the record of the Plan Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable here by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.   The Bankruptcy Court has jurisdiction over the Debtors' Chapter 11 Cases under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   Approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b) and as such, the Bankruptcy Court has jurisdiction to enter a final order with respect to the Combined Plan and Disclosure Statement.   Venue is proper before the Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409.   The Debtors are eligible debtors under section 109 of the Bankruptcy Code.   The Debtors and the Creditors' Committee are proper Plan Proponents under section 1121(a) of the Bankruptcy Code.

C. <u>Judicial Notice</u>.   The Bankruptcy Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all

3

pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Debtors' Chapter 11 Cases.

D. Burden of Proof.  The Plan Proponents have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Plan Proponents have met their burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E. Chapter 11 Petitions.  On October 1, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtors continue as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

F. Statutory Committee of Unsecured Creditors.  On October 11, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Creditors' Committee in these Chapter 11 Cases.

G. The Compromises and Settlements Embodied in the Plan are Fair, Reasonable, and in the Best Interests of the Debtors' Estates.  The Plan is the result of good faith, arm's-length negotiations among the Debtors, the Creditors' Committee, the Majority DIP Lender, the Ad Hoc Group of Second Lien Noteholders, the Purchaser and other parties in interest.  The Plan constitutes a good faith, arm's-length compromise and settlement of all Claims, Interests and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made or obligation to be incurred under the Plan.  Such compromises or settlements (including the 2L/Committee Settlement and the releases contemplated thereby, and the settlement approved by entry of the

4

*Order Approving Motion of the Debtors to Approve Settlement Agreement Between the Debtors and the Pension Benefit Guaranty Corporation with Respect to PBGC Claims* [D.I. 907] (the "PBGC Settlement") (the terms of the 2L/Committee Settlement and the PBGC Settlement are incorporated into this Plan Confirmation Order by reference)) (i) are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and (ii) are fair, equitable, and reasonable.

H.  Adequacy of the Disclosure Statement.   The Disclosure Statement contains extensive material information regarding the Debtors allowing parties entitled to vote on the Plan to make informed decisions regarding the Plan.  Additionally, the Disclosure Statement contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.  Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

**Solicitation and Voting**

I.  Transmittal and Mailing of Solicitation Package, Solicitation Materials and Notices.   The Voting Declaration is evidence that the transmittal and service of the Combined Plan and Disclosure Statement, the Ballots, and other solicitation materials (the "Solicitation Package") were adequate, sufficient, and in compliance with the Interim Approval Order, and all parties required to be given notice of the Plan Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and

5

adequate notice in accordance with the Interim Approval Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and such parties have had sufficient opportunity to appear and be heard.  No other or further notice or re-solicitation is required.  The filing and notice of the Plan Supplement (and any modifications or supplements thereto) was proper and in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and no other or further notice shall be required.

    J.   Good Faith Solicitation.  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Plan Proponents, the members of the Creditors' Committee (solely in their capacity as members of the Creditors' Committee), and each of their Professionals, representatives, members, officers, directors, employees, and agents have acted in "good faith" within the meaning of sections 1125(e) and 1129(a)(3) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed there, the exculpation, injunction, and release provisions in Article XII of the Plan.

    K.   Voting.  The Voting Declaration is evidence that votes to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Interim Approval Order, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L.   Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).   The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors and Creditors' Committee as Plan Proponents, in satisfaction of section 1129(a)(1) of the Bankruptcy Code.

   a.   Proper Classification (11 U.S.C. §§ 1122, 1123 (a)(1)).   With the exception of the Administrative Expense Claims, the Professional Fee Administrative Claims, Priority Tax Claims, Statutory Fee Claims, which need not be classified, Articles VI and VII of the Plan classify Classes of Claims against, and Interests in, the Debtors.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Interests in each Class or between Classes.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

   b.   Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2)).   Articles VI and VII of the Plan specify that Claims in Class 1 (DIP Facility Claims), Class 2 (Other Secured Claims), Class 4 (Other Priority Claims) (collectively, the "Unimpaired Classes") are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and therefore satisfy section 1123(a)(2) of the Bankruptcy Code.

7

c. <u>Specific Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.   Articles VI and VII of the Plan designate Claims in Class 3 (Second Lien Secured Note Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims) and Class 7 (Equity Interests) (collectively, the "<u>Impaired Classes</u>") as impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Interests in those Classes, in satisfaction of section 1123(a)(3) of the Bankruptcy Code.

d. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.   The Plan provides for the same treatment for each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to less favorable treatment for such Claim or Interest, in satisfaction of section 1123(a)(4) of the Bankruptcy Code.

e. <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.   The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (i) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee, (ii) the transfer and vesting of the Liquidating Trust Assets to the Liquidating Trust, to be administered in accordance with the terms of the Plan and the Liquidating Trust Agreement for the benefit of the Liquidating Trust's beneficiaries, (iii) the issuance of Warrants to the Holders of Allowed Second Lien Secured Note Claims, (iv) the cancellation of certain existing agreements, obligations, instruments and Interests, and (v) substantive consolidation of the Debtors.   Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

f.  Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. §
1123(a)(6)).  The Plan provides for the transfer and vesting of the Liquidating
Trust Assets to the Liquidating Trust, to be liquidated and distributed in
accordance with the Plan and the Liquidating Trust Agreement, and the
dissolution of the Debtors.  The Plan does not expressly provide for the inclusion
in the charter of any Debtor, a provision prohibiting the issuance of nonvoting
securities, because the Plan does not provide for the issuance of any securities in
the Debtors.  Therefore, the Plan satisfies the requirements set forth in section
1123(a)(6) of the Bankruptcy Code.

g.  Appointment of the Liquidating Trustee (11 U.S.C. § 1123(a)(7)).  Article VIII.A
of the Plan regarding the appointment of the Liquidating Trustee, and the
disclosure of the identity of the Liquidating Trustee in the Plan Supplement is
consistent with the interests of creditors and interest holders and with public
policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

h.  Earnings from Personal Services (11 U.S.C. § 1123(a)(8)).  Section 1123(a)(8) of
the Bankruptcy Code applies only to individual debtors and is not applicable to
these Chapter 11 Cases.

i.  Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. §
1123(b)(1)).  As permitted by section 1123(b)(1) of the Bankruptcy Code, under
Articles VI and VII of the Plan, Claims or Interests in the Impaired Classes are
impaired and Claims in the Unimpaired Classes are unimpaired.

