**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| OLDAPCO, INC.,[1] | Case No. 17-12082 (CTG) |
| Debtor. | Hearing Date: March 25, 2026 at 3:00 p.m. (ET)<br>Objection Deadline: March 5, 2026 at 4:00 p.m. (ET) |

**MOTION OF THE LIQUIDATION TRUSTEES FOR ENTRY OF AN ORDER
(I) ISSUING A FINAL DECREE CLOSING THIS CHAPTER 11 CASE,
(II) TERMINATING THE SERVICES OF THE CLAIMS AGENT, (III) APPROVING
TREATMENT OF UNCLAIMED DISTRIBUTIONS, (IV) AUTHORIZING THE
DISPOSITION OF ANY REMAINING ASSETS, (V) AUTHORIZING THE
DESTRUCTION OF CERTAIN RECORDS, (VI) EXTENDING THE TERM
OF THE LIQUIDATING TRUST TO ENABLE THE LIQUIDATION
TRUSTEES TO COMPLETE CERTAIN OF THE TRAILING OBLIGATIONS, AND
(VII) GRANTING RELATED RELIEF**

The Appvion Liquidating Trust (the "Liquidating Trust"), through its co-trustees (together, the "Liquidation Trustees"), and as successor in interest to the bankruptcy estates of Oldapco, Inc. (formerly known as Appvion, Inc.) and its affiliated debtors (together, the "Debtors") in the above-captioned chapter 11 case and the related cases, by and through the undersigned counsel, makes this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order") (a) issuing a final decree closing this chapter 11 case (the "Chapter 11 Case"), (b) terminating the engagement of the claims agent, (c) approving the treatment of unclaimed distributions, (d) authorizing the disposition of any remaining assets, (e) authorizing the destruction of the Debtors' remaining business records, (f) extending the term of the Liquidating Trust to enable the Liquidation Trustees to complete certain of the Trailing Obligations (defined below), and (g) granting related relief.

---

[1] The remaining debtor in these chapter 11 cases is Oldapco, Inc. (f/k/a Appvion, Inc.) (6469). Final Decree Orders were entered for all cases but the lead case on August 29, 2018.

The Liquidation Trustees submits that the relief requested herein is appropriate because the Liquidation Trustees have (a) substantially consummated the Plan, (b) completed the claims review and reconciliation process, (c) complied with their financial reporting obligations (including the payment of all United States Trustee fees related thereto), (d) completed the liquidation of substantially all of the Liquidating Trust's assets, and (e) consistent with the Plan, made distributions to holders of allowed general unsecured claims and to second lien bondholders (the latter through payment to their indenture trustee).

In support of this Motion, the Liquidation Trustees respectfully state as follows:

## JURISDICTION

1. The district court has jurisdiction under 28 U.S.C. § 1334, and this matter was referred to this Court under 28 U.S.C. § 157.[2] This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested in this Motion are sections 105(a) and 350(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the applicable provisions of the Confirmation Order and Plan.

## GENERAL BACKGROUND

3. On October 1, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 3, 2017, the Court entered the *Order*

---

[2] In addition, in the Confirmation Order and the Plan (each, defined below), this Court retained jurisdiction to, among other things, "issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code" and to "hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, the Liquidating Trust Agreement, any transactions or payments contemplated hereby or thereby" and to "enter a final decree closing the Chapter 11 Cases." Plan Art. XIV (f), (h), (q); *see* Confirmation Order ¶ 33.

*Authorizing the Retention and Appointment of Prime Clerk LLC as Claims and Noticing Agent* [D.I. 56]. Prime Clerk LLC, now known as Kroll, was the Debtors' claims and noticing agent ("Claims Agent") prior to the Effective Date (defined below) of the Plan and now serves the same functions for the Liquidation Trust.

4. Until the closing of their asset sale on June 13, 2018, the Debtors continued in possession of their properties and control of their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors and the Official Committee of Unsecured Creditors jointly filed a combined disclosure statement and proposed plan of liquidation, which was subsequently amended (the "Plan")[D.N. 970-1], and on August 14, 2018, the Court entered the *Findings of Fact, Conclusions of Law and Order Approving and Confirming Second Amended Joint Combined Disclosure Statement and Chapter 11 Plans of Liquidation* [D.N. 970].

