# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1319** |

**OBJECTION AND RESERVATION OF RIGHTS OF WARNER BROS. ENTERTAINMENT INC. AND ITS AFFILIATES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT, (II) SCHEDULING THE COMBINED HEARING, (III) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF PLAN AND FINAL APPROVAL OF ADEQUACY OF DISCLOSURES, (IV) ESTABLISHING SOLICITATION, VOTING, AND RELATED PROCEDURES, (V) APPROVING RELATED DATES, DEADLINES, AND PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

Warner Bros. Entertainment Inc. and its affiliates (collectively, "Warner Bros.") files this objection and reservation of rights (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [D.I.

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

1319] (the "<u>Solicitation Procedures Motion</u>").[2] In support of this Objection, Warner Bros. respectfully states as follows:

## I. PRELIMINARY STATEMENT[3]

1. While the precise amount of Warner Bros.' damages, including accrued interest, against the Library Debtors will be determined in the coming weeks by the JAMS Appellate Panel that held a several days-long hearing on these issues in December, multiple orders of this Court have established the rights, procedures, and priorities associated with payment on those claims. Among other things, contracts related to Warner Bros.' Matrix Arbitration claim were assumed as part of the Library Asset sale. *See* D.I. 562-1, ¶¶ 2.05(a), 3.01(f). As such, Warner Bros.' Matrix Arbitration claim was designated as a cure claim. D.I. 562, ¶ 37(e). Moreover, the Warner Bros. Claims against the Library Debtors are structurally superior to virtually all other claims concerning the property held by those solvent estates. *See* First Day Hr'g. Tr. [14:24-25, 15:1-11]. By consent of the parties and order of this Court, the determination of the amount of Warner Bros.' Matrix Arbitration claim was referred to the JAMS Appellate Panel, and this Court lifted the automatic stay. *See* D.I. 545. Upon determination of the amount of Warner Bros.' claims in the arbitration process, such amounts are to be paid without the need for further order of the Court. *See* D.I. 562, ¶ 37(e).

2. Warner Bros. and the Debtors engaged in extensive further discovery after the lifting of the stay and presented before the JAMS Appellate Panel three days of testimony and argument, where six percipient and expert witnesses testified. The dispute has been fully and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them as set forth in the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [D.I. 1317] (the "<u>Plan</u>"), filed contemporaneously with the Solicitation Procedures Motion and Disclosure Statement.

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them as set forth later in this Objection, or the Plan, as applicable.

finally briefed, argued, and taken under submission. The JAMS Appellate Panel promises a ruling by early March 2026.

3. The final Plan to be approved by this Court must track the rights and procedures to which all parties agreed in sending the Matrix Arbitration claim back to the JAMS Appellate Panel for resolution, as well as the substantive rights already set by prior orders of the Court. And the Plan's treatment of Warner Bros.' Matrix Arbitration claim should expressly be subject to such procedures and the pending arbitration process. As presently drafted, it is unclear if the Plan satisfies these requirements and there is little disclosure on these issues.

4. The Solicitation Procedures Motion seeks the Court's conditional approval of the Debtors' disclosures set forth in the Disclosure Statement, alongside approval of the Debtors' noticing and solicitation procedures and proposed timeline related to the Plan's confirmation. The Disclosure Statement provides that the Warner Bros. Claims are designated as Class 3A Library Debtors General Unsecured Claims and as such, the Warner Bros. Claims are unimpaired and Warner Bros. is deemed to have accepted the Plan. As presently drafted, however, the Disclosure Statement lacks adequate information for Warner Bros. to determine that its claims are, in fact, truly unimpaired and/or being treated as a cure claim consistent with the existing suite of orders, including the Lift Stay Order and subsequent Sale Orders.