EAST\157757686.9

j.  Assumption and Rejection (11 U.S.C. § 1123(b)(2)).   Article XI of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365 of the Bankruptcy Code.

k.  Settlement/Retention of Claims or Interests (11 U.S.C. § 1123(b)(3)).   Article IX of the Plan provides that the prosecution and settlement of all Causes of Action shall be the sole responsibility and exclusive right of the Liquidating Trust, as set forth in the Liquidating Trust Agreement.  Thus, the Plan satisfies the requirements of section 1123(b)(3) of the Bankruptcy Code.

l.  Sales of Assets and Distributions of Proceeds (11 U.S.C. § 1123(b)(4)).   The Debtors sold substantially all of their assets to the Purchaser, under the 363 Sale Order.  Remaining assets that were not sold to the Purchaser or are not being used to satisfy certain administrative and priority claims are being transferred to and will vest in the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust.

m.  Modification of Rights (11 U.S.C. § 1123(b)(5)).   As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in Impaired Classes.  The Plan leaves unaffected the rights of Holders of Claims in Unimpaired Classes.

n.  Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).   As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Article XII of the Plan.  Based upon the facts and circumstances of

10

these Chapter 11 Cases, the release, exculpation, and injunction provisions in the Plan are narrowly tailored, integral consideration and critical parts of the Plan, and the Released Parties and Exculpated Parties have relied on the efficacy and conclusive effects of such releases and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Cases and the Plan. Such release, exculpation, and injunction provisions in Article XII of the Plan are (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties and the Exculpated Parties, including but not limited to the negotiation of the 2L/Committee Settlement and the PBGC Settlement, (ii) in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, (iii) fair, equitable, and reasonable, and (iv) a bar to any of the Persons barred as set forth in the Plan from asserting any Interests, Claims, or Causes of Action released under the Plan in favor of the Released Parties. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Plan Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

o. <u>Sale of Exempt Property (11 U.S.C. § 1123(c))</u>.  Section 1123(c) of the Bankruptcy Code applies only to individual debtors and is not applicable to these Chapter 11 Cases.

11

p.  Cure of Defaults (11 U.S.C. § 1123(d)).  Section 365(b)(1) of the Bankruptcy
Code requires that any monetary amounts by which any executory contract or
unexpired lease that may be assumed under the Plan is in default be satisfied by
payment or provision for payment of the required cure amount, if any.  The Plan
contemplates the rejection of all executory contracts and unexpired leases not
previously assumed by the Debtors and assigned to the Purchaser.  Thus, the Plan
complies with section 1123(d) of the Bankruptcy Code.

M.  The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).
The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the
Bankruptcy Rules, the Local Rules, and other applicable law in transmitting the Plan, the
Disclosure Statement, the Ballots, and related documents and notices and in soliciting and
tabulating the votes on the Plan.  Accordingly, the Plan satisfies the requirements of section
1129(a)(2) of the Bankruptcy Code.

N.  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan Proponents have
proposed the Plan, including all documents necessary to effectuate the Plan, in good faith and not
by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the
Bankruptcy Code.  The Plan Proponents' good faith is evident from the facts and record of these
Chapter 11 Cases, the Disclosure Statement, and the record of the Plan Confirmation Hearing
and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the
legitimate and honest purpose of maximizing the value of the Debtors' assets and maximizing
distributions to creditors.  Further, the Plan's classification, exculpation, release, and injunction
provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of
the Bankruptcy Code, and are integral to the Plan and supported by valuable consideration.

O. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payments made or promised by the Debtors, or a person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

P. <u>Directors, Officers and Trustees (11 U.S.C. § 1129(a)(5))</u>. The Plan satisfies section 1129(a)(5) of the Bankruptcy Code, as the identity of the Liquidating Trustee has been fully disclosed in the Plan Supplement, and the appointment of the Liquidating Trustee is consistent with the interests of Holders of Claims against, and Interests in, the Debtors and with public policy as the Creditors' Committee and the Ad Hoc Group of Second Lien Noteholders participated in the selection and the negotiation of compensation for the Liquidating Trustee.

Q. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

R. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Allowed Claim or Allowed Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment. The liquidation analysis (attached as Exhibit B to the Combined Plan and Disclosure Statement and the Plan Supplement, the "<u>Liquidation Analysis</u>"), including the methodology used and assumptions made therein: (a) is reasonable, persuasive, credible, and

13

accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that Holders of Allowed Claims and Allowed Interests in every Class will recover as much or more under the Plan on account of such Claim and Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

S. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Claims in the Unimpaired Classes are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Holders of Claims in Class 3 and Class 5 voted to accept the Plan. With respect to the remaining Impaired Classes that did not vote to accept or are deemed to reject the Plan, the Plan is confirmable because it does not discriminate unfairly and is fair and equitable with respect to such Classes, as required by section 1129(b)(1) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

T. Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

U. Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). Section 1129(a)(10) of the Bankruptcy Code is satisfied as two (2) Impaired Classes of Claims (Class 3 and Class 5) have accepted the Plan, determined without including any acceptances of the Plan by any insider.

14

V. Feasibility (11 U.S.C. § 1129(a)(11)). Section 1129(a)(11) of the Bankruptcy Code is satisfied. Because the Plan expressly contemplates liquidation, confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors.

W. Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 1129(a)(12) of the Bankruptcy Code is satisfied, as all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan. As provided in the Plan, (i) any Statutory Fees from the Petition Date through the Effective Date shall be paid by the Debtors on the Effective Date and (ii) any Statutory Fees relating to any period of time after the Effective Date shall be paid by the Liquidating Trust and such obligation shall continue until such time as the Chapter 11 Cases are closed, dismissed or converted.

X. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors are not obligated to pay retiree benefits and, therefore, are in compliance with the requirements of section 1129(a)(13) of the Bankruptcy Code.

Y. No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not individuals and are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z. Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA. No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors were moneyed, business, or commercial corporations and,

accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.      <u>No Unfair Discrimination, Fair and Equitable (11 U.S.C. § 1129(b))</u>.  No Impaired Class entitled to vote under the Plan voted to reject the Plan.  The Impaired Classes that are deemed to have rejected the Plan are Class 6 (Intercompany Claims) and Class 7 (Equity Interests).  Based upon the evidence proffered, adduced, and presented by the Plan Proponents at the Plan Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  The Plan does not discriminate unfairly against any Holders of Claims or Interests in the rejecting Classes because all similarly situated holders of Claims and Interests will receive substantially similar treatment, and the Debtors have a valid rationale for the Plan's classification scheme and the treatment provided for different Classes.  The Plan is also fair and equitable with respect to the rejecting Classes because no Holder of any Allowed Claim or Allowed Interest that is junior to such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of an Allowed Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Allowed Claim.  Thus, the Plan may be confirmed notwithstanding that the aforementioned Classes did not accept the Plan.