5. The effective date of the Debtors' Plan occurred on August 24, 2018 (the "Effective Date"). Upon the Effective Date, the Liquidating Trust came into being and Eugene Davis and Alan D. Halperin became the Liquidation Trustees of the Liquidating Trust. The Debtors filed a *Notice of (I) Occurrence of Effective Date Under the Second Amended Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation, (II) Deadline to File Requests for Payment of Administrative Expense Claims Incurred Between the Petition Date and the Effective Date, (III) Deadline for Professionals to File Professional Fee Administrative Claims, and (IV) Deadline to File Rejection Damages Claims*. [D.N. 999].

6. The Plan provided that a modest amount of money would be transferred to the Liquidating Trust for distribution to holders of allowed general unsecured claims, and those funds were distributed in March of 2022, after the completion of the claims review and reconciliation

process.[3] In addition, pursuant to the terms of the Plan and the Liquidating Trust Agreement,[4] the Liquidating Trust was empowered to review and, if appropriate, bring certain Litigation Claims, as defined in the Plan. *See* Plan, Article VIII (G)(1).

7. Promptly after the Effective Date, the Liquidation Trustees retained litigation counsel and undertook an investigation of possible causes of action. A complaint captioned *Alan D. Halperin and Eugene I. Davis, as Co-Trustees of the Appvion Liquidating Trust vs. Mark R. Richards, et al.*, was filed in the Bankruptcy Court and assigned Adv. No. 18-50955. Per the terms of the Plan, any recovery from this action was to be shared by the holders of (i) general unsecured claims and (ii) second lien bondholder claims (whose collateral position yielded no value to them). The Liquidating Trust has no other beneficiaries.

8. After considerable motion practice, including motions by the defendants to both dismiss and to transfer venue, the Bankruptcy Judge issued an opinion and order, dismissing one count of the complaint, denying the motions to dismiss with respect to all other counts, and transferring venue to the United States District Court, Eastern District of Wisconsin with respect to counts I through VIII. [D.N. 112, 113].

9. Thereafter, there was a significant amount of litigation before the Wisconsin District Court, Case No. 1:19-cv-1561 (WCG), and one significant issue was appealed by the Liquidation Trustees to the Seventh Circuit Court of Appeals. The Court of Appeals reversed the District's Court's decision and remanded to the District Court, where there was extensive fact and expert discovery. Both the plaintiffs and the defendants submitted summary judgment motions after discovery was concluded.

---

[3] The distribution was *de minimis* as the amount of money available for distribution was a fund of $600,000, and the dollar amount of allowed general unsecured claims (excluding the bondholders who did not share in the first distribution) was more than $230 million.

[4] Capitalized terms used in this Motion but not defined have the means ascribed to such terms in the Plan.

10. The Liquidation Trustees reached a settlement with the defendants while the motions for summary judgment were pending. (The terms of the settlement are subject to a confidentiality agreement.) As a result of the settlement, the Liquidating Trust has made a second and final distribution to holders of allowed general unsecured claims, and a first and final distribution to second lien bondholders, with the latter payment being made to the indenture trustee for such bondholders. There is no further source of recovery for holders of allowed unsecured claims or second lien bondholders.

11. As of the date of this Motion and per the terms of this Court's Order dated July 12, 2024 [D.N. 1260], the Liquidating Trust's termination date is August 24, 2026, Both the Plan and the language of the Order grant the Court authority to further extend that deadline.

### RELIEF REQUESTED

12. By this Motion, the Liquidation Trustees respectfully request, pursuant to Bankruptcy Code Sections 105(a), 350(a), 363(b)(1) 554(a), and 1142, Bankruptcy Rules 3022 and 6007 and Local Rule 3022-1, the entry the Proposed Order attached hereto as <u>Exhibit A</u>, (a) issuing a final decree closing this Chapter 11 Case, (b) terminating the engagement of the Claims Agent, (c) approving the treatment of any unclaimed distributions, (d) authorizing the disposition of any remaining cash and non-cash assets, (e) authorizing the destruction of the Debtors' remaining business records, (f) extending the term of the Liquidating Trust, to the extent necessary, and (g) granting related relief.