5. At a high level, Warner Bros.' objections to the Solicitation Procedures Motion can be distilled into two broad categories: (1) ensuring that Warner Bros.' prior stipulations with the Debtors in earlier Court orders are honored under, and supersede any contrary provisions in, the Plan, and (2) ensuring all of Warner Bros.' rights under applicable law, including as to its ability

to opt out and object to improper Third-Party Release or exculpation provisions, are fully preserved under the Plan.[4]

6.      Warner Bros. has met and conferred with the Debtors regarding these issues. While the parties had a constructive conversation, as of the time of this filing, Warner Bros.' concerns have not been fully addressed. The parties intend to have a further meet and confer to develop language to address Warner Bros.' concerns. Accordingly, Warner Bros. files this Objection to preserve all its rights, and asks that the Court deny the Solicitation Procedures Motion unless and until Warner Bros.' objections are addressed.

## II.     OBJECTION

7.      Under section 1125(b) of the Bankruptcy Code, a debtor has an affirmative duty to provide creditors with a disclosure statement containing adequate information to enable a creditor to reach an informed judgement about the plan. *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000). The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Disclosure Statement does not provide Warner Bros. with adequate information to ensure that its claims are truly unimpaired and consistent with the Court's pre-existing orders regarding the Warner Bros. Claims.

8.      Adequate disclosure of Warner Bros.' unimpaired treatment is critical to determine whether the Plan is confirmable because Bankruptcy Code section 1129(10) must be satisfied on

---

[4] Warner Bros. reserves all objections that it has to the proposed Plan to be presented as part of the confirmation process, none of which are waived hereby. *See infra*, Part III.

a debtor-by-debtor basis. *See In re Tribune Co.*, 464 B.R. 126, 180-83 (Bankr. D. Del. 2011), *aff'd sub nom. In re Tribune Media Co.*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Tribune Co.*, 972 F.3d 228 (3d Cir. 2020); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302-03 (Bankr. D. Del. 2011) (citing to *Tribune* and noting, in *dicta*, that the debtors did not have a reasonable likelihood of reorganization because they could not confirm a joint plan where one of the debtors only had one, non-accepting class). Thus, if the Plan otherwise impairs the Warner Bros. Claims, Warner Bros. would be entitled to vote on the Plan. In that scenario, Warner Bros.' acceptance of the Plan would be required for the Plan to be confirmed at the Library Debtor level. *See In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. at 302-03 (explaining that, while jointly administered debtors collectively had many creditors, one of the debtors that only had one dissenting creditor "cannot confirm a plan over [such creditor's] objection because it could get no accepting class[; t]herefore, in the absence of substantive consolidation, [such debtor] does not have any chance of confirming a plan").

9. Where, as here, the Disclosure Statement provides that the Warner Bros. Claims are unimpaired, the Plan must leave Warner Bros.' legal, equitable, and contractual rights unaltered. *See* 11 U.S.C. § 1124(1); *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 203 (3d Cir. 2003) (noting the burden is placed on the debtor to show the plan leaves an unimpaired creditor's rights unaltered). Simply put, the Plan may not impose any limitation on the pending determination of damages and interest owed to Warner Bros. under any of its legal, contractual or equitable rights. Warner Bros. is unclear that is the case given, broadly speaking, (i) the Disclosure Statement's description of the claims allowance and distribution process for the Warner Bros. Claims that conflicts with multiple orders of this Court; and (ii) the scope of Third-Party Release and exculpation provisions. Though it is Warner Bros.' understanding from the parties' discussions

5

that the Debtors do not intend for the Plan to alter Warner Bros.' rights under prior orders in these cases in any way, Warner Bros. wants this confirmed in writing.[5]

### A. The Disclosure Statement Lacks Adequate Information Regarding the Superiority of the Lift Stay Order and Subsequent Sale Orders Over Other Plan Provisions.

10. The Disclosure Statement provides that nothing in the Plan shall supersede this Court's prior Sale Orders; however, its description of the claims allowance, distribution and other procedures for the Warner Bros. Claims confuse whether Warner Bros.' prior stipulations with the Debtors in the *Order Approving Stipulation* [D.I. 545] ("Lift Stay Order") and subsequent Sale Orders are being honored. *See* Discl. Stmnt. Art. V, § N. The Disclosure Statement contains ambiguous language that could undermine the findings in the parties' agreed-upon out-of-Court process for the liquidation of Warner Bros.' claims for damages, including interest. Given that the Debtors stipulated to the treatment of Warner Bros.' claims in multiple Court orders, any ambiguity surrounding that agreed-upon treatment must be clarified in the Disclosure Statement.