CC.      <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan being confirmed in these Chapter 11 Cases.  Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

DD.      <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

16

Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.     <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. Any modifications made to the Plan since the solicitation thereof do not constitute changes that materially and adversely change the treatment of any Claims or Interests. Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or resolicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified.

FF.     <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.     <u>Implementation</u>. All documents necessary to implement the Plan, including, without limitation, the Liquidating Trust Agreement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

HH.     <u>Preservation of Causes of Action</u>. It is in the best interests of the Debtors, their creditors, and Holders of Claims and Interests against the Debtors that, except for the Causes of Action and Claims that have been released in favor of the Released Parties under the Plan, all Causes of Action shall survive confirmation and be transferred, assigned, and vest in the Liquidating Trust free and clear of all Liens, Claims, charges or other encumbrances, and from and after the Effective Date the Liquidating Trust shall have the rights, powers, and interests of the Estates to, subject to the provisions of the Plan and other Plan Documents, pursue, settle, or

17

abandon such Causes of Action as the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code.  For the avoidance of doubt, the Litigation Claims that the Liquidating Trust may pursue may include, but are not limited to, claims for breach of fiduciary duties by certain officers and directors (excluding any of the Debtors' current or former directors or officers who (i) served in such capacity at any time in the four months prior to the 363 Sale Effective Date, (ii) were retained or employed by the Purchaser as of the 363 Sale Effective Date, and (iii) remain retained or employed by the Purchaser for a period of not less than 180 days following the 363 Sale Effective Date), claims grounded in tort, claims for negligence, claims based upon breach of contract, claims for professional malpractice, and/or claims for or relating to the ESOP (other than Direct ESOP Claims), to the fullest extent permitted by law.

II.  <u>Compromise, Settlement, Release, Exculpation, and Injunction</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the compromises, settlements, releases, exculpations and injunctions set forth in Article XII of the Plan.  Based upon the record of these Chapter 11 Cases and the evidence proffered or adduced at the Plan Confirmation Hearing, the Bankruptcy Court finds that the compromises, settlements, releases, exculpations, and injunctions set forth in Article XII of the Plan are consistent with applicable law and integral components of the Plan.  The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third-Party Release.  The Third-Party Release is: (a) consensual; (b) essential to Plan confirmation; (c) materially beneficial to and in the best interests of the Debtors, their Estates and their stakeholders, and is important to the overall objectives of the Plan; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties

18

asserting any claim or cause of action released pursuant to the Third-Party Release against any of the Released Parties; (g) given in exchange for the good and valuable consideration provided by the Released Parties; (h) a good-faith settlement and compromise of the claims released by the Third-Party Release; and (i) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

JJ.   Good Faith.   The Plan Proponents have proposed the Plan in good faith, with the legitimate and honest purposes of maximizing value to each of the Debtors' Estates for the benefit of their stakeholders.   Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the Plan Proponents have acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

KK.       363 Sale.   The 363 Sale was an inextricable part of the Plan.   Notice of the 363 Sale was given to each creditor of the Debtors, each of whom was given the opportunity to object to the 363 Sale.   The 363 Sale was made necessary by continuing losses and depleting assets. Pursuant to the terms of the 2L/Committee Settlement, the Warrants issued by the Purchaser to the Debtors prior to the confirmation of the Plan may only be redistributed by the Debtors in exchange for Allowed Second Lien Secured Note Claims pursuant to the Plan.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.   Adequacy of the Disclosure Statement.   The Disclosure Statement is approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy

Code and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

2. <u>Solicitation and Tabulation</u>.  The Solicitation Package and the forms of Ballots approved on an interim basis pursuant to the Interim Approval Order are hereby approved on a final basis. The solicitation and tabulation of votes on the Plan complied with the Interim Approval Order and applicable bankruptcy law, were appropriate and satisfactory, and are approved in all respects.

3. <u>Confirmation of the Plan</u>.  The Plan and each of its provisions, including the Plan Supplement, shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved, and the appropriate representatives of the Estates and Liquidating Trust are authorized to execute and deliver such documents as are necessary to implement the Plan and/or to cause the Effective Date to occur.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified and as modified by any modifications made at the Plan Confirmation Hearing, are incorporated by reference into and are an integral part of this Plan Confirmation Order.  The failure to specifically describe, include, or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Plan Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety as if set forth *in haec verba* in this Plan Confirmation Order.

EAST\157757686.9

4.  <u>Compromise of Controversies</u>.  For the reasons stated, the Plan constitutes a good faith, arm's-length compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest or any Distribution to be made or obligation to be incurred under the Plan, and the entry of this Plan Confirmation Order constitutes approval of all such compromises and settlements.

5.  <u>Objections</u>.  All Objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Plan Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

6.  <u>Binding Effect</u>.  On the Effective Date, and effective as of the Effective Date, the Plan shall be binding upon the Debtors, the Liquidating Trust, and all present and former Holders of Claims against and Interests in the Debtors, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Plan.  On the Effective Date, after giving effect to the transactions that are to occur on or before the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and under section 1127(b) of the Bankruptcy Code.