### BASIS FOR RELIEF REQUESTED

**A.    Final Decree Closing the Chapter 11 Case**

13. Bankruptcy Code section 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Further,

section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Bankruptcy Rule 3022, which implements section 350, provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

15. Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid." Del. Bankr. L.R. 3022-1(a).

16. The term "fully administered" is not defined in the Bankruptcy Code or Bankruptcy Rules. The Advisory Committee Note to the 1991 amendments to Bankruptcy Rule 3022 (the "<u>Advisory Committee Note</u>") sets forth the following list of non-exclusive factors to be considered in determining whether a case has been fully administered:

    a.     whether the order confirming the plan has become final;

    b.     whether deposits required by the plan have been distributed;

    c.     whether the property proposed by the plan to be transferred has been transferred;

    d.     whether the debtor or the successor to the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

    e.     whether payments under the plan have commenced; and

    f.     whether all motions, contested matters and adversary proceedings have been finally resolved.

Advisory Committee Note.

17. Courts interpreting Bankruptcy Rule 3022 have observed that the Rule "is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered," that the above-listed factors should be considered on a "case-by-case basis", and that not all factor are required to be present for the court to close a case. *In re Federated Dep't Stores, Inc.*, 43 Fed. Appx. 820, 822 (6th Cir. 2002) (citing cases). Courts also have considered whether the plan has been "substantially consummated" in determined whether to close a case. *See In re Motors Liquidation Co.*, 625 B.R. 605, 615 (Bankr. S.D.N.Y. 2021) (citing cases).

18. The Advisory Committee Note further states that the entry of a final decree "should not be delayed solely because the payments required by the plan have not been completed," and a court "should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future." Advisory Committee Note. Additionally, "a final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the [Bankruptcy] Code." *Id.* Ultimately, "courts have wide discretion in determining whether to close a chapter 11 case and Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *Motors Liquidation*, 625 B.R. at 614 (internal citation and quotations omitted).

19. The Liquidation Trustees submits that as of the filing of this Motion, the Chapter 11 Case has been fully administered and the Plan has been substantially consummated, making it appropriate for the Court to enter a final decree closing the Chapter 11 Case. Among other factors:

    a. The Confirmation Order is a final and non-appealable order of this Court.

    b. Under the terms of the Confirmation Order, the Plan was deemed to be substantially consummated on the Effective Date. *See* Confirmation Order ¶ 6 [D.N. 970].

   c. To the best of the Liquidation Trustees' knowledge, all deposits or reserves required to be made under the terms of the Confirmation Order and the Plan have been made and have been fully resolved as of the filing of this Motion.

   d. On the Effective Date, the Liquidating Trust Assets were transferred to the Liquidating Trust.

   e. In accordance with the terms of the Confirmation Order, the Plan and the Liquidating Trust Agreement, the Liquidation Trustees assumed responsibility for the liquidation of the Liquidating Trust's remaining assets and the distributions to holders of a general unsecured claims pursuant to the terms thereof.

   f. As discussed below, distributions have been made pursuant to the terms of the Confirmation Order, the Plan and the Liquidating Trust Agreement.

   g. All motions, contested matters, and adversary proceedings in this Chapter 11 Case have been resolved and the litigation pending before the Wisconsin District Court has likewise been resolved.

20. For the reasons set forth in this Motion, the Liquidation Trustees submits the Plan has in fact been substantially consummated.

21. Among other things, the Liquidation Trustees and their professionals completed the review and reconciliation of the general unsecured claims filed against the Debtors' estates, and made an initial distribution to holders of allowed general unsecured claims. The Liquidation Trustees also investigated potential claims and causes of action, and commenced and pursued the litigation that resulted in a second distribution to holders of allowed general unsecured claims, and a distribution to holders of second lien bondholder claims.[5] All litigation and adversary proceedings are resolved.

22. To date, the Liquidation Trustees have made two distributions. The first was a distribution of the $600,000 fund that was earmarked for holders of allowed general unsecured

---

[5] These were the only categories of claimants that were beneficiaries of the Liquidating Trust. The payment of allowed secured, priority and administrative claims were addressed by the Debtors.

8

creditors, and the second was a distribution in a significantly larger, confidential amount to that group and to second lien bondholders.