### a. The Parties' agreed-upon out-of-Court process for the Matrix Arbitration should not be disturbed.

11. Among other of the Court's orders that must be preserved under the Plan, both the Lift Stay Order and Library Assets Sale Order address Warner Bros.' rights and priorities of payment on its Matrix Arbitration claim. The Court entered the Lift Stay Order on June 18, 2025, which expressly allowed Warner Bros. to proceed with the Matrix Arbitration, "including the securing of any damages award against the WB Arbitration Debtors and the taking of any and all

---

[5] For the avoidance of doubt, Warner Bros. raises its concerns as to its unimpaired status under the Plan in connection with the response deadline to the Solicitation Procedures Motion and the forthcoming Plan Confirmation Objection Deadline (and reserves all rights related thereto). No separate motion practice should automatically be imposed under the Disclosure Statement or Plan. *See* Discl. Stmnt. Art. IV, § F (providing the Bankruptcy Court shall, "after notice and a hearing," determine any controversy as to whether any Claim or Class of Claims is Impaired on or before the date of the Combined Hearing).

steps necessary for Warner Bros. to confirm any final award, including through any final judgment in state court if Warner Bros. so elects." D.I. 545, ¶ 2.

12. The Court then entered the Library Assets Sale Order on June 20, 2025. *See* D.I. 562. That order provides, in relevant part, that Warner Bros.' claims in connection with the Matrix Arbitration constitute "Cure Claims" and "Cured Obligations." D.I. 562, ¶ 37(e). It further provides that "the Cured Obligations shall for all purposes be treated and satisfied by payment *in full* in cash from the Warner Bros. Reserve as Cure Claims upon the liquidation of such claims, ***without the need for further motion, order of the Court, or plan confirmation***." *Id.* (emphasis added).[6]

13. The Matrix Arbitration has been proceeding out of Court, and the JAMS Appeal Panel held a several days-long hearing in December 2025 to recalculate Warner Bros.' entitlement to damages and interest flowing from the WB Arbitration Debtors'[7] clear breach of the parties' co-financing agreement on the motion picture *Matrix IV*. The parties spent months taking new discovery on these issues, submitted pre-hearing briefing, and presented a total of six fact and expert witnesses who addressed these damages and interest questions. The JAMS Appellate Panel took the matter under submission after closing argument and informed the parties that it will rule on the matter by early March 2026. In light of the stipulations included in the Lift Stay Order and subsequent Library Assets Sale Order, the Disclosure Statement should not describe a Plan that could be read to improperly impair or impede that agreed-upon process or Warner Bros.' rights under applicable law. That is especially true given that the Warner Bros. Claims against the Library

---

[6] Though the Lift Stay Order also provided Warner Bros. was not to collect any final award or judgement against the Debtors "absent further order of the Court," the Library Assets Sale Order is the further order that permits Warner Bros. to receive full payment on its claims as Cured Obligations without the need for further order of the Court.

[7] As such term is defined in the Lift Stay Order, and which constitute certain of the Library Debtors. In addition, "Matrix Arbitration" as used throughout this Objection is also used as defined and referred to int the Lift Stay Order and Library Assets Sale Order.

Debtors are structurally superior to virtually all other claims concerning the property held by those solvent estates. *See* First Day Hr'g. Tr. [14:24-25, 15:1-11].