7.  <u>Liquidating Trust</u>.

i.  On the Effective Date, the Liquidating Trust will be established according to the terms of the Plan and the Liquidating Trust Agreement.  Upon establishment of the Liquidating Trust, all Liquidating Trust Assets shall

EAST\157757686.9

be deemed assigned, transferred to and shall vest in the Liquidating Trust free and clear of all Liens and Claims, subject to the terms of this Plan Confirmation Order and the Liquidating Trust Agreement, without any further action of any of the Debtors or any officers, directors, members, partners, employees, agents, advisors, or representatives of the Debtors or the Liquidating Trustee.

ii.   Under section 1141 of the Bankruptcy Code, as of the Effective Date, all Liquidating Trust Assets shall vest in the Liquidating Trust and all Assets dealt with in the Plan shall be free and clear of all Claims and Liens, except as otherwise specifically provided in any of the Plan Documents or in this Plan Confirmation Order.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.

iii.  For federal income tax purposes, Beneficiaries of the Liquidating Trust shall be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

iv.   As set forth in the Plan Supplement, Eugene Davis and Alan Halperin are appointed as co-trustees to serve as the Liquidating Trustee.   The Liquidating Trustee shall have such powers, duties, and responsibilities as

22

is provided for in the Plan and the Liquidating Trust Agreement and shall be compensated in accordance with the Plan and the Liquidating Trust Agreement.

v.  From and after the Effective Date, prosecution and settlement of all Litigation Claims and objections to Claims shall be the sole responsibility of the Liquidating Trust under the Plan, the Liquidating Trust Agreement, and this Plan Confirmation Order.  From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates, subject to the Plan Documents, to pursue, settle or abandon such Litigation Claims and Claims objections as the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code.  All Litigation Claims and Claims objections that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.  No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, this Plan Confirmation Order, or any other document, to any Litigation Claims or Claim objection against it as any indication that the Debtors or Liquidating Trustee will not pursue any and all available Litigation Claims or Claims objection against such Person.   The Liquidating Trustee expressly reserves all Litigation Claims and Claims objections, except for any Litigation Claim and Claims objection against any Person that is expressly released or waived under the Plan and, therefore, no preclusion doctrine, including the doctrines of res judicata,

collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Litigation Claims or Claims objections upon, after, or as a consequence of confirmation or consummation of the Plan.

vi. The beneficial interests in the Liquidating Trust that are distributed to the Holders of Allowed Second Lien Secured Note Claims may be represented by an "escrow" CUSIP held at DTC (defined below) that is freely tradeable and transferable.

8. <u>General Authorizations</u>.  The Debtors and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtors or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims or Allowed Interests receiving Distributions according to the Plan, at the request or direction of the Debtors or Liquidating Trustee, as applicable, shall from time to time prepare, execute, and deliver any agreements, documents, instruments, or notices, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan. Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) according to applicable law, without any

further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

9.   Compensation and Reimbursement Claims.  All Professionals seeking Bankruptcy Court approval of allowance and payment of Professional Fee Administrative Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases by the date that is thirty (30) days after the Effective Date.  Any Professional Fee Administrative Claim that is not timely asserted in accordance herewith and with Article V.A. of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, the Estates, the Liquidating Trust, or any of their assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.

10. Payment of Allowed Professional Fee Administrative Claims.   Upon approval of professional fees consistent with the procedures established by the Bankruptcy Court, the Debtors or the Liquidating Trustee are authorized and shall release and make payments, in accordance with the terms of the Plan, on all unpaid, outstanding Professional fees approved by this Court either through the interim compensation procedures or by separate order of this Court. To the extent that any amounts funded by the Purchaser for purposes of the Wind-Down Budget remain following the payment of all Allowed Professional Fee Administrative Claims, Allowed General Administrative Expense Claims, Priority Tax Claims, and Statutory Fees, such amounts will be released to the Liquidating Trust solely for the purposes of investigating and commencing Litigation Claims, paying the Liquidating Trust Operating Expenses, and making distributions to the Liquidating Trust Beneficiaries.   Notwithstanding anything to the contrary herein, the amounts funded by the Purchaser or otherwise held by the Debtors for the purposes of payment

25

of Professional Fee Administrative Claims shall remain in escrow pending (i) the payment of such Professional Fee Administrative Claims, or (ii) the resolution of any dispute regarding such Professional Fee Administrative Claims, unless otherwise ordered by the Court. For the avoidance of doubt, funds allocated to a particular Professional under the Wind-Down Budget shall not be reallocated to any other Professional.

11. <u>Administrative Expense Claims</u>.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been filed on or before the Administrative Expense Claim Bar Date.  Any Administrative Expense Claim that is not timely asserted in accordance herewith and with Section V.A. of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, the Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.

12. <u>Assumed and Rejected Contracts and Leases</u>.   On the Effective Date, all Executory Contracts not previously assumed and/or assigned (including, but not limited to, in connection with the 363 Sale and under the 363 Sale Order), not subject to a pending motion or pleading to assume and/or assign or reject as of the Effective Date, or not rejected before the Effective Date, shall be deemed rejected.

13. <u>Rejection Damages</u>.   All damages arising from the rejection under the Plan of an executory contract or unexpired lease must be filed with the Claims Agent by no later than thirty (30) days after the earlier of the Effective Date or the date provided in any other applicable Order of the Bankruptcy Court.  Any proofs of Claim with respect to a Rejection Damages Claim not

26

filed within such time shall be forever barred from assertion against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trust Assets, and their property and such Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Rejection Damages Claim, absent further order of the Bankruptcy Court.  All Rejection Damages Claims will be treated as General Unsecured Claims under the Plan and, to the extent they are deemed Allowed General Unsecured Claims, will receive the treatment afforded Allowed General Unsecured Claims against the applicable Debtor.

14. Claims Objections.  Following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.  The Liquidating Trustee, and any other party in interest to the extent permitted under section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the date that is one hundred and eighty (180) days after the Effective Date (the "Claims Objection Deadline"); *provided, however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Liquidating Trustee.

15. Distributions; Reserves.  The provisions of the Plan governing distributions, reserves, and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

16. Consents and Approvals.  This Plan Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, commonwealth, or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

17. <u>Release of Liens</u>.    Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, hypothecation, or other security interests against any property of the Estates shall be deemed fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated notices, schedules, or statements typically filed in accordance with the Uniform Commercial Code or other applicable law.  The Plan and/or this Plan Confirmation Order may be filed or recorded as further notice and evidence of all such releases and discharges.

18. <u>Cancellation of Documents</u>.    On the Effective Date, except to the extent otherwise provided in the Combined Plan and Disclosure Statement, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Interests in the Debtors shall be deemed automatically extinguished, cancelled, and of no further effect with the Debtors having no continuing obligations thereunder, and shall be deemed rejected and terminated.