23. The Liquidation Trustees are still holding limited funds for certain necessary expenses, including, among other things, (i) payments to Liquidating Trust professionals and the Claims Agent, (ii) the costs of maintenance and eventual destruction of records, as contemplated in the Plan and the Liquidating Trust Agreement, (iii) any remaining U.S. Trustee fees, and (iv) tax obligations and any required reporting or filings.

24. As of the filing of this Motion, all outstanding U.S. Trustee fees have been paid to the Office of the United States Trustee and any further fees that may come due will be paid in the ordinary course. The closing of this Chapter 11 Case therefore comports with Local Rule 3022-1.

### B. Termination of the Engagement of the Claims Agent

25. As set forth above, on October 3, 2017, the Court entered an order authorizing the retention and employment of the Claims Agent as claims and noticing agent. Upon entry of the final decree, the Claims Agent's services will no longer be needed. The Liquidation Trustees submit that the termination of the Claims Agent's engagement as claims and noticing agent is appropriate under the circumstances, and the Liquidation Trustees request that the Claims Agent be authorized and directed to comply with the instructions and guidelines set forth by the Clerk's Office with respect to procedures for preparation of a final claims register in accordance with the provisions of Local Rule 2002-1(f)(ix).

### C. Unclaimed Distribution Funds

26. Pursuant to the terms of the Liquidating Trust Agreement, distributions made by check which are not negotiated within 120 days of issuance shall become Unclaimed Distributions. Section 4.8 provides in pertinent part that:

> In the event any check sent to a Beneficiary respecting a Distribution to such Beneficiary has not been cashed within one hundred and twenty (120) days after the date of the respective Distribution, such check shall be cancelled, no replacement Distribution shall be made to such Beneficiary, and the Claims of such Beneficiary that may have been entitled to such Distribution shall be discharged and forever barred from receiving Distributions under this Agreement, the Plan and Confirmation Order. The uncashed Distributions shall be deemed unclaimed property within the meaning of section 347(b) of the Bankruptcy Code and shall become Liquidating Trust property and revert to the Liquidating Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary).

Liquidating Trust Agreement, §4.8. *See also* §5.6.

27. To the extent that any check made as part of the Final Distribution remains uncashed more than 120 days after issuance or is undeliverable and thereafter becomes unclaimed property, or there is otherwise any cash remaining after all obligations of the Liquidating Trust have been satisfied, the Liquidation Trustees request authority to either (i) donate and dispose of such funds to 501(c)(3) non-for-profit charity or charities as the Liquidation Trustees may choose or (ii) if the Liquidation Trustees determine in their discretion that it makes economic sense to distribute such funds, to distribute such funds in accordance with the terms of the Plan, in either case without the need to reopen this Chapter 11 Case or seek further order of the Court.

### D. Authority to Abandon or Sell Any Remaining Non-Cash Assets

28. Disposition of assets is governed by sections 554(a) and 363 of the Bankruptcy Code. "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see* 11 U.S.C. § 363(b)(1) (authorizing the trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate."); Fed R. Bankr. P. 6007 (establishing procedures for disposition or abandonment of estate assets); *see also* 11 U.S.C. § 105(a). A

trustee's decision to dispose of property of the estate is discretionary. *See In re Syntax-Brillian Corp.*, 2018 WL 3491758 at *15 (Bankr. D. Del. July 18, 2018) ("[t]rustee's power to abandon property is discretionary and the [c]ourt will generally defer to the [t]rustee's judgment").

29. The Liquidation Trustees are not aware of any remaining assets other than a small amount of cash, which is addressed in Section C above. In the event that there are any other assets that are burdensome or of inconsequential value to the Liquidating Trust, the Liquidation Trustees seek authority to sell or abandon such assets if the Liquidation Trustees determine, in their business judgment, the assets are burdensome or of limited value to the Liquidating Trust and its beneficiaries, without the need to re-open the Chapter 11 Case or further order of the Court. The Liquidation Trustees respectfully submit that such relief is appropriate under sections 105(a), 363(b)(1) and 554(a) of the Bankruptcy Code.