### b. *The Debtors' description of the claims allowance procedures for Warner Bros. Claims is inconsistent with prior orders in these cases and should be clarified.*

14. The Disclosure Statement's description of the claims allowance process for the Warner Bros.' Claims must not run afoul of the parties' stipulations embodied in the Court's prior orders. The Disclosure Statement provides that the Warner Bros. Claims fall under Class 3A Library Debtors General Unsecured Claims. Discl. Stmnt. Art. IV, § B.3. In doing so, it specifies that:

> [o]nce Warner Bros. Claims have been determined by Final Order or by agreement of the parties *and* become Allowed (if at all, in whole or in part), the Warner Bros. Claims will be paid in full in the Allowed amount, first from the Warner Bros. Reserve, and second, to the extent that the Warner Bros. Reserve is insufficient to satisfy the Warner Bros. Claims, from the Library Reserve.

*Id.* (emphasis added). Under the Plan, a Claim is Allowed if, in relevant part, the Claim is "Allowed pursuant to the Plan *or* a Final Order *of the Bankruptcy Court*," provided that "no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors or the Liquidation Trust, as applicable." Plan at 2 (emphasis added).

15. The Disclosure Statement's description of the claims allowance procedures' application to the Warner Bros. Claims is problematic because payment of Warner Bros.' Matrix Arbitration claim is a "Cured Obligation" under the governing Library Assets Sale Order and remains subject to the agreed-upon liquidation process outside this Court. D.I. 562, ¶ 37(e); *see also* D.I. 545. As such, Warner Bros. is entitled to full payment on its Matrix Arbitration claim pursuant to the process the parties agreed to under the Lift Stay Order "***without the need for further motion, order of the Court, or plan confirmation***." D.I. 562, ¶ 37(e); *see also* D.I. 545

(providing for lifting of the automatic stay to allow the Matrix Arbitration to conclude to finality).[8] The Disclosure Statement, however, describes a Plan that could be read to modify this requirement by potentially subjecting Warner Bros. to a claims allowance process that could enable the Debtors (or Liquidation Trustee) to relitigate issues raised in the Matrix Arbitration. *See generally In re TE Holdcorp, LLC*, No. BR 20-11442-JKS, 2022 WL 951553, at *11 (D. Del. Mar. 30, 2022), *aff'd sub nom. In re TE Holdcorp LLC*, No. 22-1807, 2023 WL 418059 (3d Cir. Jan. 26, 2023) ("[T]here is no controversy regarding whether a bankruptcy court can interpret and enforce its own orders . . . ."). The Plan cannot impose any limitations on the amount of the Warner Bros. Claims based upon any of its legal, contractual or equitable rights, whether or not such limitations might be imposed on other claims that are not unimpaired and/or cure claims.

### c. *The Disclosure Statement describes additional Plan provisions that must be clarified to render Warner Bros.' claims unimpaired.*

16. The Disclosure Statement similarly fails to adequately clarify that Warner Bros.' rights—as further codified, protected in, and reserved for under the Lift Stay Order and subsequent Sale Orders—are superior to other provisions governing plan distributions, setoff and recoupment rights, and any conflicts with the forthcoming Liquidating Trust Agreement, GUC Trust Agreement, or Schedule of Assumed Executory Contracts and Unexpired Leases. *See, e.g.*, Discl. Stmnt. Art. IV, § C (Special Provision Governing Unimpaired Claims); Art. VI, § A (Assumed Executory Contracts and Unexpired Leases); Art. VII, §§ A (Distributions as of the Distribution Record Date), G (Delivery of Plan Distributions); Art. IX, §§ A (Liquidation Trust Creation), C (Liquidation Trust Assets); Art. X, § A (GUC Trust Creation); Art. XII, §§ E (Setoff), G (Recoupment); Art. XVI, § K (Plan Supplement).[9] This confusion remains notwithstanding the

---

[8] *See supra*, n. 6.

[9] *But see* Plan Art. IV, § D (providing the inverse).

fact that the Disclosure Statement and Plan provide the Sale Orders govern in the event of a conflict with the Plan. Accordingly, Warner Bros. seeks clarity that irrespective of any ambiguity or other "notwithstanding anything to the contrary language" in the Plan, Warner Bros.' prior stipulations with the Debtors in the Court's orders govern.

### B. Warner Bros. Lacks Adequate Information Concerning the Scope of Improper Third-Party Release and Exculpation Provisions.