19. <u>Injunction to Protect Estates and Settling Parties' Assets</u>.  From and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or rights giving rise to any equitable relief against the Assets or any Equity Interests in the Debtors arising prior to the Effective Date are permanently enjoined from taking any of the following actions against the Estates, the Released Parties, any member of the Creditors' Committee in its capacity as such, the Liquidating Trust, the Liquidating Trustee, or any of their respective property or Assets (collectively, the "<u>Estate Assets</u>") on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or proceeding seeking to collect or to recover in any manner against, or assert control or dominion over, the Estate Assets;

28

(b) enforcing, attaching, collecting, or recovering in any manner against the Estate Assets, any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Estate Assets; (d) asserting setoff unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of this Plan Confirmation Order (notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff) or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan; provided, however, that such Persons and Entities shall not be precluded from exercising their rights under and consistent with the terms of the Combined Plan and Disclosure Statement, this Plan Confirmation Order, or the Liquidating Trust Agreement.

20.  Injunction Against Interference with the Plan.  All Holders of Claims and Equity Interests, and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the Debtors', the Liquidating Trust's, the Liquidating Trustee's, and their respective Related Persons' implementation or substantial Consummation of the Combined Plan and Disclosure Statement. Notwithstanding the foregoing, nothing in this Plan Confirmation Order or the Plan shall release any of the Litigation Claims.

21. Term of Injunctions and Stays.  Unless otherwise provided in the Plan, Disclosure Statement, or this Plan Confirmation Order, all injunctions or stays in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court) and existing on the Plan Confirmation Date (excluding any injunctions or stays contained in the

Plan or the Plan Confirmation Order) shall remain in full force and effect until the later of the Effective Date and the date indicated in the Order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Combined Plan and Disclosure Statement or this Plan Confirmation Order, as applicable. All injunctions or stays contained in the Plan or this Plan Confirmation Order shall remain in full force and effect in accordance with their terms.

22. <u>Debtor Releases</u>.  As of the Effective Date, for good and valuable consideration provided by each of the Released Parties and each member of the Creditors' Committee (solely in its capacity as such), the adequacy of which is hereby confirmed, on the Plan Confirmation Date and effective as of the Effective Date, to the fullest extent permitted under applicable law, the Released Parties are deemed released and discharged by the Debtors and the Estates of and from any and all Claims, interests, obligations, suits, judgments, damages, demands, debts, rights, remedies, causes of action, setoffs and liabilities (other than the rights of the Debtors to enforce the Combined Plan and Disclosure Statement, and the contracts, instruments, releases, and other agreement or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act or omission, transaction, event, or other occurrences, whether direct or derivative, taking place on or prior to the Effective Date in connection with, or related to, (i) the Debtors or their operations; (ii) the Chapter 11 Cases; (iii) any investment by any Releasing Party in the Debtors or the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest in the Debtors; (iv) any action or omission with respect to any indebtedness under which the Debtors are or were a borrower or guarantor, or any equity investment in the Debtors; (v) the subject

matter of, or the transactions or events giving rise to, any Claim or Interest in the Chapter 11 Cases; (vi) the negotiation, formulation, preparation, entry into, or dissemination of the (a) the Prepetition Credit Agreement; (b) 363 Sale Documents; (c) the DIP Credit Agreements; (d) the Second Lien Indenture and related documents; (e) the Combined Plan and Disclosure Statement; and (f) any other action or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; (vii) any Challenge Proceeding (as defined in the DIP Credit Agreements) including the transactions referenced or described in the Standing Motion; and (viii) any action taken in furtherance of the formation of the Purchaser, other than with respect to Claims, causes of action or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to constitute actual fraud, willful misconduct, or gross negligence. Notwithstanding the foregoing, nothing in the Plan or this Plan Confirmation Order shall release any of the Litigation Claims. Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Liquidating Trustee's, or the Debtors' Estates asserting any claim, Cause of Action or other assertion of liability released pursuant to the Debtor Release. Notwithstanding anything to the contrary contained in the Combined Plan and Disclosure Statement, and notwithstanding anything to the contrary

31

contained in this Plan Confirmation Order, the Pension Benefit Guaranty Corporation (the "PBGC") does not release, discharge, or exculpate any claim or cause of action relating to any liability under Title I or Title IV of ERISA against any persons or entities other than the Debtors in these Chapter 11 Cases. For the avoidance of doubt, nothing in the Plan or this Plan Confirmation Order shall enjoin, impair, or prevent the PBGC from pursuing or collecting any such liability from any liable party. Notwithstanding the foregoing, nothing in the Plan or this Plan Confirmation Order shall release any claims of or obligations owed to Domtar, or the first priority liens and security interests of Domtar, arising under the Domtar Agreements, the Domtar DIP Order and applicable law, and provided for in the order of the Bankruptcy Court dated May 14, 2018 [D.I. 751] approving the sale of substantially all of the Debtors' assets to the Purchaser (the "Sale Order"), including but not limited to the cure obligation set forth in the Sale Order and any unpaid post-petition obligations and any obligations owed to Domtar under the Domtar Agreements, which have been assumed by the Purchaser.

23. Releases by Holders of Claims. To the fullest extent permitted under applicable law, all of the Releasing Parties shall be deemed fully, completely, unconditionally, irrevocably, and forever to release the Released Parties of and from any and all Claims and causes of action and any other debts, obligations, rights, suits, damages, actions, setoffs, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to (i) the Debtors or their operations; (ii) the Chapter 11

32

Cases; (iii) any investment by any Releasing Party in the Debtors or the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest in the Debtors; (iv) any action or omission of any Releasing Party with respect to any indebtedness under which the Debtors are or were a borrower or guarantor, or any equity investment in the Debtors; (v) the subject matter of, or the transactions or events giving rise to, any Claim or Interest in the Chapter 11 Cases; (vi) the negotiation, formulation, preparation, entry into, or dissemination of the (a) the Prepetition Credit Agreement; (b) the 363 Sale Documents; (c) the DIP Credit Agreements; (d) the Second Lien Indenture and related documents; (e) the Combined Plan and Disclosure Statement; and (f) any other action or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, related thereto; (vii) any Challenge Proceeding (as defined in the DIP Credit Agreements) including the transactions referenced or described in the Standing Motion; and (viii) any action taken in furtherance of the formation of the Purchaser. Notwithstanding the foregoing, nothing in the Plan or this Plan Confirmation Order shall release any of the Litigation Claims or the ESOP Preserved Claims. Entry of this Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good-faith settlement and compromise of the claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to

33

any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

24. Exculpation.  The Exculpated Parties shall not have or incur any liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, action, proceeding, Cause of Action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, setoff, or right to payment arising or accruing on or after the Petition Date, or the decision to initiate these Chapter 11 Cases, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, admitted, secured, or unsecured, with or without priority, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any Claim Holder or Holder of an Equity Interest, or any other party in interest, or any of their respective Related Persons, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation, solicitation, Filing, and confirmation of the Combined Plan and Disclosure Statement, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the substantial Consummation or Consummation of the Combined Plan and Disclosure Statement, the administration of the Combined Plan and Disclosure Statement, or the property to be liquidated and/or distributed under the Combined Plan and Disclosure Statement, except for their fraud, willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section

34

1125(e). Notwithstanding the foregoing, nothing in the Plan or this Plan Confirmation Order shall release any of the Litigation Claims.