E. **Destruction of Remaining Debtor Records**

30. As of the filing of this Motion, the Liquidation Trustees, the Liquidating Trust and their professional advisors and representatives are or may be in possession of certain remaining records of the Debtors or their estates which were not sold prior to the Effective Date, as part of the 363 sale (the "Records"). The Liquidating Trust Agreement provides that the Liquidation Trustees shall retain such records until twelve months after the Liquidating Trust terminates, at which time the Liquidation Trustees may determine that it is appropriate to destroy some or all of such Records. Liquidating Trust Agreement, §12.2. In the event that the decision is made to destroy the Records, at least thirty (30) days' prior written notice of such proposed action shall be provided, as required by Section 10.2 of the Liquidating Trust Agreement.

31. More generally, and as set forth above, Bankruptcy Code section 554 governs the abandonment of property. "The abandonment power embodied in Section 554 enables the

trustee to rid the estate of burdensome or worthless assets, and so speeds the administration of the estate . . . and also protects the estate from diminution. In such manner, abandonment serves the creditors' interest in expeditiously obtaining a fair amount on settlement of their claims." *In re Quanta Resources Corp.*, 739 F.2d 912, 916 (3d Cir. 1984). Further, courts have authorized trustees to abandon records where no business purpose exists to retain them. *See, e.g.,* Syntax-*Brillian.*, 2018 WL 3491758 at *15 (authorizing plan trustee to destroy records when the trustee "weighted the costs and bene-fits of retaining he records against their usefulness" and devised a plan to destroy records that was "in the best interest of the [t]rust and its beneficiaries."). Accordingly, the Liquidation Trustees seek authority, in the exercise of their business judgment, to destroy Records that provide no benefit to the estate or the Liquidating Trust and to pay any costs associated therewith.

F. **Discharge of the Liquidation Trustees and the Members of the Oversight Committee**

32.  Pursuant to the terms of the Plan and the Liquidating Trust Agreement, the Liquidation Trustees were appointed to administer the Liquidating Trust and its assets, to make distributions to holders of allowed claims, and to wind down the Debtors' affairs.

33.  As set forth more fully above, the Liquidation Trustees have fulfilled these obligations. At present, the Plan has been substantively consummated and all that remains for the Liquidation Trustees is disposing of remaining assets, if any, and completion of certain administrative tasks, such as paying final United States Trustee fees, filing final tax returns. disposing of Records and donating any *de minimis* remaining cash to a 501(c)(3) non-for-profit charity or charities (the "Trailing Obligations"). The Liquidation Trustees therefore respectfully submit that it is appropriate for the Court to release and discharge the Liquidation Trustees of their duties and obligations as Liquidation Trustees of the Liquidating Trust, other than the

Trailing Obligations. The Liquidating Trust shall terminate once the Trailing Obligations, other than the disposal of Records (which will follow the termination of the trust) have been completed.

34. The Liquidation Trustees further requests that, until such time as the Trailing Obligations have been completed, the exculpation and indemnification protections provided to the Liquidation Trustees under the Plan, Confirmation Order and Liquidating Trust Agreement shall remain in effect.

35. Finally, the members of the Oversight Committee, who have assisted in this process over a considerable length of time, should be discharged of their responsibilities upon the entry of the Proposed Order. They have fulfilled substantially all of their responsibilities under the Liquidation Trust Agreement, and do not need to continue to serve with respect to the disposition of *de minimis* funds, tax reporting and the disposal of remaining records.

### G. Extension of the Liquidating Trust Term

36. As previously noted, per the terms of this Court's Order dated July 12, 2024 [D.N. 1260], the Liquidating Trust's termination date is currently August 24, 2026, Both the Plan and the language of the Order explicitly grant the Court authority to further extend that deadline.

37. The Liquidation Trustees are working diligently to bring this matter to a close, and the distribution of the proceeds of the litigation brought by the Liquidating Trust to trust beneficiaries has already occurred. However, certain Trailing Obligations and other tasks remain to be completed, to efficiently conclude the liquidation and the wind- up of the Liquidating Trust, and that may require that the trust remain in existence after August 24, 2026.

38. Accordingly, the Liquidation Trustees requests a further extension of the term of the Liquidating Trust through and including the earlier of (i) the completion of the Trailing

Obligations, other than disposition of the Records, and the finalization of the Liquidation Trustees' liquidation, administration and distribution of remaining assets of the Liquidating Trust and full performances of all other duties and functions set forth in the Plan and the Liquidating Trust Agreement[6], and (ii) December 30, 2026, without prejudice to the Liquidation Trustees' right to seek a further extension of the Liquidating Trust termination date by motion on notice to the U.S. Trustee.