17. The Disclosure Statement also lacks adequate information concerning the propriety of the Debtors' proposed Third-Party Release and Exculpation provisions as they pertain to Warner Bros.' unimpaired status under the Plan. For the reasons set forth below, Warner Bros. requests that the Disclosure Statement and Plan be amended to address these issues.

#### a. *The Debtors should amend the Third-Party Releases and include a form as part of the Notice of Non-Voting Package for Warner Bros. to manifest it does <u>not</u> consent.*

18. First, the Plan's definitions for Releasing Parties and the Release-Opt Out Election are overbroad and confusing. The Plan defines the "Third-Party Release" as the releases "given by each of the Releasing Parties to the Released Parties as set forth in Article XI.B []." Plan at 15. The Plan defines a Releasing Party as each of the following, and each in their capacities as such:

> (a) the Released Parties; (b) **all Holders of Claims or Interests that are Unimpaired**; (c) all Holders of Claims or Interests that (i) vote to accept the Plan or (ii) do not vote on the Plan, and for each of the foregoing, do not make a Release Opt-Out Election; (d) **all Holders of Claims or Interests who receive a Notice of Non-Voting Status Package and do not make a Release Opt-Out Election**; and (e) each Related Party of each Entity in the foregoing clauses (a) through (d), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (d); *provided, however*, the Debtors shall not be a Releasing Party to the extent being a Releasing Party is duplicative or inconsistent with the Debtor Releases provided in Article X.A herein or any Retained Cause of Action; **and <u>provided further</u> that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election.**

Plan at 13 (emphasis added).

19. Warner Bros. objects to the Plan's *per se* presumption that holders of unimpaired claims are bound by the Third-Party Release. Rather, the law post-*Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 227 (2024), as interpreted by courts in this Circuit, recognizes that holders of unimpaired claims must be afforded an opportunity to manifest consent or non-consent in order to be bound by a third-party release. *See In re Fisker, Inc.*, Case No. 24-11390 (TMH) (Bankr. D. Del. Oct. 11, 2024) [ECF No. 706], Hr'g Tr. at 44:20-45:4 (concluding that appropriateness of an opt-out is subject to a case-by-case analysis, and finding sufficient manifestation of consent to third-party releases as to unsecured creditors that did not return an opt-out where the solicitation procedures including a non-voting notice with an opt-out form attached); *see also In re Smallhold, Inc.*, 665 B.R. 704, 712–14 (Bankr. D. Del. 2024) (explaining that, while priority creditors whose claims would be paid in full received clear notice of the third-party release and could object to confirmation on the grounds that the release was improper, the proposed solicitation order did not include a form allowing such parties to opt out of the releases); *In re WEH Liquidating, LLC, et al.*, Tr. of Dec. 17, 2025 Hrg., Case No. 25-11602, at 38:16-22, 39:8-17 (Bankr. D. Del. Dec. 22, 2025) [D.I. 417]. Though the proposed Plan purports to contain an override for parties that make a "Release-Opt Out Election," that term contemplates that the Non-Voting Status Package will contain an option for non-voting creditors to manifest consent or non-consent to be bound to the Third-Party Release, alongside the ability of a party to file an objection to the Plan. Plan at 13.

20. The current form of Non-Voting Status Package, however, does not presently include an option for non-voting creditors to opt-out of the Plan. *See* D.I. 1319-2, Exh. 3-A. This issue, in addition to the Debtors' inclusion of clause (b) in the definition of Releasing Party, creates ambiguity on the issue of consent vis-à-vis creditors the Debtors have deemed to be unimpaired. Warner Bros. submits that the Debtors must amend and clarify these provisions. While Warner

Bros. further reserves its rights on the propriety of any releases or exculpations set forth under the Plan, for the avoidance of doubt, Warner Bros. objects to the Third-Party Releases in the Plan and does not consent to be bound by them.