25. Defenses.    Notwithstanding anything to the contrary in the Plan or in this Plan Confirmation Order, none of the releases, discharges, injunctions and other benefits granted to the Released Parties, in their respective capacities as Released Parties, shall prohibit the Holder of any Claim from asserting any defense, including, without limitation, set-off or recoupment, to any Cause of Action asserted by or through the Debtors or the Liquidating Trustee, or their respective successors or assigns, and all defenses are hereby preserved.

26. Setoffs.    Except as otherwise provided herein, the Debtors and Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.    Rights of a setoff of any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

27. Consolidation Under Local Rule 1017-3.    The Plan provides for the substantive consolidation of the Debtors and their estates within the meaning of Local Rule 1017-3 and the substantive consolidation of the Debtors is hereby approved.

28. Payment of Statutory Fees.    As provided in the Plan, any Statutory Fees relating to any period of time after the Effective Date shall be paid by the Liquidating Trust and such obligation shall continue until such time as these Chapter 11 Cases are closed, dismissed, or converted. The Debtors shall file all monthly operating reports for periods covering pre-Effective Date periods on or about the Effective Date.    The Liquidating Trustee shall file all post-confirmation reports until such time as the Chapter 11 Cases are closed.

29. Exemptions Under Sections 1145 and 1146.  The Purchaser shall be deemed the legal successor of the Debtors within the meaning of section 1145 of the Bankruptcy Code and the offering, issuance and distribution of (a) beneficial interests in the Liquidating Trust under the Combined Plan and Disclosure Statement, (b) the Warrants under the Combined Plan and Disclosure Statement, and (c) all shares of common stock of the Purchaser or other securities issued upon exercise of the Warrants in accordance with the terms of the Warrant Agreement, in each case, shall be exempt from among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state or local laws in reliance upon section 1145 of the Bankruptcy Code.  In addition, any and all (x) beneficial interests in the Liquidating Trust issued or distributed under the Combined Plan and Disclosure Statement, (y) Warrants issued or distributed under the Combined Plan and Disclosure Statement, and (z) shares of common stock of the Purchaser or other securities issued upon exercise of the Warrants in accordance with the terms of the Warrant Agreement, in each such case, will be freely tradable by the recipients thereof, subject to: (A) the provisions of the Bankruptcy Code section 1145(b)(1) relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, as amended, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (B) in the case of the beneficial interests of the Liquidating Trust, the provisions of the Liquidating Trust Agreement; and (C) in the case of the Warrants, the provisions of the Warrant Agreement.  In accordance with section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor to the Liquidating Trust, or to any other Person under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage

recording tax or other similar tax or governmental assessment, and all applicable state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.  If the Debtors or the Purchaser elect on or after the Effective Date to reflect any ownership of the Warrants through the facilities of the Depositary Trust Company, its nominee, Cede & Co., or any Affiliate thereof ("DTC") or any stock transfer agent, the Debtors need not provide further evidence other than the Plan or this Plan Confirmation Order with respect to the treatment of such securities under applicable securities laws.  DTC or any such stock transfer agent shall be required to accept and conclusively rely upon the Plan or this Plan Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for DTC or such stock transfer agent's book-entry delivery, settlement, and depository services.

30. No fractional Warrants will be distributed, and fractions shall be calculated to one decimal place and rounded up or down to the closest whole Warrant (with a half Warrant or greater rounded up and less than a half Warrant rounded down). No consideration shall be provided in lieu of fractional shares that are rounded down. DTC is considered a single holder for rounding and distribution purposes.

31. Chief Restructuring Officer.   On the Effective Date, the Chief Restructuring Officer shall be discharged and released from any duties or responsibilities in the Chapter 11 Cases and under the *Order Authorizing Debtors to (i) Employ and Retain AP Services, LLC and (ii) Designate Alan D. Holtz as Chief Restructuring Officer* [D.I. 216], except with respect to obligations arising under confidentiality agreements, which shall remain in full force and effect, the payment of Allowed Professional Fee Administrative Claims, administration of any escrow thereof,

37

preparation and filing of monthly operating reports for the period through the Effective Date and payment of any outstanding Statutory Fees, including quarterly fees of the United States Trustee for the District of Delaware, through the Effective Date.

32. <u>Case Closure</u>.    Pursuant to section 350 of the Bankruptcy Code, the closing of the Chapter 11 Cases is hereby authorized.  Upon the Effective Date, the Court will enter one or more order(s), in the form attached as <u>Exhibit 2</u>, directing the Clerk of the Bankruptcy Court to close such Chapter 11 Cases; provided, however, that the Chapter 11 Case of Oldapco, Inc., Case No. 17-12082 (KJC) (the "<u>Lead Case</u>") shall remain open until such time as the Lead Case Debtor or the Liquidating Trustee files with the Court such documents required by the Bankruptcy Rules and any applicable orders of the Court to close the Lead Case.  Upon entry of this Plan Confirmation Order, counsel for the Debtors shall submit proposed forms of orders to the Court to enter on the docket of each individual Debtor's Chapter 11 Case to close such Chapter 11 Case effective on the Effective Date, except for the Lead Case.  At any time prior to the closing of the Lead Case, Lead Case Debtor or the Liquidating Trustee may move to reopen a closed case.  All U.S. Trustee fees payable under 28 U.S.C. § 1930 for the closed cases shall be paid on or as soon as reasonably practicable following the Effective Date.  The closing of the Chapter 11 Cases, other than the Lead Case, will in no way prejudice the Lead Case Debtor's or the Liquidating Trustee's rights to object or otherwise contest a proof of Claim filed against any of the Debtors, commence or prosecute any Cause of Action or Litigation Claim to which any of the Debtors may be a party, or a claimant's rights to receive Distributions under the Plan to the extent such claimant's Claim is ultimately allowed, nor will the closing of such Chapter 11 Cases otherwise alter or modify the terms of the Plan

33. Retention and Jurisdiction.    Following the Effective Date, the Bankruptcy Court shall retain jurisdiction in accordance with the terms of Article XV of the Plan.