39.     The Plan and the Liquidating Trust Agreement each expressly permit the extension of the term of the Liquidating Trust if (i) such extension is approved within six (6) months prior to the date of termination of the Liquidating Trust, and (ii) such extension would not adversely affect the Liquidating Trust's status as a "liquidating trust" for federal income tax purposes.  *See* Plan ¶ 7.3(j); Liquidating Trust Agreement ¶ 8.1; *see also* 26 CFR § 301.7701-4(d).[7]  Further, Bankruptcy Rule 9006(b)(1) permits the Court, in its discretion, to extend the term of the Liquidating Trust "for cause." Fed. R. Bankr. P. 9006(b)(1); *see* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

40.     The Liquidation Trustees file this Motion within the current term of the Liquidating Trust and within the time frame set forth in section 7.3(j) of the Plan.  The extension of the term of the Liquidating Trust is not being sought to "unreasonably prolong" the Liquidating Trust or for any other improper purpose.  Rather, the extension is sought to facilitate

---

[6] The Liquidation Trustees will reserve some funds for costs relating to the destruction of Records and final tax filings, and where feasible, may pre-pay some of those costs.

[7] The regulation provides in relevant part that a "liquidating trust" will be treated as "trust" for purposes of the Internal Revenue Code if such liquidating trust is organized for the primary purpose of liquidating and distributing assets and its activities are all reasonably necessary to, and consistent with, the accomplishment of that purpose. In addition, the liquidation must not be "unreasonably prolonged" and the "liquidation purpose [cannot] becomes so obscured by business activities that the declared purpose of liquidation can be said to be lost or abandoned, the status of the organization will no longer be that of a liquidating trust." 26 CFR § 301.7701-4(d).

the liquidation of the remaining assets of the Liquidating Trust and to complete the wind up of the Liquidating Trust in an efficient and organized manner for the benefit of unsecured creditors. Therefore, the Liquidation Trustees respectfully submits that cause exists to further extend the term of the Liquidating Trust as requested herein.

### H.    Payment of U.S. Trustee Fees and Final Report

41.    As set forth above, the Liquidating Trust is current on the payment of all United States Trustee quarterly fees.

42.    The Liquidation Trustees will pay all remaining statutory fees of the United States Trustee accruing up to the date of the entry of the final decree for this Chapter 11 Case within ten (10) business days of the entry of the Proposed Order

43.    Pursuant to Local Rule 3022-1(c), the Liquidation Trustees intend to file the final report from the Petition Date through the date hereof at least 14 days prior to the hearing on this Motion.  The Liquidation Trustees will also file a final quarterly operating report through the date of the Final Decree.

44.    For all of the reasons set forth above, the Liquidation Trustees submit the relief requested in this Motion is in the best interest of all parties in interest and should be granted.

### **NOTICE**

45.    In accordance with Local Rule 3022-1(b), a copy of this Motion will be served upon the following parties or their counsel of record, if known: (i) the Office of the United States Trustee for Region 3, and (ii) all parties that have requested to receive notices in these cases pursuant to Bankruptcy Rule 2002.  In light of the relief requested, the Liquidation Trustees submit no other or further notice need be given and the Liquidation Trustees request that such notice be approved as good and sufficient notice of the relief requested in this Motion.

46. No prior request for the relief sought in this Motion has been made to this Court or to any other court.

## CONCLUSION

WHEREFORE, the Liquidation Trustees respectfully request that the Court enter the Proposed Order attached hereto as <u>Exhibit A</u> granting this Motion and the final decree, closing the Chapter 11 Case, and granting such other and further relief as the Court deems appropriate under the circumstances.

Dated: February 17, 2026

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
dklauder@bk-legal.com

-and-

**HALPERIN BATTAGLIA BENZIJA, LLP**

Donna H. Lieberman, Esq. (*pro hac vice*)
40 Wall Street, 37th Floor
New York, NY 10005
Telephone: (212) 765-9100
Fax: (212) 765-0964
dlieberman@halperinlaw.net

*Co-counsel for the Liquidating Trust*