### b. *The Debtors should clarify the universe of parties who are included in the proposed exculpation provision.*

21. Along similar lines, the Disclosure Statement's description of Exculpated Parties remains unclear. The Plan defines an Exculpated Party as, collectively, and in each case and in its capacity as such:

> (a) the Debtors; (b) the Debtors' directors and officers who served at any time between the Petition Date and the Effective Date; (c) the Debtors' managers during these Chapter 11 Cases; *(d) such Released Parties that are fiduciaries to the Debtors' Estates;* (e) the Committee; (f) the members of the Committee in their capacity as such; and (g) all Professionals retained by the Debtors and the Committee in these Chapter 11 Cases in their respective capacities as Professionals to the Debtors or Committee.

Plan at 7. Neither the Plan nor Disclosure Statement, however, provides clarity as to which Released Parties constitute fiduciaries to the Debtors' Estates that the Plan purports to exculpate, including whether any of the Noteholders or Debtors' other insiders fall under that umbrella.[10] The Disclosure Statement should provide additional information in order for Warner Bros. to determine that its rights are unimpaired.

### III. RESERVATION OF RIGHTS

22. Warner Bros. expressly reserves all rights to object to the Disclosure Statement on a final basis, and to object to the Plan on any grounds, including so as to ensure all of Warner Bros.' rights under applicable law are preserved in accordance with the Debtors' proposed treatment and classification of Warner Bros.' claims under the Plan. Warner Bros. similarly preserves all rights

---

[10] Paragraph 7 of Art. IV, § E of the Disclosure Statement provides the Senior Secured Notes Parties "shall be afforded maximum exculpation allowed under the law," but Warner Bros. is unclear whether any or all of such parties serve as fiduciaries to the Debtors' Estates.

12

to object to any Plan provision purporting to foreclose Warner Bros.' rights in connection with the Plan Confirmation Objection Deadline. For the avoidance of doubt, Warner Bros. retains all rights to raise any other Plan-related objections in any forthcoming Plan objection not otherwise addressed herein. Warner Bros. also expressly reserves all rights to amend and/or supplement this Objection, and any arguments advanced herein, at any time prior to, or during, the Court's hearing to consider final approval of the Disclosure Statement and/or Plan.

23. In addition, nothing contained herein is intended to be or shall be deemed a waiver of Warner Bros.' rights under the Bankruptcy Code or any other applicable non-bankruptcy law.

## IV.    CONCLUSION

**WHEREFORE**, Warner Bros. respectfully requests that this Court (i) deny approval of the Solicitation Procedures Motion unless and until Warner Bros.' objections to the Disclosure Statement are adequately addressed as set forth herein (ii) grant Warner Bros. such other relief as the Court deems just and proper.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated: February 12, 2026<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>*/s/ Casey B. Sawyer*<br>Curtis S. Miller (No. 4583)<br>Matthew B. Harvey (No. 5186)<br>Casey B. Sawyer (No. 7260)<br>1201 North Market Street, 16th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email: cmiller@morrisnichols.com<br>         mharvey@morrisnichols.com<br>         csawyer@morrisnichols.com<br><br>*-and-*<br><br>**O'MELVENY & MYERS LLP**<br>Steve Warren (admitted *pro hac vice*)<br>400 South Hope Street, Suite 1900<br>Los Angeles, CA 90071<br>Telephone: (213) 430-6000<br>Email: swarren@omm.com<br><br>Daniel M. Petrocelli (admitted *pro hac vice*)<br>Matt Kline (admitted *pro hac vice*)<br>Tim Heafner (admitted *pro hac vice*)<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 553-6700<br>Email: dpetrocelli@omm.com<br>Email: mkline@omm.com<br>Email: theafner@omm.com<br><br>Scott P. Drake (admitted *pro hac vice*)<br>Emma L. Jones (admitted *pro hac vice*)<br>2801 North Hardwood Street, Suite 1600<br>Dallas, Texas 75201<br>Telephone: (972) 360-1900<br>Email: sdrake@omm.com<br>         eljones@omm.com<br><br>*Counsel to Warner Bros. Entertainment Inc.*<br>*and its Affiliates* |