34. Immediately Effective Order.    The stay imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e), and this Plan Confirmation order shall be effective and enforceable immediately upon entry.

35. Resolutions.

    a.    ESOP Reservation of Rights.    Nothing in the Plan or Plan Confirmation Order shall operate as a waiver or release or otherwise impair in any respect (i) any Claim held by the ESOP, the ESOP Committee or its members, or ESOP participants (as legal or beneficial Holders of Interests in any Debtor), arising from or relating to the ESOP or any Interest in any Debtor, against any Person other than the Debtors (the "ESOP Preserved Claims"), or (ii) any legal or beneficial rights to and under Insurance Policies, including any D&O Insurance, accruing to the ESOP, ESOP Committee or its members, or ESOP participants under applicable law.  For the avoidance of doubt, the ESOP, ESOP Committee and ESOP participants are not Releasing Parties in respect of any ESOP Preserved Claims, and the ESOP Preserved Claims shall not be subject to the Release, the Injunction or Exculpation, nor shall their prosecution be construed as Interference with the Plan.  Nothing in the Plan or Plan Confirmation Order shall be interpreted as requiring ESOP Preserved Claims to be commenced in Delaware or governed by the laws of the State of Delaware.  Grant Lyon, in his capacity as an ESOP Committee member, shall have standing to prosecute the ESOP Claims and other ESOP Preserved Claims, may receive compensation of up to the amounts

39

set forth in the formula for chapter 7 trustee compensation in section 326(a) of the Bankruptcy Code, and may be represented by counsel to be compensated on a contingency basis in accordance with the terms of the Retention Agreement with Beus Gilbert PLLC set forth in the Plan Supplement; *provided however*, that any such compensation shall not be paid by the Liquidating Trust or from the Liquidating Trust Assets.

b. <u>Settlement of Indenture Trustee Matters</u>.    Notwithstanding anything to the contrary contained in the Combined Plan and Disclosure Statement, U.S. Bank National Association (the "<u>Indenture Trustee</u>"), as indenture trustee and collateral agent for those certain 9.000% Second Lien Senior Secured Notes due 2020 (the "<u>Second Lien Notes</u>") issued pursuant to that certain indenture, dated November 19, 2013 (as supplemented, the "<u>Indenture</u>"), shall be a "Released Party" as defined under the Plan.  With respect to the Indenture Trustee's outstanding monthly fees and expenses, including the outstanding fees and expenses of its professionals, arising under the Indenture and owing to the Indenture Trustee pursuant to the *Final Order (i) Authorizing Debtors to (a) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (b) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (ii) Granting Adequate Protection to Prepetition Secured Parties pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and Granting Related Relief* [D.I. 234] (the "<u>Adequate Protection Order</u>") entered in these cases on October 31, 2017 for the months of March, April, May and June of 2018 (the "<u>Indenture</u>

40

Trustee Fees"),  the Debtors made a partial payment to the Trustee to be applied

to the Indenture Trustee Fees (the "Partial Payment").  Notwithstanding the

Partial Payment, nothing herein shall waive or impair the Trustee's right to seek

payment of any of the outstanding Indenture Trustee Fees, including additional

Indenture Trustee Fees that the Trustee and its professionals have incurred and

will incur through and after the Effective Date not satisfied by the Partial

Payment, including, but not limited to, seeking enforcement of its charging lien

pursuant to the Indenture.  With respect to additional Indenture Trustee Fees that

the Indenture Trustee and its professionals will incur relating to distributions and

distribution-related matters on account of the Second Lien Notes, nothing herein

shall waive or impair the Indenture Trustee's right, to seek payment of such

Indenture Trustee Fees through enforcement of its charging lien pursuant to the

Indenture.  For the avoidance of doubt, nothing herein shall entitle or be deemed

to have entitled the Trustee to seek or otherwise claim payment from the

Liquidating Trust or its assets. The resolutions contained herein are consistent

with the terms of the Indenture and the Adequate Protection Order.

c.  The Chubb Insurance Contracts.  Notwithstanding anything to the contrary in the

Combined Plan and Disclosure Statement, the Plan Documents, this Plan

Confirmation Order, the Liquidating Trust Agreement or any other document

related to the foregoing or order of the Bankruptcy Court (including, without

limitation, any other provision that purports to be preemptory or supervening,

grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires

a party to opt out of any releases):

41

i.  nothing alters the rights and obligations of the Debtors (and their Estates) on the one hand, and ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Great Northern Insurance Company (collectively and with each of their respective affiliates and successors, the "Chubb Companies") on the other hand, under any of the insurance policies or any related agreements issued by the Chubb Companies to the Debtors at any time or which provide coverage to the Debtors (the "Chubb Insurance Contracts"), or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Chubb Insurance Contracts;

ii. all of the Debtors' Estates' benefits, rights, and interests under any Chubb Insurance Contract to which the Debtors and/or the Debtors' Estates may be insureds or beneficiaries shall vest with the Liquidating Trust without alteration, and the Liquidating Trust shall remain liable for all of the Debtors' obligations under the Chubb Insurance Contracts regardless of when they arise without the need for the Chubb Companies to file or serve any objection to a proposed cure amount, or a request, application, claim, proof of claim or motion for payment or allowance of any Administrative Expense Claim, and the Chubb Companies shall not be subject to any bar date or similar deadline governing cure amounts or Administrative Expense Claims, *provided, however*, that the Chubb Companies must file

42

a request, application, claim, proof of claim or motion for payment or

allowance of any Administrative Expense Claim by the applicable bar date

or similar deadline if the Chubb Companies are aware of a liquidated

claim amount due and owing to the Chubb Companies as of the applicable

bar date or similar deadline; and

iii. For the avoidance of doubt, notwithstanding Articles II.A.111 and VIII.E

of the Plan and paragraph 7 of this Plan Confirmation Order, the proceeds

of the Chubb Insurance Contracts shall not be Liquidating Trust Assets

unless payable to the Debtors in accordance with the terms of the Chubb

Insurance Contracts.

d. <u>The Zurich Insurance Contracts</u>.  Notwithstanding anything to the contrary in the

Combined Plan and Disclosure Statement, the Plan Documents, this Plan

Confirmation Order, the Liquidating Trust Agreement or any other document

related to the foregoing or order of the Bankruptcy Court (including, without

limitation, any other provision that purports to be preemptory or supervening,

grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires

a party to opt out of any releases):

i. nothing alters the rights and obligations of the Debtors (and their Estates)

on the one hand, and  Zurich American Insurance Company and American

Zurich Insurance Company , ( collectively,  and with each of  their

respective affiliates and successors,  "<u>Zurich</u>")  on the other hand, under

any of the insurance policies or any related agreements issued by the

Zurich  to the Debtors at any time or which provide coverage to the

43

Debtors (the "Zurich Insurance Contracts"), or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Zurich Insurance Contracts; and

ii.  For the avoidance of doubt, notwithstanding Articles II.A.111 and VIII.E of the Plan and paragraph 7 of this Plan Confirmation Order, the proceeds of the Zurich Insurance Contracts shall not be Liquidating Trust Assets unless payable to the Debtors in accordance with the terms of the Zurich Insurance Contracts.

e.  Rosebud Mining Company.    Notwithstanding anything in the Combined Plan and Disclosure Statement, the Plan Supplement, this Plan Confirmation Order and/or any other Plan Documents to the contrary, Claim No. 329 in the amount of $176,636.71 filed by Rosebud Mining Company is allowed and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code and shall be paid in full on or before the Effective Date.

f.  The Dow Chemical Company.

i.  Notwithstanding anything in the Combined Plan and Disclosure Statement, the Plan Supplement, this Plan Confirmation Order and/or any other Plan Documents to the contrary, Claim No. 532 in the amount of $276,071.69 filed by The Dow Chemical Company ("Dow") is allowed and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code and shall be paid in full on or before the Effective Date.

44

ii. Notwithstanding anything in the Combined Plan and Disclosure Statement, the Plan Supplement, this Plan Confirmation Order and/or any other Plan Documents to the contrary, Dow and its subsidiaries and affiliates, with respect to the Purchaser and the Purchaser's subsidiaries and affiliates, will not be deemed Releasing Parties or otherwise subject to the injunction, exculpation and release provisions set forth in Article XII of the Combined Plan and Disclosure Statement

g. Pennsylvania Department of Environmental Protection.

i. Nothing in this Plan Confirmation Order or the Plan releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-confirmation owner or operator of property after the date of entry of this Plan Confirmation Order, including, but not limited to, liability under the federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1388 (the "Clean Water Act"), the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§ 691.1-691.1001 (the "Clean Streams Law"), the Solid Waste Management Act, Act of July 7, 1980, P.L.380, as amended,35 P.S. §§ 6018.101-6018.1004, ("Solid Waste Management Act"), the Surface Mining Reclamation and Conservation Act, Act of November 30, 1971, P.L. 554, as amended, 52 P.S. §§ 1396.1-1396.19b ("Surface Mining Act"), the Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, as amended, 52 P.S. §§ 30.51-30.206 ("Coal Refuse Disposal Act"), Section 1917-A of the Administrative Code, Act of April 9, 1929,

45

P.L. 177, as amended, 71 P.S. § 510-17 ("Administrative Code"), other

applicable state or federal law, and the Consent Order and Agreement

between the Pennsylvania Department of Environmental Protection and

Appvion Inc. dated August 29, 2016.

ii. Nothing in this Plan Confirmation Order limits or modifies any of the

Debtors' obligations under 28 USC § 959(b) or releases, nullifies,

precludes or enjoins the enforcement of any police power or regulatory

liability by a government unit against any Debtor, including, but not

limited to, liability under the Clean Water Act, the Clean Streams Law, the

Solid Waste Management Act,  the Surface Mining Act, the Coal Refuse

Disposal, Section 1917-A of the Administrative Code, other applicable

state or federal law, and the Consent Order and Agreement between the

Pennsylvania Department of Environmental Protection and Appvion Inc.

dated August 29, 2016.

iii. Nothing in this Plan Confirmation Order or the Plan authorizes the transfer

or assignment of any governmental (a) license, (b) permit, (c) registration,

(d) authorization, or (e) approval, or the discontinuation of any obligation

thereunder, without compliance with all applicable legal requirements and

approvals under police or regulatory law.  Nothing in this Plan

Confirmation Order divests any tribunal of any jurisdiction it may have

under police or regulatory law to interpret this Plan Confirmation Order or

to adjudicate any defense asserted under this Plan Confirmation Order.

h. United States.

46

i. Notwithstanding any provision to the contrary in the Plan, this Plan
Confirmation Order or any implementing Plan Documents (collectively,
"Documents"), nothing shall: (1) affect the ability of the United States to
pursue any non-debtors to the extent allowed by non-bankruptcy law for
any liabilities that may be related to any federal tax liabilities owed by the
Debtors or the Debtors' Estates; (2) affect the rights of the United States to
assert setoff and recoupment and such rights are expressly preserved; (3)
require the United States to file an administrative claim in order to receive
payment for any liability described in 11 U.S.C. Section 503(b)(1)(B) and
(C); (4) be construed as a compromise or settlement of any claim, interest
or cause of action of the United States; (5) divest any court, commission,
or tribunal of jurisdiction to determine whether any liabilities asserted by
the United States are enjoined or otherwise barred by the Documents or
the Bankruptcy Code; or (6) deem any distribution to the United States to
be made on the Effective Date if such distribution was not actually made
on the Effective Date.  Administrative expense claims of the United States
(including any penalties, interest or additions to tax entitled to priority
under the Bankruptcy Code) allowed pursuant to the Plan or section 503 of
the Bankruptcy Code shall accrue interest and penalties as provided by
non-bankruptcy law until paid in full.

ii. Moreover, nothing shall effect a release, enjoin, discharge or otherwise
preclude any claim whatsoever against any Debtor or any of the Debtors'
Estates by or on behalf of the United States for any liability arising a) out

47

of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Liquidating Trust, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

48

iii.  Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins any liability to a Governmental Unit on the part of any Entity other than the Debtors or the Debtors' estates.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside of this Bankruptcy Court, any liability against an Entity other than the Debtors or the Debtors' estates.  Nothing in this Confirmation Order or the Plan shall affect any valid right of setoff or recoupment of any Governmental Unit.

Dated:  August 14, 2018
Wilmington, Delaware

_____

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

49